EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

June 14, 2006
(Senate)

# STATEMENT OF ADMINISTRATION POLICY

**S. 2766 - National Defense Authorization Act for Fiscal Year 2007**
(Senators Warner (R) VA and Levin (D) MI)

The Administration supports Senate passage of S. 2766 and commends the Senate Armed Services Committee for its continued support of our national defense. The bill raises a number of significant concerns, which we look forward to addressing with Congress as the bill moves through the legislative process.

The Administration welcomes the Senate bill's support for the President's priorities, such as the 2.2 percent across-the-board military pay raise, repealing the requirement to maintain 12 aircraft carriers, and authority to use Operations and Maintenance (O&M) funding for military construction outside the United States.

The Administration thanks the Committee for its effort to sustain the All Volunteer Force. We appreciate the inclusion of many Quadrennial Defense Review (QDR) related proposals, including those that provide logistical support, loaned equipment, supplies, and services to allied forces in the Global War on Terror, and to expand the operations of Department of Defense (DoD) Civil Support Teams to include disaster assistance in Canada and Mexico. We also appreciate the Committee's support for authorization to enhance the Regional Combating Terrorism Fellowship program and for many other programs, including full funding of the Administration's request for Cooperative Threat Reduction, Defense Base Closure and Realignment (BRAC) implementation, support of military construction projects and family housing, and the Conventional Trident Modification. The Conventional Trident Modification is a crucial element in providing the President the ability to respond quickly to time sensitive, high consequence situations anywhere in the world, especially given the danger of the nexus between terrorism and weapons of mass destruction.

The Administration appreciates Congress' strong commitment to our troops and the Global War on Terror and thanks the Committee for authorizing the $50 billion bridge fund. We look forward to working with Congress to ensure that funding is allocated in the most effective way to meet the needs of commanders in the field.

Building the Partnership Security Capacity of Military and Security Forces: The Administration appreciates the Committee's decision to expand the global train and equip authorities contained in section 1206 of the National Defense Authorization Act for FY 2006, and requests that they be made permanent. The Administration opposes additional restrictions placed on the authority and would prefer the Senate include the Administration-requested modifications to increase flexibility to train and equip partner nations operating with, or instead of, U.S. forces for critical counter-terrorism and stabilization operations. As well, the Administration would prefer the

Senate include the requested Support for Local Populations proposal relating to humanitarian relief and reconstruction.

Waiver Authority for Domestic Source of Content Requirements: The Administration supports section 823, which would provide limited authority, with exceptions, to waive the application of any domestic preference requirement to permit the procurement of items that originate, or components and materials that substantially originate, in the U.S. or in a foreign country that has a "Declaration of Principles" with the U.S. Section 823 would help DoD acquire the best equipment and technology available and promote the readiness and capabilities of the U.S. Armed Forces. It supports our national security policy of promoting interoperability of the conventional defense equipment used by U.S. Armed Forces, allies, and coalition partners, thereby strengthening our coalition warfighting capabilities.

Defense Health Program: The Administration is disappointed that the Committee did not act favorably on the Administration's Budget proposal to adjust TRICARE health fees and payments for retired military beneficiaries under age 65. These proposed phased-in cost adjustments would largely capture the inflation increases that have occurred since cost sharing was first established in 1996. Continuing to charge negligible fees to working-age retirees who can afford to share in the cost of their health care jeopardizes our ability to sustain high quality military health care in the future. Not allowing these changes to proceed will result in at least $735 million in unbudgeted costs in FY 2007, and $11.2 billion from FY 2007 through FY 2011. For these reasons, the Administration strongly opposes section 705.

Furthermore, the Administration is opposed to section 706, which temporarily lowers the automatic premium increases for reserve benefits. It is critical that Congress eliminate these unwarranted restrictions and work with the Administration to place the system on a sound fiscal foundation.

Repeal of the Survivor Benefit Plan (SBP)/Dependency and Indemnity Compensation (DIC) Offset: The Administration strongly opposes section 642, which partially repeals the SBP/DIC offset. The current offset approved by Congress avoids duplication of two fully funded Federal Government benefits and is consistent with benefits provided in the private sector. The current compensation package for survivors—which includes SBP, DIC, an enhanced death gratuity, and increased life insurance benefits—provides a reasonable level of income. DoD estimates that eliminating the SBP offset for all widows entitled to DIC would cost the Military Retirement Fund between $6 and $8 billion over 10 years.

End Strength: The Administration opposes increases in minimum active Army and Marine Corps end strengths in Title IV, because they could require DoD to maintain a higher personnel level than is needed. The restructuring of the Army and the Marine Corps, plus other initiatives, is enabling our military to get more warfighting capability from current end strength. The President already has sufficient authority to adjust the size of the Army and Marine Corps as necessary for the current national emergency.

