**No. 07-547C**
**(Judge Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**PATRICIA R. SHARP,**
**MARGARET M. HAVERKAMP,**
**and IVA DEAN ROGERS,**

**Plaintiffs,**

**v,**

**THE UNITED STATES,**

**Defendant.**

---

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS WITH APPENDIX**

---

**TABLE OF CONTENTS**

**Page**

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ........ 1

PRELIMINARY STATEMENT ........ 1

STATEMENT OF THE ISSUE ........ 5

STATEMENT OF THE CASE ........ 5

ARGUMENT ........ 5

I. BASIC PRINCIPLES OF STATUTORY CONSTRUCTION REQUIRE THE DENIAL OF DEFENDANT'S MOTION ........ 5

II. SECTION 1311(e) BARS DEFENDANT FROM OFFSETTING PLAINTIFFS' SURVIVOR BENEFIT PLAN COMPENSATION ........ 7

A. Plain Meaning, Logic, and Context Support Plaintiffs' Reading of § 1311(e) ........ 7

1. The Statute Plainly Overrides the SBP Offset for Affected Surviving Spouses ........ 8

2. Defendant's Interpretation Would Demand Excessive Specificity from Congress ........ 10

3. A Partial Repeal Is the Right Result, Which Does Not Detract from the Harmony Between Titles 10 and 38 Nor Does It Lead to Absurd Results ........ 11

B. The Legislative History Requires That Defendant Be Barred from Offsetting Plaintiffs' Survivor Benefit Plan Compensation ........ 12

1. Congress Reacted to the CBO's New Analysis by Adding an Explicit "No Reduction in Benefits" Provision ........ 13

2. At Least Two Congressmen Have Publicly Explained the Intent of § 1311(e) ........ 15

C. The Other Bills Cited by Defendant Are Irrelevant or Support Plaintiffs' Reading of § 1311(e) ........ 16

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

### CASES

*Ameritech Corp. v. McCann*, 403 F.3d 908 (7th Cir. 2005) ........ 14

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........ 6

*Brown v. Gardner*, 513 U.S. 115 (1994) ........ 7

*Cherokee Nation of Oklahoma v. United States*, 73 Fed. Cl. 467 (2006) ........ 6

*Chickasaw Nation v. United States*, 534 U.S. 84 (2001) ........ 6

*Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892) ........ 7

*Crooks v. Harrelson*, 282 U.S. 55 (1930) ........ 7

*Hix v. Gober*, 225 F.3d 1377 (Fed. Cir. 2000) ........ 7

*Howard v. United States*, 354 F.3d 1358 (Fed. Cir. 2004) ........ 11

*Kawa v. United States.*, 77 Fed. Cl. 294 (June 28, 2007) ........ 5

*Lamie v. United States Trustee.*, 540 U.S. 520 (2004) ........ 7, 9, 12

*Splane v West*, 216 F.3d 1058 (Fed. Cir. 2000) ........ 6, 7, 9

*Tennessee Valley Authority v. Hill*, 437 U.S. 153 (1978) ........ 7

### STATUTES

10 U.S.C. § 1448 ........ 11, 17

10 U.S.C. § 1450(c) ........ 9, 17

10 U.S.C. § 1450(c)(1) ........ 5

38 U.S.C. § 101(2) ........ 11

38 U.S.C. § 103(d)(2)(B) ........ 1, 5, 8

38 U.S.C. § 1311(e) ........ passim

38 U.S.C. § 5304 .......... passim

LEGISLATIVE MATERIALS

149 Cong. Rec. H9305 (Oct. 8, 2003) .......... 14

149 Cong. Rec. H9310 (Oct. 8, 2003) .......... 8

The Congressional Budget Office Cost Estimate, H.R. 1108 (Apr. 19, 2002) .......... 13

The Congressional Budget Office Cost Estimate, H.R. 36 (Mar. 28, 2003) .......... 14

H.R. Rep. No. 107-472 (2002), *Veterans' and Survivors' Benefits Expansion Act of 2002* .......... 2, 13, 15,

H.R. Rep. No. 108-211 (2003), *Veterans Benefits Act of 2003* .......... 8, 14

H.R. 808, 109th Cong. (Feb. 15, 2005), *Military Surviving Spouses Equity Act* .......... 17

H.R. 1589, 110th Cong. (Mar. 20, 2007), *Military Surviving Spouses Equity Act* .......... 17

Public L. No. 108-183, Veterans Benefits Act of 2003 .......... 1

Public L. No. 108-136, Section 641 of the National Defense Authorization Act for Fiscal Year 2004 .......... 11, 12

OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2007) .......... 5

Eskridge, W.N., Frickey, P.P & Garrett, E., Legislation and Statutory Interpretation (2003) .......... 7

Philpott, T., "Congress, DOD Differ On Scope Of Restored Widow Benefits," *Military Update* (The Fleet Reserve Association) (Jan. 15, 2004) .......... 15

# INDEX TO PLAINTIFFS' APPENDIX

**Document** **Page**

H.R. Rep. No. 107-472 (2002),
*Veterans' and Survivors' Benefits Expansion Act of 2002* ................................1

H.R. Rep. No. 108-211 (2003), *Veterans Benefit Act of 2003*....................................24

149 Cong. Rec. H9305 and H9310 (Oct. 8, 2003).....................................................91

The Congressional Budget Office Cost Estimate, H.R. 1108 (Apr. 19, 2002)............99

The Congressional Budget Office Cost Estimate, H.R. 36 (Mar. 28, 2003) .............103

Philpott, T., "Congress, DOD Differ On Scope Of Restored Widow Benefits,"
*Military Update* (The Fleet Reserve Association) (Jan. 15, 2004)................107

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Patricia R. Sharp, Margaret M. Haverkamp, and Iva Dean Rogers ("Plaintiffs") respectfully request that the Court deny the United States' ("Defendant's") Motion to Dismiss their complaint under Rule 12(b)(6) of the Court's Rules ("RCFC"). Plaintiffs rely upon the pleadings, the following brief, its supporting materials, and the materials attached to Defendant's brief.

**PRELIMINARY STATEMENT**

The Veterans Administration pays Dependency and Indemnity Compensation ("DIC") to surviving spouses of military members who die of service-connected causes. Prior to 2003, surviving spouses lost their right to DIC if they remarried. The apparent rationale for this policy was that the new spouse could support the surviving spouse of the deceased veteran. But later in life, a prospective new spouse in or nearing retirement may in fact not be in a position to do so, and the prospect of losing DIC in that situation was also punitively anti-marriage because it created a significant financial disincentive to remarriage. Congress therefore reinstated DIC for surviving spouses of deceased military members who remarry at a late age. *See* Public Law 108-183 ("Veterans Benefits Act of 2003"). Specifically, Section 101(a) of that law amended 38 U.S.C. § 103(d)(2)(B) to restore DIC to surviving spouses who remarry after age 57.

But, recognizing that its reinstatement of DIC could trigger a corresponding reduction in benefits to surviving spouses who were also eligible for Survivor Benefit Plan ("SBP") payments, Congress acted to ensure it was not giving with one hand while taking away with the other. Thus, Section 101(b) of the Veterans Benefits Act of 2003, codified as 38 U.S.C. § 1311(e), simultaneously directed that, for any individual whose DIC is restored by § 103(d)(2)(B), and "who is also eligible for benefits under another provision of law by reason of

such individual's status as the surviving spouse of a veteran, then, **notwithstanding any other provision of law (other than section 5304(b)(3) of this title), no reduction in benefits** under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section." (emphasis added). This second section ensured that DIC restored by this Act would not be rendered meaningless by a commensurate offset of SBP payments. The legislative history of the identical "no reduction in benefits" language in a prior bill unequivocally makes clear that this is the purpose of this statutory text:

> "Moreover, the Committee has included language so that this additional amount will be paid to all remarried surviving spouses, and that no reduction of other benefits to which the surviving spouse may be entitled, *such as Survivor Benefit Plan payments*, would occur."

PA 6 (H.R. Rep. No. 107-472, at 6 (2002)) (emphasis added). This legislative history also confirms that by restoring DIC to spouses who remarry late in life without reducing their SBP payments, Congress intended to remove an economic impediment to remarriage without exacting a high price in return. An elderly surviving spouse could thus remarry without fear of economic deprivation and be able to live in comfort and dignity—while legally married.

The principles of statutory construction, properly applied, require the denial of Defendant's motion. A logical reading of §1311(e)'s plain text compels the conclusion that it must prevent *some* potential offsetting reduction in benefits for those who have their DIC restored by the Act. With the phrase "notwithstanding any other provision of law (other than section 5304(b)(3) of this title)," Congress specified § 5304(b) as the *sole* benefit-reducing provision it wanted to exempt from its reach.

In the face of this evidence, Defendant responds with three arguments: (1) the word "veteran" is too imprecise to accomplish the goal of truly restoring DIC because not all

spouses of veterans receive DIC benefits, (2) Plaintiffs' reading of the statute cannot be right because it is "absurdly" underinclusive by not eliminating the offset for all surviving spouses, and (3) the Congressional Budget Office's report and subsequent legislative history of different bills require the conclusion that Congress failed in its effort to eliminate the SBP offset for surviving spouses. Each of these arguments fails.

