# Exhibit 2

108TH CONGRESS
1st Session

HOUSE OF REPRESENTATIVES

REPORT
108–211

# VETERANS BENEFITS ACT OF 2003

JULY 15, 2003.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. SMITH of New Jersey, from the Committee on Veterans' Affairs, submitted the following

# REPORT

[To accompany H.R. 2297]

[Including cost estimate of the Congressional Budget Office]

The Committee on Veterans' Affairs, to whom was referred the bill (H.R. 2297) to amend title 38, United States Code, to modify and improve certain benefits for veterans, and for other purposes, having considered the same, reports favorably thereon with amendments and recommends that the bill as amended do pass.

The amendments are as follows:

Strike all after the enacting clause and insert the following:

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Veterans Benefits Act of 2003".

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Expansion of Montgomery GI Bill education benefits for certain self-employment training.
Sec. 3. Extension in period of eligibility for survivors' and dependents' education benefits for individuals who are involuntarily ordered to full-time National Guard duty.
Sec. 4. Extension of Veterans' Advisory Committee on Education.
Sec. 5. Repeal of provisions relating to obsolete education loan program.
Sec. 6. Retention of Dependency and Indemnity Compensation for surviving spouses remarrying after age 55.
Sec. 7. Eligibility of surviving spouses who remarry for burial in national cemeteries.
Sec. 8. Permanent authority for State cemetery grants.
Sec. 9. Reinstatement of veterans vocational training program for certain pension recipients.
Sec. 10. Increase in amounts for certain adaptive benefits for disabled veterans.
Sec. 11. Presumptions of service-connection relating to diseases and disabilities of former prisoners of war.
Sec. 12. Extension of spina bifida benefits for children of Vietnam-era veterans.
Sec. 13. Permanent authority for housing loans for members of the Selected Reserve.
Sec. 14. Adjustment to home loan fees and uniformity of fees for qualifying Reserve members with fees for active duty veterans.
Sec. 15. Reinstatement of minimum requirements for sale of vendee loans.
Sec. 16. Rate of payment of benefits for certain Filipino veterans and their survivors residing in the United States.
Sec. 17. Burial benefits for new Philippine scouts residing in the United States.
Sec. 18. Extension of authority to maintain regional office in the Republic of the Philippines.
Sec. 19. Outstationing of transition assistance program personnel.
Sec. 20. Forfeiture of benefits for subversive activities.
Sec. 21. Technical amendments related to Jobs for Veterans Act.
Sec. 22. Technical and conforming relating to establishment of Social Security Administration as an independent agency.

19–006

**SEC. 2. EXPANSION OF MONTGOMERY GI BILL EDUCATION BENEFITS FOR CERTAIN SELF-EMPLOYMENT TRAINING.**

(a) DEFINITION OF TRAINING ESTABLISHMENT.—Section 3452(e) of title 38, United States Code, is amended by striking "means any" and all that follows and inserting "means any of the following:

"(1) An establishment providing apprentice or other training on the job, including those under the supervision of a college or university or any State department of education.

"(2) An establishment providing self-employment on-job training consisting of full-time training for a period of less than six months that is needed or accepted for purposes of obtaining licensure to engage in a self-employment occupation or required for ownership and operation of a franchise that is the objective of the training.

"(3) A State board of vocational education.

"(4) A Federal or State apprenticeship registration agency.

"(5) A joint apprenticeship committee established pursuant to the Act of August 16, 1937, popularly known as the 'National Apprenticeship Act' (29 U.S.C. 50 et seq.).

"(6) An agency of the Federal Government authorized to supervise such training.".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on the date that is six months after the date of the enactment of this Act and shall apply to self-employment on-job training approved and pursued on or after that date.

**SEC. 3. EXTENSION IN PERIOD OF ELIGIBILITY FOR SURVIVORS' AND DEPENDENTS' EDUCATION BENEFITS FOR INDIVIDUALS WHO ARE INVOLUNTARILY ORDERED TO FULL-TIME NATIONAL GUARD DUTY.**

(a) IN GENERAL.—Section 3512(h) of title 38, United States Code, is amended by inserting "or is involuntarily ordered to full-time National Guard duty under section 502(f) of title 32," after "title 10,".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect as of September 11, 2001.

**SEC. 4. EXTENSION OF VETERANS' ADVISORY COMMITTEE ON EDUCATION.**

(a) EXTENSION.—Subsection (c) of section 3692 of title 38, United States Code, is amended by striking "December 31, 2003" and inserting "December 31, 2009".

(b) MODIFICATION OF MEMBERSHIP REQUIREMENTS.—The second sentence of subsection (a) of such section is amended by striking "World War II, the Korean conflict era, the post-Korean conflict era,".

(c) TECHNICAL AMENDMENT.—Such section is further amended by striking "chapter 106" each place it appears and inserting "chapter 1606".

**SEC. 5. REPEAL OF PROVISIONS RELATING TO OBSOLETE EDUCATION LOAN PROGRAM.**

(a) TERMINATION OF PROGRAM.—Subchapter III of chapter 36 of title 38, United States Code, is repealed.

(b) TRANSFER OF LOAN FUND BALANCE.—Any balance as of the date of the enactment of this Act in the Department of Veterans Affairs Education Loan Fund shall be transferred to the Department of Veterans Affairs Readjustment Benefits Account.

(c) DISCHARGE OF LIABILITY.—The Secretary of Veterans Affairs shall discharge any outstanding liability of a veteran under such subchapter. Any overpayment declared under section 3698(e)(1) of that subchapter shall be waived without further process on the date on which funds are transferred under subsection (b).

(d) CLERICAL AMENDMENT.—The table of sections at the beginning of chapter 36 of such title is amended by striking the items relating to subchapter III and sections 3698 and 3699.

(e) CONFORMING AMENDMENTS.—(1) Section 3462(a) of such title is amended by striking paragraph (2).

(2) Section 3485(e)(1) of such title by striking "(other than an education loan under subchapter III)".

(3) Section 3512 of such title is amended by striking subsection (f).

**SEC. 6. RETENTION OF DEPENDENCY AND INDEMNITY COMPENSATION FOR SURVIVING SPOUSES REMARRYING AFTER AGE 55.**

(a) EXCEPTION TO TERMINATION OF BENEFITS UPON REMARRIAGE.—Section 103(d)(2)(B) of title 38, United States Code, is amended by inserting "1311 or" after "under section".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on—

(1) the first day of the first month that begins after the date of the enactment of this Act; or

(2) the first day of the fiscal year that begins in the calendar year in which this Act is enacted, if later than the date specified in paragraph (1).

(c) RETROACTIVE BENEFITS PROHIBITED.—No benefit may be paid to any person by reason of the amendment made by subsection (a) for any period before the effective date specified in subsection (b).

(d) APPLICATION FOR BENEFITS.—In the case of an individual who but for having remarried would be eligible for dependency and indemnity compensation under section 1311 of title 38, United States Code, and whose remarriage was before the date of the enactment of this Act and after the individual had attained age 55, the individual shall be eligible for such compensation by reason of the amendment made by subsection (a) only if the individual submits an application for such compensation to the Secretary of Veterans Affairs not later than the end of the one-year period beginning on the date of the enactment of this Act.

**SEC. 7. ELIGIBILITY OF SURVIVING SPOUSES WHO REMARRY FOR BURIAL IN NATIONAL CEMETERIES.**

(a) ELIGIBILITY.—Section 2402(5) of title 38, United States Code, is amended by striking "(which for purposes of this chapter includes an unremarried surviving spouse who had a subsequent remarriage which was terminated by death or divorce)" and inserting "(which for purposes of this chapter includes a surviving spouse who had a subsequent remarriage)".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply with respect to deaths occurring on or after January 1, 2000.