Report on Clarification of Prohibition on Cruel, Inhuman, or Degrading Treatment or Punishment: The Administration opposes section 1061, which would require the President to prepare a report that sets forth unclassified legal opinions on certain interrogation techniques,

and to direct dissemination of these legal opinions to all personnel of the Federal Government and contractors. Such a requirement would raise constitutional separation of powers concerns, and also is unnecessary. As the President and senior Administration officials have made clear, the Administration is committed to treating all detainees held by the United States in a manner consistent with our obligations under the Constitution, U.S. laws, and treaties. In keeping with those obligations, interrogation policies developed by this Administration are and will be consistent with the prohibition in U.S. law on cruel, inhuman or degrading treatment. Moreover, the intended goals of this section will be addressed when the Department of Defense finalizes its update to the United States Army Field Manual on Intelligence Interrogation.

National Foreign Language Coordination Council: The Administration strongly opposes section 1081, which would establish a National Foreign Language Coordination Council. While the Administration acknowledges that there was a need for greater coordination among the Federal government's foreign language programs, the Council would duplicate much of the work that the Administration is already carrying out under the President's National Security Language Initiative (NSLI). Furthermore, this proposition could detract from NSLI's ability to give priority attention to certain critical languages needed for national security interests. Moreover, creation of such a council by statute is a substantial and unwarranted intrusion on the President's discretion to manage the Executive Branch through creation of advisory bodies, inter-agency task forces, and other similar bodies.

Various Reductions and Weapons Retirement Restrictions: The Administration strongly opposes the Committee's $1.2 billion reduction in Joint Strike Fighter procurement, which would significantly delay the program, increase future costs, and risk the support of our international partners. We are additionally concerned with cuts to the Transformational Satellite program, Air Force Tanker replacement program and Space Radar. These cuts will cause significant delays in fielding critical new capabilities and force the continued use of aging or obsolete equipment. Also, the Administration is concerned with various restrictions on retiring C-130E/H, KC-135E, and B-52 aircraft. Restrictions on retiring aging aircraft will divert funds from other more critical capabilities necessary for the future.

Incremental Funding of Aircraft Carriers: The Administration is concerned that the Committee's provision to authorize the Secretary of the Navy to incrementally fund aircraft carriers over four years is unnecessary and undermines good budgeting practices. The Administration has permitted an exception to its traditional full funding policy in proposing the incremental funding of aircraft carriers over a two-year period, integrated with similar two-year funding of large deck amphibious ships, because the funding of these ships places a large burden on the Navy's ship construction program. The Committee's provision would move funding of aircraft carriers further away from the Administration's full funding policy and unnecessarily restrict future Congresses and Administrations.

Unrequested Procurement Funding and Acquisition Restrictions: The Administration opposes the legislation's direction to either continue development of a second engine source for the Joint Strike Fighter or commit to a single engine source through a one-time fixed price contract. Developing a second engine is not the best use of DoD's resources. In addition, committing to a fixed price contract would not be prudent at this stage of development. The Administration also opposes the legislation's prohibition of a multi-year procurement contract for the F-22, which if

implemented, could save the Department approximately $225 million.

The Administration also opposes the addition of $1.3 billion to procure an LPD-17 amphibious ship one year early. These and other similar unrequested additions divert funds from higher priority acquisitions. In addition, while the Administration is encouraged by the Committee's interest in Operationally Responsive Space (ORS) programs and Hypersonics programs, we believe the legislation's direction to create special program offices, with defined organizational structures and program cost caps, is inappropriate. Furthermore, inclusion of an operations element within the ORS program office is counter to Administration policy, which has assigned responsibility for all space operations to U.S. Strategic Command.

Regulations on the Use of Fixed Price Contracts in Development Programs: The Administration opposes section 807, which would direct DoD to modify regulations to expand the use of fixed cost development contracts. DoD is pursuing initiatives to reduce program risk, such as time-defined development and greater technology maturity, that should facilitate increased use of fixed-price contracts. However, it would be premature to enact a preference or requirement for fixed-price development contracts until progress is made on these initiatives.

Missile Defense: The Administration opposes the $300 million funding reduction to four missile defense projects/programs. These reductions will significantly delay development of an interceptor providing mobile boost/ascent phase defense, and deny Combatant Commanders the tools necessary to coordinate an effective defense for the homeland, deployed forces, and allies.

Military to Civilian Conversions: The Administration strongly opposes the decrease of $160 million in the Department's O&M accounts for military-to-civilian conversions. This will eliminate the flexibility of the Secretary of Defense to use those converted positions to enhance the strength of operating units. DoD needs the support of Congress as it determines the right mix of its total force to provide increased combat effectiveness critical to winning the Global War on Terror.

Repeal of Authority to Convey Property at Closed or Realigned Military Installations: The Administration strongly opposes Senate section 2807, which would repeal authority to convey property affected by BRAC. Instead, the Administration encourages the Senate to adopt House section 2806 of H.R. 5122, which would extend the authority to any excess DoD real property, and would improve DoD real property asset management by providing a potentially valuable tool for DoD to obtain consideration for non-BRAC excess property.

Military Munitions Response Plan: The Administration opposes section 331, as written, because environmental and health data are insufficient at this time to establish specific clean-up time frames. However, the Administration encourages Congress to adopt provisions proposed by the Administration as part of the Range and Readiness Preservation Initiative as discussed below.