First, Congress was not seeking to *avoid* addressing SBP by referring to benefits generally for "the surviving spouse of a veteran." SBP is a benefit for the surviving spouse of a veteran who met particular statutory criteria, including being eligible for retired pay and not opting out of the program. That Congress did not further specify these criteria, but merely referred broadly to benefits for surviving spouses of veterans, provides no basis to withhold protection for surviving spouses of veterans who do qualify for DIC. Further, the government fails to identify any other benefit of veterans that *would* be protected by its interpretation of the provision at issue, and thus improperly treats § 1311(e) as mere surplusage. It is far more reasonable to conclude that Congress was simply trying to maintain consistency with the terminology already defined in Title 38 and employed in Veterans Benefits Act of 2003 by using the word "veteran" than it is to conclude that Congress enacted a statutory provision with no effect.

Second, Defendant's contention that Plaintiffs' understanding of § 1311(e) would lead to absurd "disparate treatment" ignores the larger context in which § 1311(e) arose. Congress has met budgetary and executive branch resistance to its efforts to provide adequate support for surviving spouses of veterans by fully repealing the SBP offset. In the face of this pressure, Congress has left the full elimination for another day, but has compromised and enacted a pro-marriage "first step" toward this goal. In view of Congress's ongoing attention to

the possibility of full repeal, however, there is nothing inequitable about the restoration of DIC and full SBP to eligible surviving spouses.

Third, the existence of the Congressional Budget Office ("CBO") report relied upon so heavily by Defendant actually supports Plaintiffs. Congress *added* the provision in question *after* it received a report from the CBO highlighting the offset issue. The fact that the CBO report assumed that there would be an SBP offset for those with restored DIC benefits before the § 1311(e) language was added to the bill (and happened to remain in the report afterwards) proves nothing for Defendant. Indeed, this sequence of events strongly suggests that Congress was acting to correct an inequitable situation that had been brought to its attention by the CBO report. Moreover, at least two members of Congress, including a cosponsor of Public Law 108-183, have publicly endorsed Plaintiffs' view, explaining that the purpose of § 1311(e) was to ensure the restored DIC benefits would not be taken back by the government through an offset.

In sum, Defendant's motion should be denied because its stingy interpretation of 38 U.S.C. § 1311(e) fails to give effect to the manifest intent of Congress. It cannot be the case that § 1311(e)'s "no reduction in benefits" provision, which Congress debated several times and continues to consider extending to a wider class of beneficiaries, is about nothing. Yet, as a practical matter, that is what Defendant's interpretation implies. Clear legislative history confirms Plaintiffs' interpretation of the statute, and currently pending bills proposing a broader abolition of the SBP offset confirm that Congress is engaged in an ongoing effort to remedy the offset problem. The Court should reject Defendant's attempt, through creative legal interpretation, to nullify Congress's incremental repeal of the offset.

## STATEMENT OF THE ISSUE

Does Public Law 108-183 § 101(b)'s requirement that there be "no reduction in benefits" for which an individual is eligible as the "surviving spouse of a veteran" preclude offsetting of SBP benefits by the amount of DIC reinstated by that Law?

## STATEMENT OF THE CASE

Plaintiffs agree with Defendant's statement of the case except for its discussion of the effects of 10 U.S.C. § 1450(c)(1) and subsequently enacted 38 U.S.C. § 1311(e). *See* D. Br. at 5-7. Defendant omits a key piece of the analysis by rendering the "no reduction in benefits" language in § 1311(e) a nullity.

Section 1450(c)(1) does not trump the "no reduction in benefits" language in 38 U.S.C. § 1311(e). To the contrary, § 1311(e), the more specific and later statute, is controlling. Section 1450(c)(1) retains its effect only in the general case of surviving spouses who did not remarry after age 57 and therefore did not have their DIC restored by § 103(d)(2)(B).