**SEC. 8. PERMANENT AUTHORITY FOR STATE CEMETERY GRANTS.**

Paragraph (2) of section 2408(a) of title 38, United States Code, is amended—

(1) by striking "for fiscal year 1999 and for each succeeding fiscal year through fiscal year 2004"; and

(2) by adding at the end the following new sentence: "Funds appropriated under the preceding sentence shall remain available until expended.".

**SEC. 9. REINSTATEMENT OF VETERANS VOCATIONAL TRAINING PROGRAM FOR CERTAIN PENSION RECIPIENTS.**

(a) ESTABLISHMENT OF NEW PROGRAM PERIOD.—Subsection (a)(3) of section 1524 of title 38, United States Code, is amended by striking "the period beginning on February 1, 1985, and ending on December 31, 1995" and inserting "the five-year period beginning on the date of the enactment of the Veterans Benefits Act of 2003".

(b) CONFORMING AMENDMENT.—Subsection (b)(4) of such section is amended by striking "December 31, 1995" and inserting "the end of the program period".

(c) OUTREACH.—Such section is further amended by adding at the end the following new subsection:

"(f) The Secretary shall ensure that the availability of vocational training under this section is made known through a variety of means, including the Internet and announcements in Department publications and other veterans' publications.".

(d) REPORTS.—Such section, as amended by subsection (c), is further amended by adding at the end the following new subsection:

"(g) Not later than two years after the date of the enactment of the Veterans Benefits Act of 2003, and each year thereafter, the Secretary shall submit to the Committees on Veterans' Affairs of the Senate and House of Representatives a report on the operation of this section. The report shall set forth an evaluation of the vocational training provided under this section for the period involved, and shall include an analysis of the cost-effectiveness of the vocational training provided under this section as well as data on the entered-employment rate of veterans pursuing such vocational training.".

(e) STYLISTIC AMENDMENTS.—Such section is further amended—

(1) by striking "of Veterans Affairs" in subsection (a)(1); and

(2) by striking "of this section" in subsections (a)(2), (b)(1), (b)(4) (both places it appears), (c), (d), and (e).

**SEC. 10. INCREASE IN AMOUNTS FOR CERTAIN ADAPTIVE BENEFITS FOR DISABLED VETERANS.**

(a) INCREASE IN ASSISTANCE AMOUNT FOR SPECIALLY ADAPTED HOUSING.—Section 2102 of title 38, United States Code, is amended—

(1) in the matter preceding paragraph (1) of subsection (a), by striking "$48,000" and inserting "$50,000"; and

(2) in subsection (b)(2), by striking "$9,250" and inserting "$10,000".

(b) INCREASE IN AMOUNT OF ASSISTANCE FOR AUTOMOBILE AND ADAPTIVE EQUIPMENT FOR CERTAIN DISABLED VETERANS.—Section 3902(a) of such title is amended by striking "$9,000" and inserting "$11,000".

(c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) shall apply with respect to assistance furnished on or after the date of the enactment of this Act.

**SEC. 11. PRESUMPTIONS OF SERVICE-CONNECTION RELATING TO DISEASES AND DISABILITIES OF FORMER PRISONERS OF WAR.**

Subsection (b) of section 1112 of title 38, United States Code, is amended to read as follows:

"(b)(1) For the purposes of section 1110 of this title and subject to the provisions of section 1113 of this title, in the case of a veteran who is a former prisoner of war—

"(A) a disease specified in paragraph (2) shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service; and

"(B) if the veteran was detained or interned as a prisoner of war for not less than thirty days, a disease specified in paragraph (3) which became manifest to a degree of 10 percent or more after active military, naval, or air service shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service.

"(2) The diseases specified in this paragraph are the following:

"(A) Psychosis.

"(B) Any of the anxiety states.

"(C) Dysthymic disorder (or depressive neurosis).

"(D) Organic residuals of frostbite, if the Secretary determines that the veteran was interned in climatic conditions consistent with the occurrence of frostbite.

"(E) Post-traumatic osteoarthritis.

"(3) The diseases specified in this paragraph are the following:

"(A) Avitaminosis.

"(B) Beriberi (including beriberi heart disease).

"(C) Chronic dysentery.

"(D) Helminthiasis.

"(E) Malnutrition (including optic atrophy associated with malnutrition).

"(F) Pellagra.

"(G) Any other nutritional deficiency.

"(H) Cirrhosis of the liver.

"(I) Peripheral neuropathy except where directly related to infectious causes.

"(J) Irritable bowel syndrome.

"(K) Peptic ulcer disease.".

**SEC. 12. EXTENSION OF SPINA BIFIDA BENEFITS FOR CHILDREN OF VIETNAM-ERA VETERANS.**

(a) ELIGIBLE CHILDREN.—Subchapter I of chapter 18 of title 38, United States Code, is amended by inserting before section 1802 the following new section:

**"§ 1801. Persons eligible for benefits**

"An individual is an eligible child for purposes of this subchapter if the individual is suffering from spina bifida and is—

"(1) a child as defined in section 1821(1) of this title; or

"(2) the natural child, regardless of age or marital status, of a parent who during the period beginning on October 1 1967, and ending on May 7 1975, performed active military, naval, or air service in the Republic of Korea in the area between the south line of the Demilitarized Zone and a line five miles south of the Civilian Control Line established with respect to the Demilitarized Zone, but only if the individual was conceived after the parent performed such service.".

(b) HEALTH CARE.—Section 1803(a) of such title is amended by striking "a child of a Vietnam veteran who is suffering from spina bifida" and inserting "an eligible child".

(c) VOCATIONAL TRAINING AND REHABILITATION.—Section 1804(a) of such title is amended by striking "a child of a Vietnam veteran who is suffering from spina bifida" and inserting "an eligible child".

(d) MONETARY ALLOWANCE.—Section 1805(a) of such title is amended by striking "any child of a Vietnam veteran" and inserting "any eligible child".

(e) CONFORMING AMENDMENTS.—Chapter 18 of such title is amended as follows:

(1) The heading of the chapter is amended to read as follows:

**"CHAPTER 18—DISABILITY BENEFITS FOR CHILDREN OF VIETNAM VETERANS AND OTHER VETERANS EXPOSED TO HERBICIDE AGENTS".**

(2) The heading of subchapter I is amended to read as follows:

"SUBCHAPTER I—CHILDREN BORN WITH SPINA BIFIDA".

(3) The table of sections at the beginning of the chapter is amended—

(A) by striking the item relating to subchapter I and inserting the following:

"SUBCHAPTER I—CHILDREN BORN WITH SPINA BIFIDA";

and

(B) by inserting before the item relating to section 1802 the following new item:

"1801. Persons eligible for benefits.".

(f) TABLES OF CHAPTERS.—The items relating to chapter 18 in the tables of chapters at the beginning of title 38, United States Code, and at the beginning of part II of such title, are amended to read as follows:

"18. Disability Benefits for Children of Vietnam Veterans and Other Veterans Exposed to Herbicide Agents ........ 1801".

**SEC. 13. PERMANENT AUTHORITY FOR HOUSING LOANS FOR MEMBERS OF THE SELECTED RESERVE.**

Section 3702(a)(2)(E) of title 38, United States Code, is amended by striking "For the period" and all that follows through "each" and inserting "Each".