Freedom of Information Act Treatment of Information Shared with State and Local Personnel: The Administration has a number of serious concerns with section 1043 and its overlap with section 892 of the Homeland Security Act. The Administration wants to work with the Committee to explain these authorities.

Grades of Judge Advocates General: The Administration opposes section 504, which would by statute elevate the Judge Advocates General to 3-star grade. This provision would: (1) undermine the flexibility of the President to determine what positions of importance and responsibility merit grades above major general or rear admiral (upper half); and (2) add unnecessary and rank-heavy bureaucracy. The Judge Advocates General, as 2-star officers, already participate fully in the legal affairs of their respective Military Departments and the entire Department of Defense. Following the report of the 574 Commission, the Department of Defense is examining present and possible future organizational staffing and coordination requirements for providing legal advice and support to the operating forces in the field.

Administration Priorities Not Included in S. 2766

The Administration encourages the Senate to include important Administration requested priorities, including QDR-related proposals, which promote transformation in DoD and enhance its ability to prosecute the Global War on Terror. Some proposals would increase flexibility to train and equip partner nations operating with or instead of U.S. forces for critical counter-terrorism and stabilization operations. Other proposals provide critical authorities for Combatant Commanders to address security priorities in different regions of the world and to respond better and more effectively to support allies, coalition partners, and others in the Global War on Terror. These include:

Defense Coalition Support Account: This proposal would amend the Arms Export Control Act to authorize establishment of an account for advance purchases of equipment to be used by coalition partners in the Global War on Terror. This proposal is needed for partners who deploy with U.S. military operations, and for DoD's ability to effectively train and equip partners and build their capacity to take on common challenges. Currently, even when authority and funding are available, it can take months or years to procure vital equipment.

Clarification of Rapid Acquisition Authority to Respond to Combat Emergencies: This proposal would clarify the rapid acquisition authority provided to the Secretary of Defense to respond to combat emergencies in section 806 of the Bob Stump National Defense Authorization Act. It would allow the use of this authority to address any deficiency that has resulted in combat casualties or fatalities, provide the Secretary of Defense the ability to delegate this authority to the Under Secretary of Defense (Acquisition, Technology & Logistics), and authorize the waiver of domestic source and domestic content restrictions that would inhibit rapid acquisition of equipment needed by the warfighters.

Protection of Information Regarding Weapons of Mass Destruction: This proposal would exempt from disclosure under the Freedom of Information Act certain information in the possession of the Department of Defense concerning weapons of mass destruction that does not also meet the threshold for national security classification.

Flexibility in Complying with Air Quality Plans: This proposal would clarify application of the conformity provisions of the Clean Air Act to avoid unnecessarily restricting the flexibility of DoD, State, and Federal regulators to accommodate new or realigned military readiness activities into applicable local air pollution control plans.

Flexibility in Range Management: This proposal would clarify application of the Solid Waste Disposal Act (SWDA) (also known as the Resource Conservation and Recovery Act (RCRA)) and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) to military readiness activities.

Prohibition of Court-Ordered Payments Before Retirement Based on Imputation of Retired Pay: Many State courts have mandated immediate payment of the value of a Service member's pension pursuant to a divorce decree even when the Servicemember remains on active duty and does not draw retired pay. Courts requiring such payments fail to recognize that retirement-eligible Servicemembers do not necessarily control their date of retirement. Furthermore, some of our most experienced leaders are being forced to leave active duty in order to meet their court-ordered financial obligation. A September 1999 DoD report to Congress recommended such court orders be prohibited and advised that "[to] provide for the national defense, the armed forces must be allowed to control when a member is permitted to retire." The Administration urges Congress to adopt the requested proposal.

Improvements to Facilitate Targeted Shaping of the Armed Forces: The Administration urges the Senate to include all of the Administration requested expanded/reinstated Force Shaping tools to include voluntary separation pay incentives, early discharge (reduction-in-force) authority, and enhanced selective early retirement authority. DoD needs these authorities to facilitate strategic recapitalization plans developed in accordance with the QDR. The Committee's bill contains a portion of the original request for voluntary separation pay, but does not go far enough to incentivize personnel with more than 12 years of service to separate. In addition, failure to reinstate the enhanced selective early retirement authority hinders the ability to reach force projection targets. Failure to reinstate the reduction-in-force authority eliminates the ability to ensure the force projection targets are met all together. Furthermore, the Committee's bill does not limit the population to Servicemembers with less than 20 years of service. This would allow retirement eligible members to receive a full separation package.

Amendments to Presidential Reserve Call-Up Authority: This proposal would lengthen the duration of service for members of the Selected Reserve and the Individual Ready Reserve involuntarily called to active duty from the existing maximum of 270 days to 365 days. This would facilitate greater "boots on the ground" time for Reserve component deployments, while inserting a "fair treatment" provision into the process of deciding who is involuntarily ordered to active duty under the statute. This proposal also would allow the President to order reservists to active duty to provide assistance in serious natural or manmade disasters, accidents, or catastrophes when the response capabilities of local, state, and Federal civilian agencies have been, or will be, exceeded.

The Administration looks forward to working with the Congress to address these and other budget, policy, and constitutional concerns.

* * * * *

DA 030