## ARGUMENT

### I.
### BASIC PRINCIPLES OF STATUTORY CONSTRUCTION REQUIRE THE DENIAL OF DEFENDANT'S MOTION

"In considering the Government's motion to dismiss, the Court must assume the truth of all well-pleaded allegations in plaintiff's [Complaint] and draw all reasonable inferences in plaintiff's favor." *Kawa v. United States*, 77 Fed. Cl. 294, 298 (June 28, 2007). All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2007). Dismissal is only appropriate when the moving party establishes that the accepted pleading standard set forth in RCFC 8(a)(2) has not been met: "once a claim [for relief] has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Moreover, "once a claim for relief has been stated, a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* at 1969 (citation and internal quotation marks omitted). *Bell Atlantic* does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," so that in a complaint a plaintiff must "nudge" its claim "across the line from conceivable to plausible." *Id.* at 1974. So long as the factual allegations in the complaint "raise a right to relief above the speculative level," the complaint will withstand a 12(b)(6) challenge. *Id.* at 1965.

However, as Defendant's brief makes clear, the dispute in this motion turns not on the sufficiency of Plaintiffs' factual allegations, but on statutory interpretation. The construction of a statue begins with the text of the statute itself. *See, e.g.*, *Splane v West*, 216 F.3d 1058, 1068 (Fed. Cir. 2000). The Court "must construe a statute, if at all possible, to give effect and meaning to all its terms." *Id.* In so doing, the Court should avoid interpretations that would cause any part of the statute's text to have little or no effect. *Cherokee Nation of Okla. v. United States*, 73 Fed. Cl. 467, 477 (2006) ("Therefore, the Court applies the cardinal principle of statutory construction that 'a statute ought, upon the whole, be so construed that, if it can be prevented, no clause, sentence, or word, shall be superfluous, void, or insignificant.'") (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001)). Construing words "as surplusage" is reserved for situations in which a court determines the words were "inadvertently inserted" or are "repugnant to the rest of the statute[.]" *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (internal quotation marks omitted).

In addition, while absurd consequences are naturally to be avoided, a defendant must meet a high bar to show that a given set of consequences will be "absurd." The *Holy*

*Trinity* absurd-consequences doctrine is at best only applicable in "'rare and exceptional circumstances. . . . And there must be something to make plain the intent of Congress that the letter of the statute is not to prevail.'" *Tenn. Valley Authority v. Hill*, 437 U.S. 153, 187 n.33 (1978) (citing *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). And the seminal case establishing that doctrine also requires the consideration of the whole legislation and the circumstances surrounding its enactment. *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459 (1892). Defendant, in this motion, likewise acknowledges that a statute should be read in light of its "evident legislative purposes." D. Br. at 9 (citing *Lamie v. U.S. Tr.*, 540 U.S. 520, 530 (2004); *Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000)).

Finally, the presumption that veterans' benefits statutes are construed liberally for their beneficiaries is applicable in this case. Eskridge, W.N., Frickey, P.P & Garrett, E., Legislation and Statutory Interpretation 382 (2003); *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("interpretative doubt is to be resolved in the veteran's favor"); *see also Hix v. Gober*, 225 F.3d 1377, 1380 (Fed. Cir. 2000) (applying this rule to a surviving spouse's claim).

## II.

## SECTION 1311(e) BARS DEFENDANT FROM OFFSETTING PLAINTIFFS' SURVIVOR BENEFIT PLAN COMPENSATION

### A. Plain Meaning, Logic, and Context Support Plaintiffs' Reading of § 1311(e)

Section 1311(e) must be read in view of its language that there will not be a reduction in benefits from the restoration of DIC benefits "notwithstanding any other provision of law" with the sole exception of § 5304(b)(3). Additionally, the "no reduction in benefits" provision should not be interpreted as a nullity simply because Congress used a less specific phrase ("by reason of such individual's status as the surviving spouse of a veteran") than it could have. The statute's partial repeal of the offset is legitimate and does not lead to absurd results.

### 1. The Statute Plainly Overrides the SBP Offset for Affected Surviving Spouses

The plain language of § 1311(e)'s "no reduction in benefits" provision is unambiguous: the restoration of DIC, through § 103(d)(2)(B), to surviving spouses who remarry after age 57 should cause "no reduction in benefits" due to those individuals under other provisions of law. Thus, for example, an eligible person who after the law went into effect began receiving the DIC should not lose any amount, let alone the full DIC amount, because the person is now receiving DIC. This is the natural reading of the statute that aligns with the legislative purpose of encouraging older surviving spouses to remarry without fear of losing benefits. *See* PA 35 (H.R. Rep. No. 108-211, at 12 (2003)). The statement of Congressman Bilirakis, on the House Floor, as the bill was being introduced for vote, poignantly reveals the purpose behind this law:

> DIC, as others have already said, is a benefit accorded to the surviving dependents of those of the Armed Forces who died while on active duty or of a service-connected cause. Who would argue that this benefit is undeserved? I have always felt that their sacrifices even exceed, even exceed, those of the service member. DIC is the only Federal annuity program that does not allow a widow who is receiving compensation to remarry at an older age and retain her annuity. Earlier this year I reintroduced legislation which provides that the remarriage of the surviving spouse of a veteran after age 55 shall not result in termination of Dependency and Indemnity Compensation. I have heard, as I am sure most of us, from military widows from across the country who have found someone they would like to spend the rest of their lives with but cannot afford to do so because of the current law. They have expressed deep frustrations about not being able to remarry. Many of these women lost their husbands at a very young age and have been alone for a long time. They have finally found someone to share their lives with, but they are afraid to remarry because they will lose their DIC benefits. I think it is a wonderful thing if an older person finds companionship, falls in love, and decides to marry. I do not think we should be discouraging such marriages by making them financially burdensome. PA 96 (149 Cong. Rec. H9310 (daily ed. Oct. 8, 2003) (statement of Rep. Bilirakis)).

On the other hand, Defendant offers no meaningful interpretation of § 1311(e). Congress specifically carved out a single exception to the "no reduction in benefits" effect and that exception is definitely not 10 U.S.C § 1450(c). Congress excepted § 5304(b)(3) of Title 38, thus maintaining the prohibition on the concurrent receipt of benefits by reason of the death of more than one person to whom the surviving spouse was married. Further, the authorities cited by Defendant counsel against Defendant's attempted addition to or subtraction from the statutory text. "The legislative history cited in the [Defendant's brief], while not altogether unpersuasive, cannot overcome the canons of construction that require us to give effect to the clear language of a statute *and avoid rendering any portions meaningless or superfluous*." *Splane*, 216 F.3d at 1068-69 (emphasis added). Defendant's statutory construction should be rejected because its effect is to read a key phrase—notwithstanding *any other* provision of law (other than § 5304(b)(3) of this title)—out of the statute. *See id.* at 1068. And it should further be rejected for reading absent words—an exception to "no reduction in benefits" to allow the SBP offset—into the statute. Such interpretation results "not [in] a construction of [the] statute, but, in ... rewriting rules that Congress has affirmatively and specifically enacted." *Lamie v. U.S. Tr.*, 540 U.S. 520, 538 (2004) (internal citations and quotations omitted). Congress explicitly called out the particular concurrent receipt prohibition it intended to maintain (that in § 5304(b)(3)), and it did not stake out any such safe harbor for the prohibition on concurrent receipt set out in § 1450(c) of Title 10.

Furthermore, although Defendant takes a firm position on what § 1311(e) does *not* mean, it makes no attempt to explain what the provision *does* mean. Statutory language enacted by Congress is presumed to have some effect. *Splane*, 216 F.3d at 1069. Tellingly,

Defendant does not identify any effect the "no reduction in benefits" language would have if not interpreted as Plaintiffs contend.

While Defendant accurately points out that home loan, medical, and educational benefits are DVA benefits provided under Title 38, it makes no argument that any "reduction in [those] benefits" could have occurred absent § 1311(e)'s ban on "reduction in benefits." Of the four categories of benefits restored by Public Law 108-183 § 101(a) (DIC, home loan, medical, and educational benefits), DIC is the only one Defendant identifies as potentially triggering a "reduction in benefits" upon being restored, and SBP is the only benefit Defendant identifies as potentially being reduced. If Congress was not intending through § 1311(e) to preclude SBP offsetting, then it is not at all clear what Congress was intending to do.

### 2. Defendant's Interpretation Would Demand Excessive Specificity from Congress

Defendant's argument that "veteran" is too imprecise to accomplish the goal of doing away with the SBP offset is unreasonable. Carrying Defendant's argument to its logical conclusion reveals the unreasonableness of its contention that benefits for which an individual is "eligible . . . as the surviving spouse of a veteran" do not include SBP. Plaintiffs *are* surviving spouses of veterans. *All* surviving spouses eligible for SBP are surviving spouses of veterans.[1] That they are surviving spouses of a particular *type* of veteran, namely one who qualified for and participated in SBP, does not make them any less surviving spouses of veterans. But Defendant's logic demands that Congress specify the type of veteran to which the surviving spouse had been married to render her eligible for SBP. If that were really required, then to be effective the provision would have to read "surviving spouse of a military retiree who was

---

[1] Defendant agrees that military retirees are a subset of veterans. D. Br. at 12 ("[A] retiree will always be considered a veteran[.]").

eligible for retired pay or who would have been eligible for reserve-component retired pay but for the fact that he or she was under 60 years of age, did not elect (with spousal consent) not to participate in SBP, had premiums for SBP deducted from retirement pay," and so on through the nine-page-long set of requirements governing SBP eligibility in 10 U.S.C. § 1448. Section 1311(e) dispenses with that unnecessary specificity in favor of the more concise, if technically overinclusive for the specific purpose of addressing SBP, phrase "surviving spouse of a veteran." Congress's manifest intent should not be thwarted merely because it chose to be economical with words.