**SEC. 14. ADJUSTMENT TO HOME LOAN FEES AND UNIFORMITY OF FEES FOR QUALIFYING RESERVE MEMBERS WITH FEES FOR ACTIVE DUTY VETERANS.**

(a) REVISED LOAD FEE TABLE.—Paragraph (2) of section 3729(b) of title 38, United States Code, is amended to read as follows:

"(2) The loan fee table referred to in paragraph (1) is as follows:

"LOAN FEE TABLE

| Type of loan | Veteran | Other obligor |
|---|---|---|
| (A)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed before October 1, 2003) | 2.00 | NA |
| (A)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2003, and before October 1, 2011) ........ | 2.15 | NA |
| (A)(iii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2011) ........ | 1.40 | NA |
| (B)(i) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed before October 1, 2011) ........ | 3.30 | NA |
| (B)(ii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2011 and before October 1, 2013) ...... | 2.15 | NA |
| (B)(iii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2013) ........ | 1.25 | NA |
| (C)(i) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed before October 1, 2011) ........ | 1.50 | NA |
| (C)(ii) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed on or after October 1, 2011) ........ | 0.75 | NA |
| (D)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed before October 1, 2011) ........ | 1.25 | NA |
| (D)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed on or after October 1, 2011) ........ | 0.50 | NA |
| (E) Interest rate reduction refinancing loan ........ | 0.50 | NA |
| (F) Direct loan under section 3711 ........ | 1.00 | NA |

"LOAN FEE TABLE—Continued

| Type of loan | Veteran | Other obligor |
|---|---|---|
| (G) Manufactured home loan under section 3712 (other than an interest rate reduction refinancing loan) | 1.00 | NA |
| (H) Loan to Native American veteran under section 3762 (other than an interest rate reduction refinancing loan) | 1.25 | NA |
| (I) Loan assumption under section 3714 | 0.50 | 0.50 |
| (J) Loan under section 3733(a) | 2.25 | 2.25 |
| (K) Hybrid loan under section 3707A | 1.25 | NA". |

(b) CONFORMING AMENDMENTS.—(1) Subparagraph (A) of paragraph (4) of such section is amended to read as follows:

"(A) The term 'veteran' means any veteran eligible for the benefits of this chapter.".

(2) Such paragraph is further amended by striking subparagraph (B) and redesignating subparagraphs (C), (D), (E), (F), (G), (H), and (I) as subparagraphs (B), (C), (D), (E), (F), (G), and (H), respectively.

**SEC. 15. REINSTATEMENT OF MINIMUM REQUIREMENTS FOR SALE OF VENDEE LOANS.**

(a) REINSTATEMENT.—Subsection (a) of section 3733 of title 38, United States Code, is amended by striking paragraph (2).

(b) INCREASE IN MAXIMUM PERCENTAGE.—Paragraph (1) of such subsection is amended—

(1) by striking "65 percent" in the first sentence and inserting "85 percent";
(2) by striking "may be financed" and inserting "shall be financed"; and
(3) by striking the second sentence.

(c) STYLISTIC AMENDMENTS.—Such section is further amended—

(1) by striking "of this subsection" after—
(A) "paragraph (1)" in subsections (a)(4)(A), (a)(5), (a)(6), and (c)(2); and
(B) "paragraph (5)" in subsection (a)(4)(B)(i); and
(2) by striking "of this paragraph" each place it appears in subsection (a)(4).

**SEC. 16. RATE OF PAYMENT OF BENEFITS FOR CERTAIN FILIPINO VETERANS AND THEIR SURVIVORS RESIDING IN THE UNITED STATES.**

(a) RATE OF PAYMENT.—Section 107 of title 38, United States Code, is amended—

(1) in the second sentence of subsection (b), by striking "Payments" and inserting "Except as provided in subsection (c), payments"; and
(2) in subsection (c)—
(A) by inserting "and subchapter II of chapter 13 (except section 1312(a)) of this title" after "chapter 11 of this title";
(B) by striking "in subsection (a)" and inserting "in subsection (a) or (b)"; and
(C) by striking "of subsection (a)" and inserting "of the applicable subsection".

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall apply to benefits paid for months beginning after the date of the enactment of this Act.

**SEC. 17. BURIAL BENEFITS FOR NEW PHILIPPINE SCOUTS RESIDING IN THE UNITED STATES.**

(a) BENEFIT ELIGIBILITY.—Section 107 of title 38, United States Code, as amended by section 16, is further amended—

(1) in subsection (b)(2)—
(A) by striking "and" and inserting a comma; and
(B) by inserting ", 23, and 24 (to the extent provided for in section 2402(8))" after "(except section 1312(a))";
(2) in the second sentence of subsection (b), as amended by section 16(a)(1), by inserting "or (d)" after "subsection (c)";
(3) in subsection (d)(1), by inserting "or (b), as otherwise applicable," after "subsection (a)"; and
(4) in subsection (d)(2), by inserting "or whose service is described in subsection (b) and who dies after the date of the enactment of the Veterans Benefits Act of 2003," after "November 1, 2000,".

(b) NATIONAL CEMETERY INTERMENT.—Section 2402(8) of such title is amended by striking "section 107(a)" and inserting "subsection (a) or (b) of section 107".

(c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) shall apply with respect to deaths occurring after the date of the enactment of this Act.

**SEC. 18. EXTENSION OF AUTHORITY TO MAINTAIN REGIONAL OFFICE IN THE REPUBLIC OF THE PHILIPPINES.**

Section 315(b) of title 38, United States Code, is amended by striking "December 31, 2003" and inserting "December 31, 2009".

**SEC. 19. OUTSTATIONING OF TRANSITION ASSISTANCE PROGRAM PERSONNEL.**

(a) IN GENERAL.—(1) Chapter 41 of title 38, United States Code, is amended by adding at the end the following new section:

**"§ 4113. Outstationing of Transition Assistance Program personnel**

"(a) STATIONING OF TAP PERSONNEL AT OVERSEAS MILITARY INSTALLATIONS.—(1) The Secretary—

"(A) shall station employees of the Veterans' Employment and Training Service, or contractors under subsection (c), at each veterans assistance office described in paragraph (2); and

"(B) may station such employees or contractors at such other military installations outside the United States as the Secretary, after consultation with the Secretary of Defense, determines to be appropriate or desirable to carry out the purposes of this chapter.

"(2) Veterans assistance offices referred to in paragraph (1)(A) are those offices that are established by the Secretary of Veterans Affairs on military installations pursuant to the second sentence of section 7723(a) of this title.

"(b) FUNCTIONS.—Employees (or contractors) stationed at military installations pursuant to subsection (a) shall provide, in person, counseling, assistance in identifying employment and training opportunities, help in obtaining such employment and training, and other related information and services to members of the Armed Forces who are being separated from active duty, and the spouses of such members, under the Transition Assistance Program and Disabled Transition Assistance Program established in section 1144 of title 10.

"(c) AUTHORITY TO CONTRACT WITH PRIVATE ENTITIES.—The Secretary, consistent with such section 1144, may enter into contracts with public or private entities to provide, in person, some or all of the counseling, assistance, information and services under the Transition Assistance Program required under subsection (a).".

(2) The table of sections at the beginning of such chapter is amended by adding at the end the following new item:

"4113. Outstationing of Transition Assistance Program personnel.".

(b) DEADLINE FOR IMPLEMENTATION.—Not later than the date that is 90 days after the date of the enactment of this Act, the Secretary of Labor shall implement section 4113 of title 38, United States Code, as added by subsection (a), and shall have employees of the Veterans' Employment and Training Service, or contractors, to carry out that section at the military installations involved by such date.

**SEC. 20. FORFEITURE OF BENEFITS FOR SUBVERSIVE ACTIVITIES.**

(a) ADDITION OF CERTAIN OFFENSES.—Paragraph (2) of section 6105(b) of title 38, United States Code, is amended—

(1) by inserting "175, 229," after "sections"; and

(2) by inserting "831, 1091, 2332a, 2332b," after "798,".