Congress's use of the word "veteran" in § 1311(e) can be further understood in light of its use of the term in Title 38 and the whole Act at issue here. The term "veteran" is defined in Title 38 of the U.S. Code, *see* 38 U.S.C. § 101(2); other SBP-related terms like "military retiree" and "retiree" are not. Moreover, the Veterans Benefits Act of 2003 is replete with references to veterans, but never specifically calls out "military retiree." And Congress's use of "surviving spouse of a veteran" in § 1311(e) is consistent with the terminology in § 103 of Title 38, which uses the same phrase throughout and is cross-referenced in § 1311(e).

### 3. A Partial Repeal Is the Right Result, Which Does Not Detract from the Harmony Between Titles 10 and 38 Nor Does It Lead to Absurd Results

There is nothing impermissible about § 1311(e) effecting a partial repeal of the offset statute. The Federal Circuit has already recognized an effective partial repeal of 38 U.S.C. § 5304, the prohibition on disabled military retirees' concurrent receipt of both military retirement pay and disability compensation from the Department of Veterans Affairs. *See Howard v. United States*, 354 F.3d 1358, 1360 (Fed. Cir. 2004). In 2003, Congress partially repealed this ban when it enacted Section 641 of the National Defense Authorization Act for

Fiscal Year 2004, Pub. L. No. 108-136. *Id.* This partial repeal allowed members or former members of the uniformed service who are entitled to retirement pay and disability pay to be paid both, without regard to §§ 5304 and 5305 of Title 38, if they are rated at least 50 percent disabled, and if they have had at least 20 years of military service. *Id.* And there was nothing absurd about Congress choosing a particular sub-group of military retirees for this exemption from the ban on concurrent receipt.

In *Lamie*, the Supreme Court rejected an argument similar to that of the Defendant here: that the reading of the plain text of the statute leads to absurd results. 540 U.S. at 536. The Court concluded that the plain meaning of the statutory text did *not* lead to absurd results and thus did not require the Court to treat the text as if it were ambiguous. *Id.* The Court refused to "attribute to Congress an illogical, penny-wise and pound-foolish determination." *Id.* The Court admitted that its "unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from 'deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill.'" *Id.* Plaintiffs' reading of the statutory text is the only reading that gives every statutory word meaning and effect. Moreover, the outcome intended here by Congress—to better the position of surviving spouses who remarry at a late age, to avoid discouraging them from remarrying when they need companionship, and to do both these things by awarding them a reinstatement of DIC benefits without any offsets because of such reinstatement—is the right thing to do, and not (as Defendant labels it) an absurd result.

**B. The Legislative History Requires That Defendant Be Barred from Offsetting Plaintiffs' Survivor Benefit Plan Compensation**

Defendant's reliance on the CBO Cost Estimate and subsequent legislative history of different laws is misplaced because a more holistic approach, including several more

authoritative and more relevant legislative history sources, reveals that Congress specifically intended to preclude the SBP offset.

### 1. Congress Reacted to the CBO's New Analysis by Adding an Explicit "No Reduction in Benefits" Provision

Before the introduction of the H.R. 2297 during the 108th Congress, 1st Session, the bill that eventually matured into the statute at issue here, the House introduced H.R. 36. H.R. 36 was identical in relevant part to H.R. 2297. Neither of the two bills contained an explicit "no reduction in benefits" provision when they were first introduced. Similarly, during the previous session, the Second Session of the 107th Congress, the House introduced two bills, H.R. 1108 and H.R. 4085, both requiring a retention of DIC benefits for surviving spouses who remarry at a late age, and differing mainly in the age limitation placed on the age the person remarries (55 years vs. 65 years, respectively).

Significantly, and despite the explicit "no reduction in benefits" language in H.R. 4085 almost identical to that in the enacted statute at issue in this case (see attached PA 2)[2], the Congressional Budget Office *never* interpreted any of the bills preceding H.R. 2297 as being trumped by the SBP offset statute. *See* PA 99-102 (CBO Cost Estimate for H.R. 1108 (Apr. 19, 2002)); PA 13-18 (H.R. Rep. No. 107-472, CBO Cost Estimate for H.R. 4085, at 13-18 (2002));

[2] The proposed amendment to § 1311 read at the time as follows: (e) In the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(A) of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, notwithstanding any other provision of law, no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section. PA 2 (H.R. Rep. No. 107-472, at 2 (2002)). Thus, the now enacted § 1311(e) is identical to that proposed in H.R. 4085, except that the enacted statute specifically excludes benefits under § 5304(b)(3) of Title 38 from the coordination, allowing the offset of such benefits.