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall apply to claims filed after the date of the enactment of this Act.

**SEC. 21. TECHNICAL AMENDMENTS RELATED TO JOBS FOR VETERANS ACT.**

(a) JOB TRAINING AND PLACEMENT FUNCTIONS OF THE DEPARTMENT OF LABOR.—(1) Subsection (c)(2)(B)(ii) of section 4102A of such title is amended by striking "October 1, 2002" and inserting "October 1, 2003".

(2) The amendment made by paragraph (1) shall take effect as if included in the enactment of section 4(a) of the Jobs for Veterans Act (Public Law 107–288; 116 Stat. 2038).

(b) OTHER TECHNICAL AMENDMENTS.—(1) Such subsection is further amended by striking ", as amended by the Jobs for Veterans Act".

(2) Subsection (f)(1) of such section is amended by striking "6 months after the date of the enactment of this section," and inserting "May 7, 2003,".

**SEC. 22. TECHNICAL AND CONFORMING RELATING TO ESTABLISHMENT OF SOCIAL SECURITY ADMINISTRATION AS AN INDEPENDENT AGENCY.**

Title 38, United States Code, is amended as follows:

(1) Section 1322 is amended—

(A) in subsection (a), by striking "Secretary of Health and Human Services" and all that follows through the period and inserting "Commissioner of Social Security, and shall be certified by the Commissioner to the Secretary upon request of the Secretary."; and

(B) in subsection (b)—

(i) by striking "Secretary of Health and Human Services" in the first sentence and inserting "Commissioner of Social Security";

(ii) by striking "the two Secretaries" and inserting "the Secretary and the Commissioner"; and

(iii) by striking "Secretary of Health and Human Services" in the second sentence and inserting "Commissioner".

(2) Section 5101(a) is amended by striking "Secretary of Health and Human Services" and inserting "Commissioner of Social Security".

(3) Section 5317 is amended by striking "Secretary of Health and Human Services" in subsections (a), (b), and (g) and inserting "Commissioner of Social Security".

(4)(A) Section 5318 is amended—

(i) in subsection (a), by striking "Department of Health and Human Services" and inserting "Social Security Administration"; and

(ii) in subsection (b)—

(I) by striking "Department of Health and Human Services" and inserting "Social Security Administration";

(II) by striking "Secretary of Health and Human Services" the first place it appears and inserting "Commissioner of Social Security";

(III) by striking "Secretary of Health and Human Services" the second place it appears and inserting "Commissioner"; and

(IV) by striking "such Secretaries" and inserting "the Secretary and the Commissioner".

(B)(i) The heading of such section is amended to read as follows:

**"§ 5318. Review of Social Security Administration death information".**

(ii) The item relating to that section in the table of sections at the beginning at chapter 53 is amended to read as follows:

"5318. Review of Social Security Administration death information.".

Amend the title so as to read:

A bill to amend title 38, United States Code, to improve benefits under laws administered by the Secretary of Veterans Affairs, and for other purposes.

## INTRODUCTION

The reported bill reflects the Committee's consideration of bills introduced during the 108th Congress: H.R. 533, H.R. 966, H.R. 1048, H.R. 1167, H.R. 1716, H.R. 2164, H.R. 2285 and H.R. 2297.

On April 10, 2003, the Subcommittee on Benefits held a hearing on six bills, including H.R. 533, the Agent Orange Veterans' Disabled Children's Benefits Act of 2003, introduced by Honorable Lane Evans, Honorable Ciro D. Rodriguez, Honorable Bob Filner, Honorable Luis V. Gutierrez, Honorable Corrine Brown, Honorable Vic Snyder, Honorable Mike McIntyre, Honorable Bernard Sanders, Honorable Jose E. Serrano, and Honorable Henry A. Waxman on February 5, 2003; H.R. 966, the Disabled Veterans' Return-to-Work Act of 2003, introduced by Honorable Henry E. Brown, Jr. and Honorable Ciro D. Rodriguez, Chairman and then-Ranking Member, respectively, of the Subcommittee on Benefits, Honorable Christopher H. Smith and Honorable Lane Evans, on February 27, 2003; and H.R. 1048, the Disabled Veterans Adaptive Benefits Improvement Act of 2003, introduced by Honorable Henry E. Brown, Jr., Honorable Ciro D. Rodriguez, Honorable Christopher H. Smith, and Honorable Lane Evans on March 4, 2003.

On June 11, 2003, the Subcommittee on Benefits held a hearing on eight bills, including H.R. 1167, to permit remarried surviving spouses of veterans to be eligible for burial in a national cemetery, introduced on March 6, 2003, by Honorable Heather Wilson; H.R. 2164, to provide for an extension in the period of eligibility for survivors' and dependents' education benefits for members of the National Guard who are involuntarily ordered to full-time National

Guard duty, introduced on May 20, 2003, by Honorable Jeb Bradley and Honorable Michael H. Michaud; H.R. 2285, the Servicemembers Overseas Outreach Act, introduced on June 2, 2003, by Honorable Michael K. Simpson, Honorable Bob Beauprez, Honorable Christopher H. Smith, Honorable Lane Evans, Honorable Henry E. Brown, Jr., Honorable Michael H. Michaud, and Honorable Steve Buyer; and H.R. 2297, to modify and improve certain benefits for veterans and for other purposes, introduced on June 2, 2003, by Honorable Christopher H. Smith, Honorable Lane Evans, Honorable Henry E. Brown, Jr., and Honorable Michael H. Michaud.

On June 25, 2003, the Subcommittee on Benefits met and unanimously ordered H.R. 2297, as amended, reported favorably to the full Committee.

On June 26, 2003, the full Committee met and ordered H.R. 2297 reported favorably, as amended, to the House by unanimous voice vote.

## SUMMARY OF THE REPORTED BILL

H.R. 2297, as amended, would:

1. Expand the Montgomery GI Bill program by authorizing educational assistance for on-job training in certain self-employment training programs.
2. Extend the delimiting date for survivors' and dependents' education benefits when the eligible individual is involuntarily ordered to full-time National Guard duty.
3. Extend the Veterans' Advisory Committee on Education through December 31, 2009.
4. Repeal an obsolete VA education loan program authorization.
5. Provide that remarriage of the surviving spouse of a veteran after attaining age 55 would not result in termination of dependency and indemnity compensation (DIC).
6. Allow a remarried surviving spouse to retain eligibility for burial in a national cemetery based on his or her marriage to a veteran.
7. Make permanent the State Cemetery Grants Program.
8. Reinstate a VA pilot program to provide vocational training to newly eligible VA nonservice-connected pension recipients.
9. Increase the specially adapted automobile grant from $9,000 to $11,000, and increase the specially adapted housing grants from $48,000 to $50,000 for the most severely disabled veterans and from $9,350 to $10,000 for less severely disabled veterans.
10. Add cirrhosis of the liver to the list of presumed service-connected disabilities for former prisoners of war, and eliminate the requirement that a POW be held for 30 days or more to qualify for presumptions of service-connection for certain disabilities: psychosis, any of the anxiety states, dysthymic disorder, organic residuals of frostbite, and post-traumatic osteoarthritis.
11. Expand benefits eligibility to those children with spina bifida who were born to Vietnam-era veterans who served in an

area of Korea near the demilitarized zone between October 1, 1967 and May 7, 1975.