PA 103-106 (CBO Cost Estimate for H.R. 36 (Mar. 28, 2003)). In fact, in its cost estimate for H.R. 2297, CBO stated in particular that its "cost estimate for H.R. 36 did not account for *savings in military retirement programs* that would occur as a result of both bills." PA 66 (H.R. Rep. No. 108-211, at 43 (2003)) (emphasis added). Thus, CBO recognized that its cost estimate for H.R. 2297—for the first time—presented an entirely new interpretation of the meaning of the same language it had reviewed at least several times before in conjunction with at least three prior similar, if not almost identical, proposed bills.

And Congress reacted to the new interpretation of the bill in the July 15, 2003 CBO cost estimate by adding explicit "no reduction in benefits" language to H.R. 2297. *Compare* PA 25-26 (H.R. Rep. No. 108-211, at 2-3 (July 15, 2003)) *with* PA 91 (149 Cong. Rec. H9305 (daily ed. Oct. 8, 2003) (bill as presented for House vote)). This change clearly expressed Congress's intent to overrule the CBO's new interpretation of the bill and ensure that its effect was commensurate with its explicit purpose of "Retention of DIC Compensation for Surviving Spouses Remarrying After Age [57]" where that surviving spouse is also a recipient of SBP benefits. *Id.* The CBO's subsequent revised cost estimate failed to acknowledge the change in the bill to include the "no reduction in benefits" language. DA 18. But the CBO's "view—on which Congress did not vote, and the President did not sign—cannot alter the meaning of enacted statutes." *Ameritech Corp. v. McCann*, 403 F.3d 908, 913 (7th Cir. 2005).

Over a year and a half before that, the House had explicitly stated its specific intent with respect to the "no reduction in benefits" language: "Moreover, the Committee has included language so that this additional amount will be paid to all remarried surviving spouses, and that no reduction of other benefits to which the surviving spouse may be entitled, *such as Survivor Benefit Plan payments*, would occur." PA 6 (H.R. Rep. No. 107-472, at 6 (2002))

(emphasis added). And the House further clarified that the specific intent of "no reduction in benefits" was to "provide that in the case of an individual who is eligible for dependency and indemnity compensation under section 3(a) of the bill, and who is also entitled to benefits under any other provision of law, there shall be no reduction in benefits under such other provision of law, by reason of eligibility for dependency and indemnity compensation." *Id.* at 8.

### 2. At Least Two Congressmen Have Publicly Explained the Intent of § 1311(e)

Apart from the statements before the bill enactment, such as that quoted above from Representative Bilirakis, Members of Congress have since the enactment of the law confirmed that eliminating the SBP offset was the intent behind § 1311(e). One such congressman was a cosponsor of Public Law 108-183, and another expressed his view in direct refutation of the Department of Defense's interpretation of the statute.

Congressman Henry Brown, Jr. of South Carolina was a cosponsor and leading proponent of Public Law 108-183, and was chairman of the House Subcommittee on Veterans' Benefits in 2003. Immediately following the enactment of Public Law 108-183, Congressman Brown commented publicly on the purpose of § 1311(e), as reported in the publication *Military Update*:

> "We put a special paragraph in there to, basically, get [the Defense Department] to do that," Brown said. "This was to get the camel's nose under the tent, sort of like we did with concurrent receipt" for disabled retirees. "We did the Purple Heart folks first and then we went back and to address anybody with a [combat-related] disability. Then, last year we said anybody up to 50 percent [disabled] even outside of combat" will be able, within 10 years, to draw both full retired pay and VA disability compensation.[3]

[3] PA 107-109 (Philpott, T., "Congress, DOD Differ On Scope Of Restored Widow Benefits," *Military Update* (The Fleet Reserve Association) (Jan. 15, 2004) at http://www.fra.org/)

Congressman Brown's statements also provide an explanation for what Defendant characterizes as "disparate treatment." D. Br. at 17. Recognizing that budgetary constraints might impede it from restoring the full SBP annuity to all DIC-eligible surviving spouses at once, Congress opted to do so incrementally.