12. Make permanent the VA home loan program for members of the Selected Reserve.
13. Adjust the funding fee charged to Selected Reserve home loan applications to the same amount as the amount paid by active duty servicemembers, and make certain increases in home loan fees.
14. Reinstate the Department of Veterans Affairs' vendee loan program.
15. Provide the full amount of compensation and dependency and indemnity compensation (DIC) to eligible members of the new Philippine Scouts and their survivors, as well as the full amount of DIC paid by reason of service in the organized military forces of the Commonwealth of the Philippines, including organized guerilla units, if the individual to whom the benefit is payable resides in the United States and is either a citizen of the U.S. or an alien lawfully admitted for permanent residence.
16. Extend eligibility for burial in a national cemetery to new Philippine Scouts, as well as eligibility for burial benefits, to those who lawfully reside in the United States.
17. Extend the authority of the Secretary of Veterans Affairs to maintain a regional office in Manila, Philippines, through December 31, 2009.
18. Mandate that the Department of Labor place staff in veterans' assistance offices at overseas military installations 90 days after date of enactment.
19. Expand the list of serious federal criminal offenses a conviction for which would result in a bar to all VA benefits.

## Background and Discussion

*Expansion of Montgomery GI Bill education benefits for certain self-employment training.*—Section 2 of the bill would expand the Montgomery GI Bill program by authorizing educational assistance benefits for on-job training of less than six months in certain self-employment training programs. Public Law 106–50, the Veterans Entrepreneurship and Small Business Development Act, requires that all Federal agencies aggressively support self-employment for veterans and service-disabled veterans, directly and through public-private partnerships. This provision would provide those veterans considering self-employment with improved access to training benefits, including training related to franchises. This provision is derived from an Administration proposal.

*Extension in period of eligibility for survivors' and dependents' education benefits for individuals who are involuntarily ordered to full-time National Guard duty.*—Section 3 of the bill would amend current law to provide that individuals who qualify for survivors' and dependents' education benefits under chapter 35 of title 38, United States Code, and are involuntarily ordered to full-time National Guard duty under title 32, United States Code, after September 11, 2001, would have their eligibility extended. This section would allow the survivor or dependent to have the ending date of

their eligibility extended by an amount of time equal to that period of full-time duty plus 4 months. Current law allows such an extension only to Reservists called up to active duty after September 11, 2001.

*Extension of Veterans' Advisory Committee on Education.*—Section 4 of the bill would extend, through December 31, 2009, the Veterans' Advisory Committee on Education, as well as amend the language to eliminate the requirement that veterans from certain wartime and post-wartime periods be members of the Committee. Under current law, the Committee will expire on December 31, 2003. The Advisory Committee has made a number of recommendations that have become legislative proposals, and its discussions and recommendations are a valuable aid in VA's efforts to administer its education programs. This provision would also eliminate the requirement that veterans from certain periods—World War II, Korean conflict era, or post-Korean conflict era—be required to participate as members of the Advisory Committee. The change would provide for greater flexibility in filling positions on the Committee. This provision is derived from an Administration proposal.

*Repeal of provisions relating to obsolete education loan program.*—Section 5 of the bill would repeal the VA education loan program, in effect since January 1, 1975, and waive any existing repayment obligations, including overpayments due to default on such loans. The education loan program is currently available to issue loans up to a maximum of $2,500 per academic year to spouses and surviving spouses who are past their delimiting dates with remaining entitlement to chapter 35 benefits. The population eligible for this program is very limited, and with other options in the public and private sectors, there is no longer a demand for the loans. VA has not issued a loan under this program in several years, but the government has paid approximately $70,000 a year to administer it. VA's October 2002 monthly loan statistics show 20 current education loans in the amount of $14,987.08 and 116 defaulted education loans totaling $105,908.10; it costs VA more to administer the loan program on a continuous basis than to forgive the debts currently outstanding. This provision is derived from an Administration proposal.

*Retention of dependency and indemnity compensation for surviving spouses remarrying after age 55.*—Section 6 of the bill would allow a surviving spouse who remarries after attaining age 55 to retain dependency and indemnity compensation (DIC). Those surviving spouses who remarried after attaining age 55 but before this provision is enacted would have one year to apply for reinstatement of their DIC benefit.

DIC is a tax-free monthly benefit paid to the surviving spouse of a veteran who dies as a result of military service. While current law prevents payment of DIC during the course of a subsequent marriage, Public Law 105–178 allowed reinstatement of this benefit if the remarriage is terminated. As the Honorable Michael Bilirakis stated in testimony before the Subcommittee on Benefits on April 11, 2002, "DIC is the only federal annuity program that does not allow a widow who is receiving compensation to remarry at an older age and retain her annuity." It is the Committee's intent that

an older surviving spouse who chooses to remarry should not be discouraged from doing so by the loss of DIC benefits. Public Law 107–330 allowed a surviving spouse who remarries after age 55 to retain VA health insurance coverage.

The Committee has not been able to obtain accurate data with respect to the numbers of surviving spouses likely to be affected by this provision. The Committee expects the Department of Veterans Affairs to obtain and maintain accurate data concerning the number and age of those surviving spouses who apply for reinstatement of their DIC benefits under this provision.

*Eligibility of surviving spouses who remarry for burial in national cemeteries.*—Section 7 of the bill would allow a surviving spouse of a veteran to be eligible for burial in a VA national cemetery based on his or her marriage to the veteran, regardless of the status of a subsequent marriage. Current law does not permit the surviving spouse to be buried in a national cemetery if a remarriage is in effect when the veteran's surviving spouse is married at the time of death. According to VA, in cases when this situation has arisen, the veteran's children and grandchildren, and often the most recent spouse, support burial of the decedent with a previously deceased veteran-spouse in a VA national cemetery.

*Permanent authority for State cemetery grants.*—Section 8 of the bill would make permanent the State Cemetery Grants Program. Current law authorizes appropriations for making these grants through fiscal year 2004. The State Cemetery Grants Program provides grants to assist the states in establishing, expanding, and improving state-owned veterans' cemeteries. Increasing the availability of state veterans' cemeteries is one way to serve veterans who do not reside near a national cemetery. State cemeteries augment—but do not supplant—VA's national cemetery program. Since the beginning of the State Cemetery Grants Program, 127 grants totaling more than $155 million to establish, expand or improve 57 veterans cemeteries in 31 states have been awarded. This provision is derived from an Administration proposal.

*Reinstatement of veterans' vocational training program for certain pension recipients.*—Section 9 of the bill would reinstate a VA pilot program, which expired on December 31, 1995, to provide vocational training to newly eligible VA nonservice-connected pension recipients. The program, open to those veterans age 45 years or younger, would provide disabled pension recipients the opportunity to receive training in order to return to the job market. There are many ways veterans can and do contribute to the economy. Those veterans receiving nonservice-connected pension are in effect discouraged from seeking employment because of the needs-based structure of VA's Pension Program, whereby every dollar they earn is offset from the amount of monthly pension they receive. Amounts paid to a veteran pursuing a course of vocational rehabilitation or training—including tuition, fees, books, and materials—are excluded in determining eligibility for and the amount of pension benefits available. The Committee believes it would be beneficial to reinstate the pilot program in order to give veterans considered permanently and totally disabled an opportunity to obtain employment rather than requiring these veterans to rely solely on

the VA pension program and health care system for the remainder of their lives.

*Increase in amounts for certain adaptive benefits for disabled veterans.*—Section 10(a) of the bill would increase the grants for specially adapted housing for severely disabled veterans from $48,000 to $50,000, and would increase the amount for less severely disabled veterans from $9,250 to $10,000. Under current law, the Secretary is authorized to assist eligible veterans in acquiring suitable housing and adaptations with special fixtures made necessary by the nature of the veteran's service-connected disability, and with the necessary land. Section 10(b) of the bill would increase the one-time reimbursement VA may pay to an eligible disabled servicemember or veteran to purchase an automobile from $9,000 to $11,000.