Congressman Frank Wolf has also publicly stated his disagreement with Defendant's interpretation of § 1311(e). In the very first year of § 1311(e)'s effectiveness, Congressman Wolf wrote to former Secretary of Defense Donald Rumsfeld on November 4, 2004 explaining that the intent of Congress in enacting the Veterans Benefit Act of 2003 was to "permit military widows eligible for Dependency and Indemnity Compensation (DIC) who remarry after age 57 to receive both DIC and Survivor Benefit Plan (SBP) payments without penalty." Congressman Wolf further opined that the Department of Defense was acting contrary to Congress's intent by offsetting the SBP benefits of surviving spouses who remarry after age 57. Compl. ¶ 21.[4]

### C. The Other Bills Cited by Defendant Are Irrelevant or Support Plaintiffs' Reading of § 1311(e)

Defendant cites a number of more recent bills targeting the SBP offset, in an effort to suggest that the offset requirement is alive and well. D. Br. at 15-17. This argument misses the point. Congress's more recent efforts to eliminate SBP offsetting for *all* DIC recipients indicate nothing about whether § 1311(e) eliminated it for *some* DIC recipients.

These later bills had broader scope. In 2005, Congress sought to eliminate the offset for all surviving spouses who receive both DIC and SBP, not just those whose DIC was

[4] It is also noteworthy that the Department of Defense, in at least Patricia Sharp's case, actually was paying out both DIC and full SBP benefits for several months after passage of Public Law 108-183 and abruptly changed course around October of 2004. Compl. ¶¶ 18-20.

restored by Public Law 108-183.[5] Since then, Congress has considered at least three more proposals to repeal the offset for all eligible surviving spouses.[6] Defendant apparently does not contend that any of the more recent bills would effect a repeal identical in scope to Plaintiffs' interpretation of § 1311(e).[7] Accordingly, it does not follow that Congress has acknowledged the continuing existence of an offset for Plaintiffs and others like them simply by considering these bills. And Defendant does not even contend that Congress has done so. Instead, Defendant only draws the obvious and irrelevant conclusion that "the SBP/DIC offset continues to exist under 10 U.S.C. § 1450(c)." D. Br. at 16. Of course it continues to exist, for the broader class of surviving spouses who were unaffected by Public Law 108-183.

If anything, the persistent emergence of bills in Congress proposing to fully repeal the SBP offset actually supports Plaintiffs' position that Public Law 108-183 enacted a partial repeal. These bills show a desire on the part of certain members of Congress, including Congressman Brown (on whose statement Defendant relies, D. Br. at 18), to end the ban on concurrent receipt of DIC and the full SBP annuity, a desire consistent with the enactment of a partial repeal in 2003. They further suggest that at least certain members of Congress are

---

[5] *See* Military Surviving Spouses Equity Act, H.R. 808, 109th Cong. (Feb. 15, 2005) at DA 71-72 (explicitly repealing the statutory section including the offset requirement, 10 U.S.C. § 1450(c), in its entirety); Military Surviving Spouses Equity Act of 2005, S.185, 109th Cong. (Jan. 26, 2005) at DA 73-75 (excepting from the offset provision all surviving spouses of military members who die on active duty and the surviving spouses of certain reservists; *see also* 10 U.S.C. § 1448(d) and (f)).

[6] *See* D. Br. at 15-16 (describing 2006 bill and citing its application to "all widows entitled to DIC"); Military Surviving Spouses Equity Act, H.R. 1589, 110th Cong. (Mar. 20, 2007) at DA 18-21 (explicitly repealing § 1450(c) in its entirety); S. 935, 110th Cong. (Mar. 20, 2007) at DA 22-24 (same).

[7] Alternatively, even if any of the more recent bills covered precisely the same ground Plaintiffs believe § 1311(e) does, the bills could simply evince an effort by Congress to overturn the Department of Defense's interpretation of § 1311(e).

following through on Congressman Brown's legislative strategy: to make things better for a few surviving spouses, at first, thereby highlighting the issue and, hopefully, generating a groundswell of support for a broader repeal.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: October 18, 2007

Respectfully submitted,

Edward R. Reines by Azra M. Hadzimehmedovic

Edward R. Reines
WEIL, GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
Fax: (650) 802-3100

Michael R. Franzinger
Azra M. Hadzimehmedovic
WEIL, GOTSHAL & MANGES, LLP
1300 Eye Street NW
Washington, DC 20005
Phone: (202) 682-7000
Fax: (202) 857-0939

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 18th, 2007, a copy of the foregoing "**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**" with its accompanying appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Azra M. Hadzimehmedovic
Azra M. Hadzimehmedovic