*Presumptions of service-connection relating to diseases and disabilities of former prisoners of war.*—Section 11 of the bill would add cirrhosis of the liver to the disabilities presumptively service-connected for former prisoners of war, as well as provide a presumption of service-connection without regard to length of confinement for certain psychiatric disabilities as well as cold weather injuries and traumatic arthritis. Current law requires former POWs to have been confined for at least 30 days before they qualify for a presumption of service-connection for certain disabilities. At the time that POWs originally were awarded presumptions of service-connection for certain disabilities, most of the disabilities were related to malnutrition. Short-term prisoners of war were rare. *See Bills to Increase Compensation Payments for Service-connected Disabled Veterans and Increase Income Limits and Rates for Non-service-connected Pensioners: Hearings Before the Subcommittee on Compensation and Pension of the Committee on Veterans' Affairs, House of Representatives,* 91st Congress, Second Session, (May 26–27, June 3, 1970).

Prisoners of war in more recent conflicts have been interred for shorter periods of time. All the POWs from Operation Iraqi Freedom were confined for less than 30 days. The VA's Advisory Committee on Former Prisoners of War has recommended that the 30-day requirement be eliminated for all presumptive conditions. *Biennial Report of the Advisory Committee on Former Prisoners of War* (transmitted to the House Committee on Veterans' Affairs, December 4, 2001). This provision would eliminate the 30-day requirement for all psychiatric conditions, cold weather-related injuries, and post-traumatic arthritis. The Committee notes that no durational requirement is indicated in the criteria for diagnosis of post-traumatic stress disorder, a common POW disability. Likewise, service-connection for POWs based on cold weather-related injuries are more properly related to internment in climatic conditions consistent with the occurrence of frostbite. Frostbite can occur within hours if the temperature is low enough. Post-traumatic arthritis is a condition which results from trauma; trauma can occur in a matter of seconds. While some length of internment may be appropriate for disabilities related to nutritional deficiencies, there is no scientific evidence to support a length of confinement requirement for psychiatric conditions, cold injuries and post-traumatic arthritis. During the hearing on April 10, 2003, the Veterans of Foreign Wars strongly urged the Committee to eliminate the 30-day

requirement for presumptive conditions in order to "include those POWs who have been held for shorter intervals but have certainly suffered most of the same physical and psychological trauma as other POWs."

The Committee also notes that the Institute of Medicine (IOM) has conducted follow-up studies of American POWs. According to the IOM, there is an increased mortality from cirrhosis of the liver in former POWs as compared to the general population. In proposing regulations to provide a presumption of service-connection for former POWs with cirrhosis, the VA stated: "Cirrhosis mortality was not found to be associated with any differences in alcohol consumption among World War II and Korean POWs and Korean controls, which were similar to U.S. males. Therefore, it appears that alcohol consumption does not provide an explanation for the higher mortality rates identified in POWs." 68 F.R. 6680 (February 10, 2003.) The bill accordingly provides for a statutory presumption of service-connection for cirrhosis of the liver.

*Extension of spina bifida benefits for children of Vietnam-era veterans.*—Section 12 of the bill would provide benefits under chapter 18 of title 38, United States Code, to the children of veterans who currently are disabled by spina bifida and who were conceived after a natural parent served in an area of Korea near the demilitarized zone between October 1, 1967 and May 7, 1975. Current law restricts VA disability payments to those children with spina bifida whose natural parent served in the Republic of Vietnam during the period beginning on January 9, 1962 through May 7, 1975. The payments are based upon a finding by the IOM "that there was limited/suggestive evidence of an association between exposure to the herbicides considered in this report and spina bifida in children of veterans." *Veterans and Agent Orange Update 2000 (VAO 2000)* (National Academy Press: Washington D.C. 2001) at p. 431. This standard has been used to provide a presumption of service-connection for a number of disabilities associated with exposure to Agent Orange and other Vietnam-era herbicides. According to the Institute of Medicine Report, dioxin is retained in the body for some time. "TCDD [dioxin] has a mean half life of 7.6 years [in humans] and elimination is inversely proportional to body fat content . . ." *VAO 2000* at 24.

The Department of Defense (DOD) had advised the Committee on Veterans' Affairs that the herbicides used in Vietnam were also used for several years beginning with testing in 1967 in the Republic of Korea, south of the demilitarized zone (DMZ). DOD has estimated that approximately 12,056 servicemembers were potentially exposed to herbicides associated with spina bifida when it was used during 1968 and 1969. The Committee expects that the children of these former servicemembers deployed in the units identified by DOD and any other veterans who can document service in the area between the DMZ and an area five miles south of the Civilian Control line would qualify for benefits under the bill.

During its hearing on April 10, 2003, the Committee received testimony from Mr. Michael Ruzalski of Pennsylvania who was born with spina bifida. Mr. Ruzalski was conceived after his father served during 1968–1969 in the Korean DMZ. He testified that under current law, VA denied his application for benefits related

to spina bifida because his father's herbicide exposure occurred in the Korean DMZ, rather than in the Republic of Vietnam.

*Permanent authority for housing loans for members of the Selected Reserve.*—Section 13 of the bill would make permanent the home loan program for members of the Selected Reserve. In 1992, Congress granted eligibility for VA home loans to persons who served in the Selected Reserve (which includes the National Guard). This benefit is a useful recruiting and retention tool for members of the Selected Reserve. Under current law, the program is scheduled to expire on September 30, 2009.

In order to qualify for this benefit, a member of the Selected Reserve must have honorably served for at least six years and meet other requirements. In recent years, reservists have been increasingly called upon to participate on active duty for extended periods to support the national defense. As the recent actions in Afghanistan and Iraq demonstrate, reservists are an integral part of America's "total force." They have earned the right to participate in VA's home loan program on a permanent and equal basis.

*Adjustment to home loan fees and uniformity of fees for qualifying Reserve members with fees for active duty veterans.*—Section 14 of the bill would amend the Loan Fee Table to provide uniformity in the funding fees charged to members of the Selected Reserve and active duty veterans for VA home loans. Under current law, in most cases a reservist pays a funding fee that is 0.75 percent higher than the fee charged to veterans who have served on active duty. For example, the current fee for a veteran to obtain an initial VA home loan with no down payment is 2 percent; a reservist is charged a fee of 2.75 percent for the same loan. Reservists would now pay 2 percent, as well. Reservists who have a service-connected disability are exempt from the fee.

According to VA, members of the Selected Reserve have a lower foreclosure rate than other loan guaranty beneficiaries. Since its inception, the foreclosure rates for members of the Selected Reserve have been almost one-third lower than that of other veterans; therefore, a higher rate is not justified on the basis of foreclosure risk. Reservists deserve equality in fees with other veterans.

In order to pay the cost of equalizing benefits between reservists and other veterans, section 14 of the bill would also increase the home loan guaranty fees for veterans qualifying for a second or subsequent home loan with no down payment. The bill would amend the Loan Fee Table to increase the fees for veterans who obtain a subsequent VA home loan with no down payment from 3 percent to 3.3 percent for loans closed before October 1, 2011. This fee would be reduced to 2.15 percent for loans closed between October 1, 2011 and September 30, 2013. This section would increase from 1.25 percent to 1.4 percent the fee on initial loans closed on or after October 1, 2011. It would create a fee of 2.15 percent on loans closed on or after October 1, 2003 and before October 1, 2011. It would also create a 1.25 percent fee for hybrid loans made under a pilot program.

*Reinstatement of minimum requirements for sale of vendee loans.*—Section 15 of the bill would reinstate the vendee loan program, which VA administratively terminated on January 23, 2003. When a purchaser agrees to buy a foreclosed VA home, VA often

offers to finance the sale by establishing a vendee loan to encourage the prompt sale of the home. Vendee loans are made at market interest rates and often require a down payment. Borrowers are assessed a 2.25 percent funding fee.

The vendee loan program is based on sound business principles, and there is an ample body of empirical data indicating that offering vendee financing is cost effective to the government. The Committee views vendee loans as an important tool to obtain a higher return on property sales, which reduces the overall cost of program operations. The bill would require the the Secretary of Veterans Affairs to operate a vendee home loan program for some loans.

*Rate of payment of benefits for certain Filipino veterans and their survivors residing in the United States.*—Section 16 of the bill would provide the full amount of compensation and dependency and indemnity compensation (DIC) to eligible members of the new Philippine Scouts and their survivors, as well as the full amount of DIC paid by reason of service in the organized military forces of the Commonwealth of the Philippines, including organized guerilla units, if the individual to whom the benefit is payable resides in the United States and is either a citizen of the U.S. or an alien lawfully admitted for permanent residence. Under current law, benefits to Filipino veterans are restricted to a $0.50 on-the-dollar limitation, based on the significant difference in the U.S. average per capita income and cost-of-living and the Philippine average per capita income and cost-of-living.

In the case of those Filipino veterans and their dependents and survivors who reside in the United States and therefore face living expenses comparable to United States veterans and their dependents and survivors, limiting the payment of benefits may result in undue hardships to eligible Filipino beneficiaries.

*Burial benefits for new Philippine scouts residing in the United States.*—Section 17 of the bill would extend eligibility for national cemetery burial to new Philippine Scouts who lawfully reside in the United States. This section would also extend eligibility for other in-kind burial benefits on the same basis as such benefits are provided under current law to persons who served in the organized military forces of the Commonwealth of the Philippines, including Commonwealth Army veterans. This provision is consistent with achieving parity in veterans' benefits among similarly situated Filipino beneficiaries lawfully residing in the United States.

*Extension of authority to maintain regional office in the Republic of the Philippines.*—Section 18 of the bill would extend VA's authority to operate a regional office in the Republic of the Philippines through December 31, 2009. Under current law, this authority expires on December 31, 2003. Congress has periodically extended this authority at VA's request in recognition that a regional office in the Philippines is the most cost-effective means of administering VA programs for beneficiaries residing there, in addition to providing an on-site presence to deter potential fraud. The Committee acknowledges the important contributions of the staff of the Manila Regional Office in cooperating with a recent VA Inspector General effort to identify and correct erroneous payments to veterans residing in the Philippines. This provision is derived from an Administration proposal.

*Outstationing of transition assistance program personnel.*—Section 19 of the bill would require the Department of Labor to place staff in veterans' assistance offices where VA staff are located at overseas military installations 90 days after date of enactment. Such staff would help transitioning servicemembers obtain civilian jobs. DOD and DOL data show that servicemembers who attend pre-separation employment seminars have a better chance of finding long-term, sustained employment. Current law authorizes the Department of Labor to place staff in veterans' assistance offices on military installations, both foreign and domestic. However, the Department of Labor has placed staff in domestic locations only. This section would require the Department of Labor to follow VA's model in staffing overseas installations. It would also authorize the Department of Labor to exceed the number of VA locations and place staff in more locations abroad.

*Forfeiture of benefits for subversive activities.*—Section 20 of the bill would amend current law to supplement the list of serious federal criminal offenses for which a veteran's conviction results in a bar to VA benefits, including burial in a national cemetery. The six additional criminal offenses are: section 175 of title 18, United States Code, prohibitions with respect to biological weapons; section 229 of title 18, United States Code, prohibited activities with respect to chemical weapons; section 831 of title 18, United States Code, prohibited transactions involving nuclear materials; section 1091 of title 18, United States Code, genocide; section 2332a of title 18, United States Code, use of certain weapons of mass destruction; and section 2332b of title 18, United States Code, acts of terrorism transcending national boundaries. This provision is derived from an Administration proposal.

## SECTION-BY-SECTION ANALYSIS

Section 1 of the bill would provide that this Act may be cited as the "Veterans Benefits Act of 2003".

Section 2(a) of the bill would amend section 3452(e) of title 38, United States Code, to define a training establishment as (1) an establishment providing apprentice or other training on the job, including those under the supervision of a college or university or any State department of education, (2) an establishment providing self-employment on-job training consisting of full-time training for a period of less than six months that is needed or accepted for purposes of obtaining licensure to engage in a self-employment occupation or required for ownership and operation of a franchise that is the objective of training, (3) a State board of vocational training, (4) a Federal or State apprenticeship registration agency, (5) a joint apprenticeship committee established pursuant to the Act of August 16, 1937, popularly known as the "National Apprenticeship Act" (29 U.S.C. 50 et seq.), (6) an agency of the Federal Government authorized to supervise such training.

Section 2(b) of the bill would provide that the changes made by this section shall take effect on the date that is six months after the date of enactment of this Act and shall apply to self-employment on-job training approved and pursued on or after that date.

Section 3(a) of the bill would amend section 3512(h) of title 38, United States Code, to include those involuntarily ordered to full-

time National Guard duty under section 502(f) of title 32, United States Code.

Section 3(b) of the bill would provide that the change made by this section shall take effect as of September 11, 2001.

Section 4(a) of the bill would amend section 3692(c) of title 38, United States Code, to extend the Veterans' Advisory Committee on Education to December 31, 2009.

Section 4(b) of the bill would amend section 3692(a) of title 38, United States Code, by striking World War II, the Korean conflict era, and the post-Korean conflict era.

Section 5(a) of the bill would repeal subchapter III of chapter 36 of title 38, United States Code, which authorizes loans to veterans enrolled in school.

Section 5(b) of the bill would transfer the loan fund balance as of the date of enactment from the Department of Veterans Affairs Education Loan Fund to the Department of Veterans Affairs Readjustment Benefits Account.

Section 5(c) of the bill would require the Secretary of Veterans Affairs to discharge any outstanding liability of a veteran under subchapter III.

Section 6(a) of the bill would amend section 103(d)(2)(B) of title 38, United States Code, to provide that remarriage of a surviving spouse after attaining age 55 shall not bar the furnishing of benefits under section 1311 of title 38, United States Code.

Section 6(b) of the bill would provide that changes made by this section shall take effect on (1) the first day of the first month that begins after the date of enactment of this Act, or (2) the first day of the fiscal year that begins in the calendar year in which this Act is enacted, if later than the date specified in paragraph (1).

Section 6(c) of the bill would prohibit any benefit from being paid to any person by reason of subsection (a) for any period before the effective date specified in subsection (b).

Section 6(d) of the bill would provide that in the case of an individual who but for having remarried would be eligible for dependency and indemnity compensation under section 1311 of title 38, United States Code, and whose remarriage was before the date of the enactment of this Act and after the individual attained age 55, the individual shall be eligible for such compensation by reason of the amendment made in subsection (a) only if the individual submits an application for such compensation to the Secretary of Veterans Affairs not later than the end of the one-year period beginning on the date of the enactment of this Act.

Section 7(a) of the bill would amend section 2402(5) of title 38, United States Code, to provide that a surviving spouse who had a subsequent marriage which had not been terminated at the time of death may be eligible for interment in a national cemetery.

Section 7(b) of the bill would provide that the change made by this section shall take effect with respect to deaths occurring on or after January 1, 2000.

Section 8 of the bill would make permanent the authority for state cemetery grants.

Section 9(a) of the bill would reinstate vocational training for certain pension recipients under section 1524 of title 38, United States Code, for a five-year period beginning on the date of enactment of this Act.

Section 9(c) of the bill would amend section 1524 of title 38, United States Code, to require the Secretary of Veterans Affairs to ensure that the availability of vocational training under this section is made known through a variety of means, including the Internet and announcements in Department publications and other veterans' publications.

Section 9(d) of the bill would require the Secretary, not later than two years after the date of enactment of this Act and each year thereafter, to submit to the Committees on Veterans' Affairs of the Senate and the House of Representatives a report on the operation of this section. The report shall set forth an evaluation of the vocational training provided under this section for the period involved, and shall include an analysis of the cost-effectiveness of the vocational training provided under this section as well as data on the entered-employment rate of veterans pursuing such vocational training.

Section 10(a) of the bill would amend section 2102 of title 38, United States Code, by increasing the Specially Adapted Housing Grant for veterans with severe service-connected disabilities from $48,000 to $50,000 and the Special Home Adaptation Grant for veterans less severely disabled from $9,250 to $10,000.

Section 10(b) of the bill would amend section 3902(a) of title 38, United States Code, by increasing the amount of assistance for automobile and adaptive equipment for certain disabled veterans from $9,000 to $11,000.

Section 10(c) of the bill would provide that the changes made in this section shall apply to assistance furnished on or after the date of enactment of this Act.

Section 11 of the bill would amend subsection (b) of section 1112 of title 38, United States Code, to provide a presumption of service-connection under paragraph (2) of section 1112 without regard to the length of captivity, and add cirrhosis of the liver to paragraph (3) of section 1112.

Section 12 of the bill would amend subchapter I of chapter 18 of title 38, United States Code, to include the natural child, regardless of age or marital status, of a parent who during the period beginning on October 1, 1967 and ending on May 7, 1975, performed active military, naval, or air service in the Republic of Korea in the area between the south line of the Demilitarized Zone and a line five miles south of the Civilian Control Line established with respect to the Demilitarized Zone, but only if the individual was conceived after the parent performed such service.

Section 13 of the bill would amend section 3702(a)(2)(E) of title 38, United States Code, to provide permanent authority for housing loans for members of the Selected Reserve.

Section 14 of the bill would amend paragraph (2) of section 3729(b) of title 38, United States Code, to provide uniform home loan fees for qualifying members of the Selected Reserve and active duty veterans, and would increase the fees for initial and second

or subsequent use of the VA home loan program with no down payment.

Section 15(a) of the bill would reinstate the minimum requirements for sale of vendee loans. With respect to current law section 3733(a) of title 38, United States Code, section 15(a) would strike paragraph 2.

Section 15(b) of the bill would amend current section 3733(a)(1) of title 38, United States Code, by requiring that not more than 85 percent, nor fewer than 50 percent, of the purchases made during any fiscal year of real property acquired by the Secretary as the result of a defaulted loan may be financed by a loan made by the Secretary. This section would also strike the current authority to increase to 80 percent the maximum percentage in any fiscal year of real property acquired by the Secretary as a result of loan defaults.

Section 16(a) of the bill would permit new Philippine Scouts to receive benefits comparable to Commonwealth Army veterans. This subsection would also amend the rates of payment under section 107 of title 38, United States Code, and under subchapter II of chapter 13 of title 38, United States Code, for qualified Filipino veterans and their survivors lawfully residing in the United States.

Section 16(b) of the bill would provide that the amendments made by subsection (a) shall apply to benefits paid for months beginning after the date of the enactment of this Act.

Section 17(a) of the bill would amend section 107 of title 38, United States Code, as amended by section 16 of this Act, to extend eligibility for burial benefits for new Philippine Scouts residing in the United States.

Section 17(b) of the bill would amend section 2402(8) of title 38, United States Code, by striking "section 107(a)" and inserting "subsection (a) or (b) of section 107" to provide for national cemetery interment of new Philippine Scouts.

Section 17(c) of the bill would provide that the amendments made by subsections (a) and (b) shall apply with respect to deaths occurring after the date of the enactment of this Act.

Section 18 of the bill would extend the VA's authority to maintain a regional office in the Republic of the Philippines through December 31, 2009.

Section 19(a) of the bill would amend chapter 41 of title 38, United States Code, by adding a new section, "4113. Outstationing of Transition Assistance Program personnel."

New section 4113(a) would require the Secretary of Labor station employees of the Veterans' Employment and Training Service, or contractors under subsection (c), at those veterans assistance offices established by the Secretary of Veterans Affairs on military installations pursuant to the second sentence of section 7723(a) of title 38, United States Code. The Secretary of Labor would be authorized to station such employees or contractors at such other military installations outside the United States as the Secretary, after consultation with the Secretary of Defense, determines to be necessary to carry out the purposes of this section.

New section 4113(b) would require employees (or contractors) stationed at military installations pursuant to subsection (a) to provide, in person, counseling, assistance in identifying employment

and training opportunities, help in obtaining such employment and training, and other related information and services to members of the Armed Forces who are being separated from active duty, and the spouses of such members, under the Transition Assistance Program and Disabled Transition Assistance Program established in section 1144 of title 10, United States Code.

New section 4113(c) would provide the Secretary the authority to enter into contracts with public or private entities to provide, in person, some or all of the counseling, assistance, information and services under the Transition Assistance Program required under subsection (a).

Section 19(b) of the bill would require that not later than the date that is 90 days after the date of enactment of this Act, the Secretary of Labor implement section 4113 of title 38, United States Code, as added by subsection (a), and have employees of the Veterans' Employment and Training Service, or contractors, carry out that section at the military installations involved by such date.

Section 20(a) of the bill would amend paragraph (2) of section 6105(b) of title 38, United States Code, to expand the list of serious federal criminal offenses that bar an individual, convicted after September 1, 1959, from receiving gratuitous benefits (including the right to burial in a national cemetery). This subsection of the bill would add sections 175, 229, 831, 1091, 2332a, and 2332b, of title 18, United States Code, to the list.

Section 20(b) of the bill would provide that the amendments made by subsection (a) shall apply to claims filed after the date of enactment of this Act.

## PERFORMANCE GOALS AND OBJECTIVES

The reported bill would authorize veterans' benefits enhancements and program improvements under laws administered by the Department of Veterans Affairs and the Department of Labor. Performance goals and objectives established in their annual performance plans are subject to the Committee's regular oversight.

## STATEMENTS OF THE VIEWS OF THE ADMINISTRATION

*Statement of Daniel L. Cooper, Under Secretary for Benefits, Before the Subcommittee on Benefits, House Committee on Veterans' Affairs, April 10, 2003*

Mr. Chairman and Members of the Committee, thank you for the opportunity to testify today on several bills of great interest to veterans.

* * * * * * *

### H.R. 533

H.R. 533, the "Agent Orange Veterans' Disabled Children's Benefits Act of 2003," would amend chapter 18 of title 38, United States Code, to authorize VA to provide a monetary allowance and other benefits to a person suffering from spina bifida who is natural child, regardless of age or marital status, of a parent who performed "qualifying herbicide-risk service," if the person was conceived after such service. A parent would be considered to have performed "qualifying herbicide-risk service" if, while performing active military, naval, or air service, he or she "served in an area in which a Vietnam-era herbicide agent was used during a period during which such agent was used in that area; or . . . otherwise was exposed to a Vietnam-era herbicide agent." The term "Vietnam-era herbicide agent" would be defined by reference to current 38 U.S.C. § 1116(a)(3). VA does not support this bill.

Congress has repeatedly acted since 1979 to ensure that the Federal Government investigates the health effects of exposure to herbicides containing dioxin and com-