between October 1967 and May 1975 would begin to receive benefits under section 12. CBO estimates that the increase in direct spending resulting from enacting section 12 would be less than $500,000 in 2004, about $2 million over the 2004–2008 period, and about $4 million over the 2004–2013 period. (CBO estimates that implementing this section also would increase spending subject to appropriation by about $2 million over the 2004–2008 period, assuming appropriation of the estimated amounts. CBO's estimate of those costs is discussed below under the heading of "Spending Subject to Appropriation.")

DISABILITY BENEFITS FOR FORMER PRISONERS OF WAR (POWS). Under current law, VA generally deems a disability or disease to be service-connected for the purposes of disability compensation based on military medical records and physical examinations. For former POWs who were held captive for 30 days or more, current law specifies a list of 15 diseases and disabilities that VA assumes are service-connected because, according to VA, military medical records do not cover periods of captivity and may not provide adequate documentation for eligibility for disability compensation benefits.

Section 11 would add cirrhosis of the liver to the list of presumed service-connected disabilities for former POWs who were held captive for 30 days or more. Based on information provided by VA, CBO estimates that there are currently about 39,000 living former POWs. Applying prevalence rates for this disease obtained from the National Institutes of Health and assuming that between 50 percent and 60 percent of eligible former POWs would apply, CBO estimates that less than 10 former POWs would receive compensation under this provision each year. In 2002, the average disability compensation payment to veterans with diseases of the liver was about $5,900 for the year. CBO estimates that adding cirrhosis of the liver to the list of presumed service-connected disabilities for former POWs would increase direct spending for veterans' compensation by less than $100,000 a year over the 2004–2013 period.

VA is in the process of issuing a regulation that would have the same effect as this provision and expects the regulation to take effect by the end of fiscal year 2003. If this regulation were to take effect before H.R. 2297 became law, this provision would have no cost.

Section 11 also would eliminate the requirement that a POW be held prisoner for 30 days or more to qualify for presumed service-connection for five of the 15 presumed service-connected disabilities included under current law-specifically, psychosis, any of the anxiety states, dysthymic disorder (or depressive neurosis), organic residuals of frostbite, and post-traumatic osteoarthritis. Based on information provided by VA, CBO estimates that of the 39,000 living former POWs, no more than 400 were held captive for less than 30 days. About 70 percent, or around 280, of these former POWs are already receiving disability compensation based on their eligibility as a veteran. Due to the small number of former POWs who would become eligible for the new benefit and the fact that many are already receiving disability compensation, CBO estimates that the increase in direct spending from eliminating the 30-day require-

ment for these five disabilities would be less than $100,000 a year over the 2004–2013 period.

In sum, CBO estimates that enacting section 11 would cost less than $100,000 in 2004, less than $500,000 over the 2004–2008 period, and, at most, $1 million over the 2004–2013 period.

BURIAL BENEFITS FOR NEW PHILIPPINE SCOUTS. Under current law, veterans who die of service-connected disabilities are eligible for a $2,000 burial benefit. Veterans who receive compensation or pension benefits but die of a nonservice-connected condition are eligible for a $300 burial and funeral expenses benefit and another $300 allowance if the veteran is not interred in a cemetery that is under U.S. government jurisdiction. Veterans of the New Philippine Scouts are currently eligible for half of the burial benefit amounts provided to veterans of the U. S. armed forces. Under section 17, veterans of the New Philippine Scouts would receive burial and plot allowances at the full rate if they are naturalized U.S. citizens living in the United States. Based on information provided by VA, CBO estimates that only a handful of these veterans would become eligible for the increase in burial benefits each year. Thus, CBO estimates that enacting section 17 would have no significant effect on direct spending over the 2004–2013 period.

FORFEITURE OF BENEFITS FOR SUBVERSIVE ACTIVITIES. Under current law, a veteran who commits certain criminal acts loses eligibility for veterans' benefits that he would otherwise be due. Section 20 would include additional criminal acts that would cause a veteran to lose eligibility for veterans' benefits-specifically, criminal acts involving chemical, biological or nuclear weapons, genocide, and the murder of U.S. citizens outside of the United States. CBO estimates that any savings in direct spending that would result from not paying veterans who commit these crimes would be insignificant.

*Direct Spending—Retirement Benefits*

Many retirees of the uniformed services have a Survivor Benefit Plan (SBP) premium payment deducted from their retirement annuity. The SBP was established in Public Law 92–425 to create an opportunity for military retirees to provide annuities for their survivors. Under current law, survivors of disabled veterans who are retired from the military, the Coast Guard, Public Health Service, or the National Oceanic and Atmospheric Administration cannot receive both full SBP and DIC from VA. Because of this prohibition on concurrent receipt of these benefits, such survivors forgo a portion of their SBP annuity equal to the nontaxable DIC benefit. These survivors also receive a refund in premiums for the portion of the SBP annuity they chose to forgo to receive the nontaxable DIC benefit. If a survivor loses eligibility for DIC payments, he or she has the option to repay the refunded premiums to once again receive their full SBP annuity.

Section 6 would allow surviving spouses who remarry after age 55 to continue receiving DIC payments that they would otherwise be ineligible for (see "Retention of DIC for Remarried Spouses" above). Surviving spouses who would gain eligibility for DIC under section 6 and who would as a result be eligible for both SBP and DIC would forgo that portion of their SBP annuity equal to the

nontaxable DIC benefit. Thus, the enactment of section 6 would result in a savings in SBP payments for surviving spouses who under current law receive the full amount of their SBP payments.

In comparison to current law, the full amount of these savings would be reduced because of changes in the amount of premium refunds and repayments. For the survivors whose remarriage occurred prior to enactment of this bill, these savings would be partially offset by the refunding of the premium payments for the portion of SBP that these survivors would forgo to receive DIC. CBO expects that their refund payments would occur in either 2004 or 2005, depending on how soon VA restarts their DIC benefit.

Survivors who remarry after enactment of this legislation would continue receiving the same DIC and SBP payments as before their remarriage. If they remarry under current law, these survivors would become ineligible for DIC and would have to buy back their full SBP eligibility by repaying that portion of their premiums that had previously been refunded. Under section 6, these survivors would not repay the premiums because they would continue receiving SBP at the reduced rate. Thus, if section 6 were enacted, total SBP costs would increase by the amount that these survivors would not repay, and decrease by the amount of the DIC offset.

Based on information provided by DoD and VA, CBO estimates that about 500 survivors would receive both DIC and a SBP annuity each year over the 2004–2013 period and that the average annual SBP offset would be $9,218 in 2004 which would increase over the 2005–2013 period for cost-of-living adjustments. After accounting for changes in SBP premium refunds and repayments, CBO estimates that enacting section 6 would increase spending for retirement from the uniformed services by $1 million in 2004, but reduce spending for these benefits by $16 million over the 2004–2008 period and $43 million over the 2004–2013 period (see table 2).

*Direct Spending—Veterans' Readjustment Benefits*

H.R. 2297 contains several provisions that would affect direct spending for education benefits for veterans and their survivors and dependents, and for other readjustment benefits (see Table 4). Together, these provisions would increase spending by $6 million in 2004, $35 million over the 2004–2008 period, and by $80 million over the 2004–2013 period.

TABLE 4. ESTIMATED CHANGES IN DIRECT SPENDING FOR VETERANS' READJUSTMENT BENEFITS UNDER H.R. 2297

| Description of Provisions | By Fiscal Year, in Millions of Dollars | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
| Automobile and Adaptive Equipment Grants | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 |
| Adaptive Housing Grants | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| MGIB for Self-Employment | 1 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 |
| Extend Chapter 35 for National Guard | [1] | [1] | [1] | [1] | [1] | [1] | [1] | [1] | [1] | [1] |
| Repeal of Education Loan Program | [1] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Changes in Veterans' Readjustment Benefits | 6 | 7 | 7 | 7 | 8 | 9 | 9 | 9 | 9 | 9 |

NOTE: MGIB = Montgomery GI Bill.

[1] = Less than $500,000.

AUTOMOBILE AND ADAPTIVE EQUIPMENT GRANTS. Section 10 would increase a benefit that helps eligible disabled veterans obtain suitable transportation. CBO estimates enacting this provision would increase direct spending for automobile grants and adaptive equipment by about $4 million in 2004, $21 million over the 2004–2008 period, and $46 million over the 2004–2013 period.

*Automobile Grants.*—Section 10 would increase, from $9,000 to $11,000, the maximum amount of a grant available to eligible veterans for the purchase of an automobile or other vehicle. Veterans are eligible to receive this grant if, as a result of a service-connected injury or disease, they have lost the use of one or both hands (or feet), or have a severe vision impairment.

Based on data provided by VA, CBO estimates that about 1,100 veterans purchased automobiles in 2002 with the help of VA grants that averaged almost $9,000. Based on our analysis of the results of previous increases in this grant amount, CBO estimates that increasing the maximum grant amount to $11,000 would raise the number of grants awarded to about 1,220, an increase of about 120 grants a year. Thus, CBO estimates that enacting this provision would increase outlays for automobile grants by about $3 million in 2004, $16 million over the 2004–2008 period, and $36 million over the 2004–2013 period.

*Adaptive Equipment.*—Veterans who receive automobile grants under the VA program are also entitled to receive the necessary adaptive equipment to enable them to safely operate their vehicles, and to have that equipment repaired or replaced as necessary. Based on current levels of expenditure, we estimate that providing adaptive equipment for about 120 extra vehicles a year would increase annual outlays by about $700,000, and that outlays would increase by close to $1 million a year in later years as these additional vehicles begin to return for repair or replacement of equipment. Thus, CBO estimates that providing and maintaining adaptive equipment for the extra vehicles purchased as a result of the benefit increase under section 10 would increase outlays by about $1 million in 2004, $5 million over the 2004–2008 period, and $10 million over the 2004–2013 period.

ADAPTIVE HOUSING GRANTS. VA currently administers two grant programs to assist severely disabled veterans in acquiring housing that is adapted to their disabilities, or in modifying their existing

housing. Under current law, veterans who are classified by VA as totally disabled and who have certain mobility limitations are entitled to receive housing grants of up to $48,000. Totally disabled veterans who are blind or have lost the use of their hands are entitled to receive grants of up to $9,250. Section 10 also would increase those grants to maximums of $50,000 and $10,000, respectively.

According to VA, 678 veterans received housing grants averaging $36,586 in fiscal year 2002. Because the benefit increase is relatively small, and the criteria to receive these grants are highly restrictive, CBO expects that enacting section 10 would not result in a significant increase in the number of grants that would be awarded each year. CBO estimates that, under this provision, the grants would average about $39,000, increasing outlays by about $1 million annually.

MONTGOMERY GI BILL (MGIB) FOR SELF-EMPLOYMENT TRAINING. Section 2 would allow veterans to use their education benefits to receive on-the-job training for periods of less than six months, when that training is needed to obtain a license to engage in a self-employment occupation or is required for ownership and operation of a franchise. This provision would take effect six months after the bill's enactment. Under current law, these benefits are usually approved only for those on-the-job training programs that last a minimum of six months. Based on information from VA, CBO believes this expansion of education benefits would be used primarily by those seeking to own and operate a franchise. Franchise companies typically require prospective owners to undergo a four-to-six week program of on-the-job training.

Based on information from the Department of Labor (DOL), CBO estimates that about 6,500 eligible veterans took self-employment classes through Small Business Development Centers in 2002, and we assume that about 1,600 of these also completed five weeks of on-the-job training that is associated with the purchase of a franchise. Because the population eligible for and using MGIB is growing, we estimate this number will increase to about 2,000 by 2013. In 2004, the MGIB benefit will be $985 a month, or about $1,200 for a five-week period. Under current law, such payments are annually adjusted for increases in the cost of living. Thus, CBO estimates that enacting section 2 would increase direct spending for veterans' education benefits by about $1 million in 2004, $9 million over the 2004–2008 period, and $24 million over the 2004–2013 period.

OTHER PROVISIONS AFFECTING SPENDING FOR READJUSTMENT BENEFITS. The following provisions would have an insignificant budgetary impact on direct spending for readjustment benefits:

- Section 3 would extend the period of eligibility for survivors and dependents education benefits for those members of the National Guard who are involuntarily ordered to full-time National Guard duty under section 502(f) of Title 32 of the United States Code. This expanded eligibility would be retroactive to September 11, 2001. Based on information from VA and DoD, CBO estimates that very few National Guard members would

be affected by this change and that the cost would be less than $500,000 over the 2004–2013 period.

- Section 5 would repeal the Education Loan Program and forgive any remaining debts owed to the fund. No loans have been made through this fund in 10 years and the currently outstanding debt is about $120,000. Forgiving the remaining debt would constitute a loan modification, which would increase direct spending by less than $100,000.

*Spending Subject to Appropriation*

Table 5 shows the estimated effects of H.R. 2297 on discretionary spending for veterans' programs. CBO estimates that implementing H.R. 2297 would increase discretionary spending for veterans benefits by $4 million in 2004 and $137 million over the 2004–2008 period, assuming that the necessary amounts are appropriated.

STATE CEMETERY GRANTS. Current law authorizes VA to make grants to build and improve state veterans' cemeteries through fiscal year 2004, assuming appropriation of the necessary amounts. Section 8 would extend this authority indefinitely. CBO estimates that implementing this section would cost $107 million over the 2005–2008 period, assuming appropriation of the necessary amounts.

TRANSITION ASSISTANCE PROGRAM (TAP). Servicemembers who are preparing to separate from the military are eligible to attend transition assistance workshops offered by the Department of Labor at military facilities in the United States and Puerto Rico. Section 19 would require TAP personnel or contractors to provide transition assistance, in person, at overseas bases. DoD projects about 20,000 separations a year at overseas bases. Based on information from DoD and DOL, CBO expects that, under section 19, DOL would offer about 600 overseas workshops a year at an average cost per workshop of about $2,500. CBO estimates that implementing section 19 would cost $1 million in 2004 and about $2 million a year thereafter, assuming that the necessary amounts are appropriated.

REGIONAL OFFICE IN MANILA, PHILIPPINES. Section 18 would authorize VA to maintain the regional office located in Manila, Philippines, through December 31, 2009. Under current law, the authorization for this regional office will expire on December 31, 2003. Based on information provided by VA, CBO estimates that implementing section 18 would cost $3 million in 2004 and $19 million over the 2004–2008, assuming appropriation of the necessary amounts.

SPINA BIFIDA BENEFITS. Under current law, children with spina bifida who were born to veterans of the Vietnam War are entitled to medical benefits administered by the Department of Veterans Affairs. Section 12 would expand eligibility for these benefits to children with spina bifida who were born to veterans who served in the demilitarized zone in the Republic of Korea between October 1967 and May 1975. Based on VA's experience with benefits for children with spina bifida born to Vietnam veterans, CBO estimates that less than 30 children with spina bifida would begin to receive benefits under section 12. According to VA, the average an-

nual cost for providing medical benefits to these children was about $11,300 per child in 2002. Assuming appropriation of the estimated amounts, CBO estimates that implementing section 12 would cost less than $500,000 in 2004 and about $2 million over the 2004–2008 period.

TABLE 5. ESTIMATED CHANGES IN SPENDING SUBJECT TO APPROPRIATION UNDER H.R. 2297 [a]

| Description of Provisions | By Fiscal Year, in Millions of Dollars | | | | |
|---|---|---|---|---|---|
| | 2004 | 2005 | 2006 | 2007 | 2008 |
| State Cemetery Grants | | | | | |
| Estimated Budget Authority | 33 | 33 | 34 | 35 | 35 |
| Estimated Outlays | 0 | 15 | 25 | 33 | 34 |
| Transition Assistance Program | | | | | |
| Estimated Budget Authority | 1 | 2 | 2 | 2 | 2 |
| Estimated Outlays | 1 | 2 | 2 | 2 | 2 |
| Regional Office in Manila, Philippines | | | | | |
| Estimated Budget Authority | 3 | 4 | 4 | 4 | 4 |
| Estimated Outlays | 3 | 4 | 4 | 4 | 4 |
| Spina Bifida Benefits | | | | | |
| Estimated Budget Authority | [1] | [1] | [1] | [1] | [1] |
| Estimated Outlays | [1] | [1] | [1] | [1] | [1] |
| Other Provisions | | | | | |
| Estimated Budget Authority | [1] | [1] | [1] | [1] | [1] |
| Estimated Outlays | [1] | [1] | [1] | [1] | [1] |
| Total Changes | | | | | |
| Estimated Budget Authority | 37 | 39 | 40 | 41 | 41 |
| Estimated Outlays | 4 | 21 | 31 | 39 | 40 |

[a] Five-year costs in the text differ slightly from a summation of the annual costs shown here because of rounding.

[1] = Less than $500,000.

OTHER PROVISIONS. The following provisions would have an insignificant impact on discretionary spending:

- Section 4 would modify the charter of the Veterans' Advisory Committee on Education so that the committee would continue to operate until December 31, 2009. Based on information from the General Services Administration's Federal Advisory Committee Database, CBO estimates that implementing this provision would cost less than $100,000 a year over the 2004–2010 period, assuming appropriation of the necessary amounts.
- Under current law, the VA provides DIC payments to the surviving spouse of certain deceased veterans. If a surviving spouse remarries, DIC payments cease. Should the subsequent marriage end, either due to divorce or death of the new spouse, DIC payments can resume. Section 6 would allow a surviving spouse who remarries after age 55 to continue receiving DIC payments. CBO estimates that enacting section 6 would result in about 3,000 cases where a surviving spouses would apply to reinstate their DIC payments retroactively. CBO estimates that the costs for VA to process those additional applications would be less than $100,000 a year over the 2004–2006 period, assuming appropriation of the necessary amounts.
- Under current law, surviving spouses of veterans lose eligibility for burial in a national cemetery if they remarry. Surviving spouses can only regain eligibility if the subsequent remarriage ends in death of the subsequent spouse or divorce.

Section 7 would change the eligibility requirements for surviving spouses so that remarriage would not affect their eligibility for burial in a national cemetery. This provision would apply to deaths occurring on or after January 1, 2000. CBO estimates that the potential increase in costs resulting from an increased number of burials in national cemeteries would be insignificant.

- U.S. veterans are eligible for burial in a national cemetery if they were discharged or separated from active duty under conditions other than dishonorable. Members of the armed forces who die on active duty and spouses and minor children of veterans are also eligible. Section 17 would extend this eligibility to veterans of the New Philippine Scouts and their dependents. Based on information provided by VA, CBO estimates that only a handful of these veterans and their dependents would request burial in a national cemetery each year. Thus, CBO estimates that this new eligibility would not lead to a significant increase in the number of burials in national cemeteries.

INTERGOVERNMENTAL AND PRIVATE-SECTOR IMPACT

H.R. 2297 contains no intergovernmental or private-sector mandates as defined in UMRA and would impose no costs on state, local, or tribal governments.

PREVIOUS CBO ESTIMATES

On March 28, 2003, CBO transmitted a cost estimate for H.R. 36, a bill to provide that remarriage of the surviving spouse of a deceased veteran after age 55 shall not result in termination of DIC otherwise payable to that surviving spouse, as introduced on January 7, 2003. Section 6 of H.R. 2297 would provide a one-year limit for VA to accept applications for reinstated DIC benefits. In contrast, H.R. 36 had no time limit for application for benefits. CBO's cost estimate for H.R. 36 did not account for savings in military retirement programs that would occur as a result of both bills. These differences are reflected in the cost estimates for H.R. 36 and H.R. 2297.

On April 3, 2003, CBO transmitted a cost estimate for H.R. 533, the Agent Orange Veterans' Children's Benefits Act of 2003, as introduced on February 5, 2003. Section 12 of H.R. 2297 is similar to H.R. 533; however, CBO could not provide a specific estimate of costs for H.R. 533 because we were uncertain how VA would implement the bill. Because section 12 is more specific regarding the expanded eligibility for benefits for children with spina bifida, CBO has provided an estimate of those costs for H.R. 2297.

On May 19, 2003, CBO transmitted a cost estimate for H.R. 1460, the Veterans Entrepreneurship and Benefits Improvement Act of 2003, as ordered reported by the House Committee on Veterans' Affairs on May 15, 2003. Section 15 of H.R. 2297 is similar to section 5 of H.R. 1460, as are the estimated savings.

On May 19, 2003, CBO transmitted a cost estimate for H.R. 1257, the Selected Reserve Home Loan Equity Act, as ordered reported by the House Committee on Veterans' Affairs on May 15, 2003. Sections 13 and 14 of H.R. 2297 are similar to H.R. 1257, and the estimates of savings are also similar. Section 14 of H.R. 2297 would make further changes to loan fees, which would yield

greater savings than estimated for H.R. 1257.On May 23, 2003, CBO transmitted a cost estimate for H.R. 1838, a bill to revise the presumptions of service-connection relating to diseases and disabilities of former prisoners of war, as introduced on April 29, 2003. Section 11 of the bill is identical to H.R. 1838, as are the two estimates.

ESTIMATE PREPARED BY:

Federal Costs:

Housing: Sunita D'Monte (226–2840)

Compensation: Melissa E. Zimmerman and Dwayne M. Wright (226–2840)

Retirement Benefits: Sarah T. Jennings and Melissa E. Zimmerman (226–2840)

Readjustment Benefits: Sarah T. Jennings (226–2840)

Impact on State, Local, and Tribal Governments: Melissa Merrell (225–3220)

Impact on the Private Sector: Frances Lussier (226–2900)

ESTIMATE APPROVED BY:

Peter H. Fontaine

## STATEMENT OF FEDERAL MANDATES

The preceding Congressional Budget Office cost estimate states the bill contains no intergovernmental or private sector mandates as defined in the Unfunded Mandates Reform Act.

## STATEMENT OF CONSTITUTIONAL AUTHORITY

Pursuant to Article I, section 8 of the United States Constitution, the reported bill is authorized by Congress' power to "provide for the common Defense and general Welfare of the United States."

## CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed is shown in roman):

## TITLE 38, UNITED STATES CODE

* * * * * * *

## PART I—GENERAL PROVISIONS


| CHAPTER | Sec. |
|---|---|
| 1. General | 101 |

* * * * * * *

**PART II—GENERAL BENEFITS**

| | |
|---|---|
| 11. Compensation for Service-Connected Disability or Death | 1101 |

* * * * * * *

[18. Benefits for Children of Vietnam Veterans ................. 1802]

*18. Disability Benefits for Children of Vietnam Veterans and Other Veterans Exposed to Herbicide Agents ..... 1801*

* * * * * * *

## PART I—GENERAL PROVISIONS

* * * * * * *

### CHAPTER 1—GENERAL

* * * * * * *

**§ 103. Special provisions relating to marriages**

(a) * * *

* * * * * * *

(d)(1) * * *

(2)(A) * * *

(B) The remarriage after age 55 of the surviving spouse of a veteran shall not bar the furnishing of benefits under section *1311 or* 1781 of this title to such person as the surviving spouse of the veteran.

* * * * * * *

**§ 107. Certain service deemed not to be active service**

(a) * * *

(b) Service in the Philippine Scouts under section 14 of the Armed Forces Voluntary Recruitment Act of 1945 shall not be deemed to have been active military, naval, or air service for the purposes of any of the laws administered by the Secretary except—

(1) * * *

(2) chapters 11 [and], 13 (except section 1312(a))*, 23, and 24 (to the extent provided for in section 2402(8))* of this title.

[Payments] *Except as provided in subsection (c) or (d), payments* under such chapters shall be made at a rate of $0.50 for each dollar authorized, and where annual income is a factor in entitlement to benefits, the dollar limitations in the law specifying such annual income shall apply at a rate of $0.50 for each dollar.

(c) In the case of benefits under subchapters II and IV of chapter 11 of this title *and subchapter II of chapter 13 (except section 1312(a)) of this title* paid by reason of service described in subsection (a) *or (b)* to an individual residing in the United States who is a citizen of, or an alien lawfully admitted for permanent residence in, the United States, the second sentence [of subsection (a)] *of the applicable subsection* shall not apply.

(d)(1) With respect to benefits under chapter 23 of this title, in the case of an individual described in paragraph (2), the second sentence of subsection (a) *or (b), as otherwise applicable,* shall not apply.

(2) Paragraph (1) applies to any individual whose service is described in subsection (a) and who dies after November 1, 2000, *or whose service is described in subsection (b) and who dies after the date of the enactment of the Veterans Benefits Act of 2003,* if the individual, on the individual's date of death—

(A) * * *

* * * * * * *

## CHAPTER 3—DEPARTMENT OF VETERANS AFFAIRS

* * * * * * *

### § 315. Regional offices

(a) * * *

(b) The Secretary may maintain a regional office in the Republic of the Philippines until December 31, 【2003】 *2009.*

* * * * * * *

# PART II—GENERAL BENEFITS


| CHAPTER | | Sec. |
|---|---|---|
| 11. | Compensation for Service-Connected Disability or Death | 1101 |
| * * * | * * * | * |
| 【18. | Benefits for Children of Vietnam Veterans | 1802】 |
| *18.* | *Disability Benefits for Children of Vietnam Veterans and Other Veterans Exposed to Herbicide Agents* | *1801* |
| * * * | * * * | * |


## CHAPTER 11—COMPENSATION FOR SERVICE-CONNECTED DISABILITY OR DEATH

* * * * * * *

### SUBCHAPTER II—WARTIME DISABILITY COMPENSATION

* * * * * * *

### § 1112. Presumptions relating to certain diseases and disabilities

(a) * * *

【(b) For the purposes of section 1110 of this title and subject to the provisions of section 1113 of this title, in the case of a veteran who is a former prisoner of war and who was detained or interned for not less than thirty days, the disease of—

【(1) avitaminosis,

【(2) beriberi (including beriberi heart disease),

【(3) chronic dysentery,

【(4) helminthiasis,

【(5) malnutrition (including optic atrophy associated with malnutrition),

【(6) pellagra,

【(7) any other nutritional deficiency,

【(8) psychosis,

【(9) any of the anxiety states,

【(10) dysthymic disorder (or depressive neurosis),

【(11) organic residuals of frostbite, if the Secretary determines that the veteran was interned in climatic conditions consistent with the occurrence of frostbite,

【(12) post-traumatic osteoarthritis,

[(13) peripheral neuropathy except where directly related to infectious causes,

[(14) irritable bowel syndrome, or

[(15) peptic ulcer disease,

which became manifest to a degree of 10 percent or more after active military, naval, or air service shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service.]

*(b)(1) For the purposes of section 1110 of this title and subject to the provisions of section 1113 of this title, in the case of a veteran who is a former prisoner of war—*

*(A) a disease specified in paragraph (2) shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service; and*

*(B) if the veteran was detained or interned as a prisoner of war for not less than thirty days, a disease specified in paragraph (3) which became manifest to a degree of 10 percent or more after active military, naval, or air service shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service.*

*(2) The diseases specified in this paragraph are the following:*

*(A) Psychosis.*

*(B) Any of the anxiety states.*

*(C) Dysthymic disorder (or depressive neurosis).*

*(D) Organic residuals of frostbite, if the Secretary determines that the veteran was interned in climatic conditions consistent with the occurrence of frostbite.*

*(E) Post-traumatic osteoarthritis.*

*(3) The diseases specified in this paragraph are the following:*

*(A) Avitaminosis.*

*(B) Beriberi (including beriberi heart disease).*

*(C) Chronic dysentery.*

*(D) Helminthiasis.*

*(E) Malnutrition (including optic atrophy associated with malnutrition).*

*(F) Pellagra.*

*(G) Any other nutritional deficiency.*

*(H) Cirrhosis of the liver.*

*(I) Peripheral neuropathy except where directly related to infectious causes.*

*(J) Irritable bowel syndrome.*

*(K) Peptic ulcer disease.*

* * * * * * *

## CHAPTER 13—DEPENDENCY AND INDEMNITY COMPENSATION FOR SERVICE-CONNECTED DEATHS

* * * * * * *

### SUBCHAPTER III—CERTIFICATIONS

* * * * * * *

**§ 1322. Certifications with respect to social security entitlement**

(a) Determinations required by section 1312(a) of this title (other than a determination required by section 1312(a)(2) of this title) as to whether any survivor described in section 1312(a)(3) of this title of a deceased individual would be entitled to benefits under section 202 of the Social Security Act (42 U.S.C. 402) for any month and as to the amount of the benefits which would be paid for such month, if the deceased veteran had been a fully and currently insured individual at the time of such veteran's death, shall be made by the [Secretary of Health and Human Services, and shall be certified by such Secretary to the Secretary of Veterans Affairs upon request of the Secretary of Veterans Affairs.] *Commissioner of Social Security, and shall be certified by the Commissioner to the Secretary upon request of the Secretary.*

(b) The Secretary shall pay to the [Secretary of Health and Human Services] *Commissioner of Social Security* an amount equal to the costs which will be incurred in making determinations and certifications under subsection (a). Such payments shall be made with respect to the costs incurred during such period (but not shorter than a calendar quarter) as [the two Secretaries] *the Secretary and the Commissioner* may prescribe, with the amount of such payments to be made on the basis of estimates made by the [Secretary of Health and Human Services] *Commissioner* after consultation with the Secretary. The amount payable for any period shall be increased or reduced to compensate for any underpayment or overpayment, as the case may be, of the costs incurred in any preceding period.

* * * * * * *

## CHAPTER 15—PENSION FOR NON-SERVICE-CONNECTED DISABILITY OR DEATH OR FOR SERVICE

* * * * * * *

### SUBCHAPTER II—VETERANS' PENSIONS

* * * * * * *

#### NON-SERVICE-CONNECTED DISABILITY PENSION

* * * * * * *

**§ 1524. Vocational training for certain pension recipients**

(a)(1) In the case of a veteran under age 45 who is awarded a pension during the program period, the Secretary shall, based on information on file with the Department [of Veterans Affairs], make a preliminary finding whether such veteran, with the assistance of a vocational training program under this section, has a good potential for achieving employment. If such potential is found to exist, the Secretary shall solicit from the veteran an application for vocational training under this section. If the veteran thereafter applies for such training, the Secretary shall provide the veteran with an evaluation, which may include a personal interview, to determine whether the achievement of a vocational goal is reasonably feasible.

(2) If a veteran who is 45 years of age or older and is awarded pension during the program period, or a veteran who was awarded pension before the beginning of the program period, applies for vocational training under this section and the Secretary makes a preliminary finding on the basis of information in the application that, with the assistance of a vocational training program under subsection (b) [of this section], the veteran has a good potential for achieving employment, the Secretary shall provide the veteran with an evaluation in order to determine whether the achievement of a vocational goal by the veteran is reasonably feasible. Any such evaluation shall include a personal interview by a Department employee trained in vocational counseling.

(3) For the purposes of this section, the term "program period" means [the period beginning on February 1, 1985, and ending on December 31, 1995] *the five-year period beginning on the date of the enactment of the Veterans Benefits Act of 2003.*

(b)(1) If the Secretary, based upon an evaluation under subsection (a) [of this section], determines that the achievement of a vocational goal by a veteran is reasonably feasible, the veteran shall be offered and may elect to pursue a vocational training program under this subsection. If the veteran elects to pursue such a program, the program shall be designed in consultation with the veteran in order to meet the veteran's individual needs and shall be set forth in an individualized written plan of vocational rehabilitation of the kind described in section 3107 of this title.

* * * * * * *

(4) A veteran may not begin pursuit of a vocational training program under this subsection after the later of (A) [December 31, 1995] *the end of the program period,* or (B) the end of a reasonable period of time, as determined by the Secretary, following either the evaluation of the veteran under subsection (a) [of this section] or the award of pension to the veteran as described in subsection (a)(2) [of this section]. Any determination by the Secretary of such a reasonable period of time shall be made pursuant to regulations which the Secretary shall prescribe.

(c) In the case of a veteran who has been determined to have a permanent and total non-service-connected disability and who, not later than one year after the date the veteran's eligibility for counseling under subsection (b)(3) [of this section] expires, secures employment within the scope of a vocational goal identified in the veteran's individualized written plan of vocational rehabilitation (or in a related field which requires reasonably developed skills and the use of some or all of the training or services furnished the veteran under such plan), the evaluation of the veteran as having a permanent and total disability may not be terminated by reason of the veteran's capacity to engage in such employment until the veteran first maintains such employment for a period of not less than 12 consecutive months.

(d) A veteran who pursues a vocational training program under subsection (b) [of this section] shall have the benefit of the provisions of subsection (a) of section 1525 of this title beginning at such time as the veteran's entitlement to pension is terminated by reason of income from work or training (as defined in subsection (b)(1) of that section) without regard to the date on which the veteran's entitlement to pension is terminated.

(e) Payments by the Secretary for education, training, and other services and assistance under subsection (b) [of this section] (other than the services of Department employees) shall be made from the Department appropriations account from which payments for pension are made.

*(f) The Secretary shall ensure that the availability of vocational training under this section is made known through a variety of means, including the Internet and announcements in Department publications and other veterans' publications.*

*(g) Not later than two years after the date of the enactment of the Veterans Benefits Act of 2003, and each year thereafter, the Secretary shall submit to the Committees on Veterans' Affairs of the Senate and House of Representatives a report on the operation of this section. The report shall set forth an evaluation of the vocational training provided under this section for the period involved, and shall include an analysis of the cost-effectiveness of the vocational training provided under this section as well as data on the entered-employment rate of veterans pursuing such vocational training.*

* * * * * * *

## [CHAPTER 18—BENEFITS FOR CHILDREN OF VIETNAM VETERANS

[SUBCHAPTER I—CHILDREN OF VIETNAM VETERANS BORN WITH SPINA BIFIDA]

## *CHAPTER 18—DISABILITY BENEFITS FOR CHILDREN OF VIETNAM VETERANS AND OTHER VETERANS EXPOSED TO HERBICIDE AGENTS*

*SUBCHAPTER I—CHILDREN BORN WITH SPINA BIFIDA*

Sec.
*1801. Persons eligible for benefits.*
1802. Spina bifida conditions covered.

* * * * * * *

### [SUBCHAPTER I—CHILDREN OF VIETNAM VETERANS BORN WITH SPINA BIFIDA]

### *SUBCHAPTER I—CHILDREN BORN WITH SPINA BIFIDA*

### ***§ 1801. Persons eligible for benefits***

*An individual is an eligible child for purposes of this subchapter if the individual is suffering from spina bifida and is—*

*(1) a child as defined in section 1821(1) of this title; or*

*(2) the natural child, regardless of age or marital status, of a parent who during the period beginning on October 1 1967, and ending on May 7 1975, performed active military, naval, or air service in the Republic of Korea in the area between the south line of the Demilitarized Zone and a line five miles south of the Civilian Control Line established with respect to the Demilitarized Zone, but only if the individual was conceived after the parent performed such service.*

* * * * * * *

### § 1803. Health care

(a) In accordance with regulations which the Secretary shall prescribe, the Secretary shall provide [a child of a Vietnam veteran who is suffering from spina bifida] *an eligible child* with such health care as the Secretary determines is needed by the child for the spina bifida or any disability that is associated with such condition.

* * * * * * *

### § 1804. Vocational training and rehabilitation

(a) Pursuant to such regulations as the Secretary may prescribe, the Secretary may provide vocational training under this section to [a child of a Vietnam veteran who is suffering from spina bifida] *an eligible child* if the Secretary determines that the achievement of a vocational goal by such child is reasonably feasible.

* * * * * * *

### § 1805. Monetary allowance

(a) The Secretary shall pay a monthly allowance under this chapter to [any child of a Vietnam veteran] *any eligible child* for any disability resulting from spina bifida suffered by such child.

* * * * * * *

## CHAPTER 21—SPECIALLY ADAPTED HOUSING FOR DISABLED VETERANS

* * * * * * *

### § 2102. Limitations on assistance furnished

(a) The assistance authorized by section 2101(a) of this title shall be limited in the case of any veteran to one housing unit, and necessary land therefor, and shall be afforded under one of the following plans, at the option of the veteran but shall not exceed [$48,000] *$50,000* in any one case—

(1) * * *

* * * * * * *

(b) Except as provided in section 2104(b) of this title, the assistance authorized by section 2101(b) of this title shall be limited to the lesser of—

(1) * * *

(2) [$9,250] *$10,000.*

* * * * * * *

## CHAPTER 24—NATIONAL CEMETERIES AND MEMORIALS

* * * * * * *

### § 2402. Persons eligible for interment in national cemeteries

Under such regulations as the Secretary may prescribe and subject to the provisions of section 6105 of this title, the remains of the following persons may be buried in any open national cemetery under the control of the National Cemetery Administration:

(1) * * *

* * * * * * *

(5) The spouse, surviving spouse [(which for purposes of this chapter includes an unremarried surviving spouse who had a subsequent remarriage which was terminated by death or divorce)] *(which for purposes of this chapter includes a surviving spouse who had a subsequent remarriage)*, minor child (which for purposes of this chapter includes a child under 21 years of age, or under 23 years of age if pursuing a course of instruction at an approved educational institution), and, in the discretion of the Secretary, unmarried adult child of any of the persons listed in paragraphs (1) through (4) and paragraph (7).

* * * * * * *

(8) Any individual whose service is described in [section 107(a)] *subsection (a) or (b) of section 107* of this title if such individual at the time of death—

(A) * * *

* * * * * * *

### § 2408. Aid to States for establishment, expansion, and improvement of veterans' cemeteries

(a)(1) * * *

(2) There is authorized to be appropriated such sums as may be necessary [for fiscal year 1999 and for each succeeding fiscal year through fiscal year 2004] for the purpose of making grants under paragraph (1). *Funds appropriated under the preceding sentence shall remain available until expended.*

* * * * * * *

## PART III—READJUSTMENT AND RELATED BENEFITS

* * * * * * *

## CHAPTER 34—VETERANS' EDUCATIONAL ASSISTANCE

* * * * * * *

### SUBCHAPTER I—PURPOSE; DEFINITIONS

* * * * * * *

### § 3452. Definitions

For the purposes of this chapter and chapter 36 of this title—

(a) * * *

* * * * * * *

(e) The term "training establishment" [means any establishment providing apprentice or other training on the job, including those under the supervision of a college or university or any State department of education, or any State apprenticeship agency, or any State board of vocational education, or any joint apprenticeship committee, or the Bureau of Apprenticeship and Training established pursuant to the Act of August 16, 1937, popularly known as

the "National Apprenticeship Act" (29 U.S.C. 50 et seq.), or any agency of the Federal Government authorized to supervise such training.] *means any of the following:*

*(1) An establishment providing apprentice or other training on the job, including those under the supervision of a college or university or any State department of education.*

*(2) An establishment providing self-employment on-job training consisting of full-time training for a period of less than six months that is needed or accepted for purposes of obtaining licensure to engage in a self-employment occupation or required for ownership and operation of a franchise that is the objective of the training.*

*(3) A State board of vocational education.*

*(4) A Federal or State apprenticeship registration agency.*

*(5) A joint apprenticeship committee established pursuant to the Act of August 16, 1937, popularly known as the "National Apprenticeship Act" (29 U.S.C. 50 et seq.).*

*(6) An agency of the Federal Government authorized to supervise such training.*

* * * * * * *

SUBCHAPTER II—ELIGIBILITY AND ENTITLEMENT

* * * * * * *

**§ 3462. Time limitations for completing a program of education**

Delimiting Period for Completion

(a)(1) * * *

[(2)(A) Notwithstanding the provisions of paragraph (1) of this subsection, any veteran shall be permitted to use any of such veteran's unused entitlement under section 3461 of this title for the purposes of eligibility for an education loan, pursuant to the provisions of subchapter III of chapter 36 of this title, after the delimiting date otherwise applicable to such veteran under such paragraph (1), if such veteran was pursuing an approved program of education on a full-time basis at the time of the expiration of such veteran's eligibility.

[(B) Notwithstanding any other provision of this chapter or chapter 36 of this title, any veteran whose delimiting period is extended under subparagraph (A) of this paragraph may continue to use any unused loan entitlement under this paragraph as long as the veteran continues to be enrolled on a full-time basis in pursuit of the approved program of education in which such veteran was enrolled at the time of expiration of such veteran's eligibility (i) until such entitlement is exhausted, (ii) until the expiration of two years after November 23, 1977, or the date of the expiration of the delimiting date otherwise applicable to such veteran under paragraph (1) of this subsection, whichever is later, or (iii) until such veteran has completed the approved program of education in which such veteran was enrolled at the end of the delimiting period referred to in paragraph (1) of this subsection, whichever occurs first.]

* * * * * * *

SUBCHAPTER IV—PAYMENTS TO ELIGIBLE VETERANS; VETERAN–STUDENT SERVICES

* * * * * * *

**§ 3485. Work-study allowance**

(a) * * *

* * * * * * *

(e)(1) Subject to paragraph (2) of this subsection, the Secretary may, notwithstanding any other provision of law, enter into an agreement with an individual under this section, or a modification of such an agreement, whereby the individual agrees to perform services of the kind described in clauses (A) through (E) of subsection (a)(1) of this section and agrees that the Secretary shall, in lieu of paying the work-study allowance payable for such services, as provided in subsection (a) of this section, deduct the amount of the allowance from the amount which the individual has been determined to be indebted to the United States by virtue of such individual's participation in a benefits program under this chapter, chapter 30, 31, 32, 35, or 36 **[**(other than an education loan under subchapter III)**]** of this title, or chapter 106 of title 10 (other than an indebtedness arising from a refund penalty imposed under section 2135 of such title).

* * * * * * *

**CHAPTER 35—SURVIVORS' AND DEPENDENTS' EDUCATIONAL ASSISTANCE**

* * * * * * *

SUBCHAPTER II—ELIGIBILITY AND ENTITLEMENT

* * * * * * *

**§ 3512. Periods of eligibility**

(a) * * *

* * * * * * *

**[**(f) Any eligible person (as defined in section 3501(a)(1)(B), (C), or (D) of this chapter) shall be entitled to an additional period of eligibility for an education loan under subchapter III of chapter 36 of this title beyond the maximum period provided for in this section pursuant to the same terms and conditions set forth with respect to an eligible veteran in section 3462(a)(2) of this title.**]**

* * * * * * *

(h) Notwithstanding any other provision of this section, if an eligible person, during the delimiting period otherwise applicable to such person under this section, serves on active duty pursuant to an order to active duty issued under section 688, 12301(a), 12301(d), 12301(g), 12302, or 12304 of title 10, *or is involuntarily ordered to full-time National Guard duty under section 502(f) of title 32,* such person shall be granted an extension of such delimiting period for the length of time equal to the period of such active duty plus four months.

* * * * * * *

## CHAPTER 36—ADMINISTRATION OF EDUCATIONAL BENEFITS

SUBCHAPTER I—STATE APPROVING AGENCIES

Sec.
3670. Scope of approval.

* * * * * * *

[SUBCHAPTER III—EDUCATION LOANS

[3698. Eligibility for loans; amount and conditions of loans; interest rate on loans.
[3699. Revolving fund; insurance.]

* * * * * * *

### SUBCHAPTER II—MISCELLANEOUS PROVISIONS

* * * * * * *

### § 3692. Advisory committee

(a) There shall be a Veterans' Advisory Committee on Education formed by the Secretary which shall be composed of persons who are eminent in their respective fields of education, labor, and management and of representatives of institutions and establishments furnishing education to eligible veterans or persons enrolled under chapter 30, 32, or 35 of this title and chapter [106] *1606* of title 10. The committee shall also include veterans representative of [World War II, the Korean conflict era, the post-Korean conflict era,] the Vietnam era, the post-Vietnam era, and the Persian Gulf War. The Assistant Secretary of Education for Postsecondary Education (or such other comparable official of the Department of Education as the Secretary of Education may designate) and the Assistant Secretary of Labor for Veterans' Employment and Training shall be ex officio members of the advisory committee.

(b) The Secretary shall consult with and seek the advice of the committee from time to time with respect to the administration of this chapter, chapter 30, 32, and 35 of this title, and chapter [106] *1606* of title 10. The committee may make such reports and recommendations as it considers desirable to the Secretary and the Congress.

(c) The committee shall remain in existence until December 31, [2003] *2009*.

* * * * * * *

### [SUBCHAPTER III—EDUCATION LOANS

### [§ 3698. Eligibility for loans; amount and conditions of loans; interest rate on loans

[(a)(1) Subject to paragraph (2) of this subsection, each eligible veteran shall be entitled to a loan under this subchapter (if the program of education is pursued in a State) in an amount determined under, and subject to the conditions specified in, subsection (b)(1) of this section if the veteran satisfies the requirements set forth in subsection (c) of this section and the criteria established under subsection (g) of this section.

[(2) Except in the case of a veteran to whom section 3462(a)(2) of this title is applicable, no loan may be made under this subchapter after September 30, 1981.

[(b)(1) Subject to paragraph (3) of this subsection, the amount of the loan to which an eligible veteran shall be entitled under this subchapter for any academic year shall be equal to the amount needed by such veteran to pursue a program of education at the institution at which the veteran is enrolled, as determined under paragraph (2) of this subsection.

[(2)(A) The amount needed by a veteran to pursue a program of education at an institution for any academic year shall be determined by subtracting (i) the total amount of financial resources (as defined in subparagraph (B) of this paragraph) available to the veteran which may be reasonably expected to be expended by such veteran for educational purposes in any year from (ii) the actual cost of attendance (as defined in subparagraph (C) of this paragraph) at the institution in which such veteran is enrolled.

[(B) The term "total amount of financial resources" of any veteran for any year means the total of the following:

[(i) The annual adjusted effective income of the veteran less Federal income tax paid or payable by such veteran with respect to such income.

[(ii) The amount of cash assets of the veteran.

[(iii) The amount of financial assistance received by the veteran under the provisions of title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.).

[(iv) Educational assistance received by the veteran under this title other than under this subchapter.

[(v) Financial assistance received by the veteran under any scholarship or grant program other than those specified in clauses (iii) and (iv).

[(C) The term "actual cost of attendance" means, subject to such regulations as the Secretary may provide, the actual per-student charges for tuition, fees, room and board (or expenses related to reasonable commuting), books, and an allowance for such other expenses as the Secretary determines by regulation to be reasonably related to attendance at the institution at which the veteran is enrolled.

[(3) The aggregate of the amounts any veteran may borrow under this subchapter may not exceed $376 multiplied by the number of months such veteran is entitled to receive educational assistance under section 3461 of this title, but not in excess of $2,500 in any one regular academic year.

[(c) An eligible veteran shall be entitled to a loan under this subchapter if such veteran—

[(1) is in attendance at an educational institution on at least a half-time basis and (A) is enrolled in a course leading to a standard college degree, or (B) is enrolled in a course, the completion of which requires six months or longer, leading to an identified and predetermined professional or vocational objective, except that the Secretary may waive the requirements of subclause (B) of this clause, in whole or in part, if the Secretary determines, pursuant to regulations which the Secretary shall prescribe, it to be in the interest of the eligible veteran and the Federal Government;

[(2) enters into an agreement with the Secretary meeting the requirements of subsection (d) of this section; and

[(3) satisfies any criteria established under subsection (g) of this section.

No loan shall be made under this subchapter to an eligible veteran pursuing a program of correspondence, or apprenticeship or other on-job training.

[(d) Any agreement between the Secretary and a veteran under this subchapter—

[(1) shall include a note or other written obligation which provides for repayment to the Secretary of the principal amount of, and payment of interest on, the loan in installments (A) over a period beginning nine months after the date on which the borrower ceases to be at least a half-time student and ending ten years and nine months after such date, or (B) over such shorter period as the Secretary may have prescribed under subsection (g) of this section;

[(2) shall include provision for acceleration of repayment of all or any part of the loan, without penalty, at the option of the borrower;

[(3) shall provide that the loan shall bear interest, on the unpaid balance of the loan, at a rate prescribed by the Secretary, at the time the loan is contracted for which rate shall be comparable to the rate of interest charged students at such time on loans insured by the Secretary of Education under part B of title IV of the Higher Education Act of 1965, but in no event shall the rate so prescribed by the Secretary exceed the rate charged students on such insured loans, and shall provide that no interest shall accrue prior to the beginning date of repayment; and

[(4) shall provide that the loan shall be made without security and without endorsement.

[(e)(1) Except as provided in paragraph (2) of this subsection, whenever the Secretary determines that a default has occurred on any loan made under this subchapter, the Secretary shall declare an overpayment, and such overpayment shall be recovered from the veteran concerned in the same manner as any other debt due the United States.

[(2) If a veteran who has received a loan under this section dies or becomes permanently and totally disabled, then the Secretary shall discharge the veteran's liability on such loan by repaying the amount owed on such loan.

[(f) Payment of a loan made under this section shall be drawn in favor of the eligible veteran and mailed promptly to the educational institution in which such veteran is enrolled. Such institution shall deliver such payment to the eligible veteran as soon as practicable after receipt thereof. Upon delivery of such payment to the eligible veteran, such educational institution shall promptly submit to the Secretary a certification, on such form as the Secretary shall prescribe, of such delivery, and such delivery shall be deemed to be an advance payment under section 3680(d)(4) of this title for purposes of section 3684(b) of this title.

[(g)(1) The Secretary shall conduct, on a continuing basis, a review of the default experience with respect to loans made under this section.

[(2)(A) To ensure that loans are made under this section on the basis of financial need directly related to the costs of education, the Secretary may, by regulation, establish (i) criteria for eligibility for such loans, in addition to the criteria and requirements prescribed by subsections (c) and (d) of this section, in order to limit eligibility for such loans to eligible veterans attending educational institutions with relatively high rates of tuition and fees, and (ii) criteria under which the Secretary may prescribe a repayment period for certain types of loans made under this section that is shorter than the repayment period otherwise applicable under subsection (d)(1)(A) of this section. Criteria established by the Secretary under clause (i) of the preceding sentence may include a minimum amount of tuition and fees that an eligible veteran may pay in order to be eligible for such a loan (except that any such criterion shall not apply with respect to a loan for which the veteran is eligible as a result of an extension of the period of eligibility of such veteran for loans under this section provided for by section 3462(a)(2) of this title).

[(B) In prescribing regulations under subparagraph (A) of this paragraph, the Secretary shall take into consideration information developed in the course of the review required by paragraph (1) of this subsection.

[(C) Regulations may be prescribed under subparagraph (A) of this paragraph only after opportunity has been afforded for public comment thereon.

**[§ 3699. Revolving fund; insurance**

[(a) There is hereby established in the Treasury of the United States a revolving fund to be known as the "Department of Veterans Affairs Education Loan Fund" (hereinafter in this section referred to as the "Fund").

[(b) The Fund shall be available to the Secretary, without fiscal year limitation, for the making of loans under this subchapter.

[(c) There shall be deposited in the Fund (1) by transfer from current and future appropriations for readjustment benefits such amounts as may be necessary to establish and supplement the Fund in order to meet the requirements of the Fund, and (2) all collections of fees and principal and interest (including overpayments declared under section 3698(e) of this title) on loans made under this subchapter.

[(d) The Secretary shall determine annually whether there has developed in the Fund a surplus which, in the Secretary's judgment, is more than necessary to meet the needs of the Fund, and such surplus, if any, shall be deemed to have been appropriated for readjustment benefits.

[(e) A fee shall be collected from each veteran or person obtaining a loan made under this subchapter for the purpose of insuring against defaults on loans made under this subchapter; and no loan shall be made under this subchapter until the fee payable with respect to such loan has been collected and remitted to the Secretary. The amount of the fee shall be established from time to time by the Secretary, but shall in no event exceed 3 percent of the total loan amount. The amount of the fee may be included in the loan to the veteran or person and paid from the proceeds thereof.]

* * * * * * *

## CHAPTER 37—HOUSING AND SMALL BUSINESS LOANS

* * * * * * *

### SUBCHAPTER I—GENERAL

* * * * * * *

### § 3702. Basic entitlement

(a)(1) * * *

(2) The veterans referred to in the first sentence of paragraph (1) of this subsection are the following:

(A) * * *

* * * * * * *

(E) [For the period beginning on October 28, 1992, and ending on September 30, 2009, each] *Each* veteran described in section 3701(b)(5) of this title.

* * * * * * *

### SUBCHAPTER III—ADMINISTRATIVE PROVISIONS

* * * * * * *

### § 3729. Loan fee

(a) * * *

(b) DETERMINATION OF FEE.—(1) * * *

[(2) The loan fee table referred to in paragraph (1) is as follows:

[LOAN FEE TABLE

| Type of loan | Active duty veteran | Reservist | Other obligor |
|---|---|---|---|
| (A)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed before October 1, 2011) | 2.00 | 2.75 | NA |
| (A)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2011) | 1.25 | 2.00 | NA |
| (B)(i) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed before October 1, 2011) | 3.00 | 3.00 | NA |
| (B)(ii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2011) | 1.25 | 2.00 | NA |
| (C)(i) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed before October 1, 2011) | 1.50 | 2.25 | NA |
| (C)(ii) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed on or after October 1, 2011) | 0.75 | 1.50 | NA |

[LOAN FEE TABLE—Continued

| Type of loan | Active duty veteran | Reservist | Other obligor |
|---|---|---|---|
| (D)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed before October 1, 2011) | 1.25 | 2.00 | NA |
| (D)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed on or after October 1, 2011) | 0.50 | 1.25 | NA |
| (E) Interest rate reduction refinancing loan | 0.50 | 0.50 | NA |
| (F) Direct loan under section 3711 | 1.00 | 1.00 | NA |
| (G) Manufactured home loan under section 3712 (other than an interest rate reduction refinancing loan) | 1.00 | 1.00 | NA |
| (H) Loan to Native American veteran under section 3762 (other than an interest rate reduction refinancing loan) | 1.25 | 1.25 | NA |
| (I) Loan assumption under section 3714 | 0.50 | 0.50 | 0.50 |
| (J) Loan under section 3733(a) | 2.25 | 2.25 | 2.25] |

*(2) The loan fee table referred to in paragraph (1) is as follows:*

*LOAN FEE TABLE*

| *Type of loan* | *Veteran* | *Other obligor* |
|---|---|---|
| *(A)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed before October 1, 2003)* | *2.00* | *NA* |
| *(A)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2003, and before October 1, 2011)* | *2.15* | *NA* |
| *(A)(iii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2011)* | *1.40* | *NA* |
| *(B)(i) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed before October 1, 2011)* | *3.30* | *NA* |

*LOAN FEE TABLE—Continued*

| *Type of loan* | *Veteran* | *Other obligor* |
|---|---|---|
| *(B)(ii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2011 and before October 1, 2013)* .... | *2.15* | *NA* |
| *(B)(iii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2013)* .... | *1.25* | *NA* |
| *(C)(i) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed before October 1, 2011)* .... | *1.50* | *NA* |
| *(C)(ii) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed on or after October 1, 2011)* .... | *0.75* | *NA* |
| *(D)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed before October 1, 2011)* .... | *1.25* | *NA* |
| *(D)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed on or after October 1, 2011)* .... | *0.50* | *NA* |
| *(E) Interest rate reduction refinancing loan* .... | *0.50* | *NA* |
| *(F) Direct loan under section 3711* .... | *1.00* | *NA* |
| *(G) Manufactured home loan under section 3712 (other than an interest rate reduction refinancing loan)* .... | *1.00* | *NA* |
| *(H) Loan to Native American veteran under section 3762 (other than an interest rate reduction refinancing loan)* .... | *1.25* | *NA* |
| *(I) Loan assumption under section 3714* .... | *0.50* | *0.50* |
| *(J) Loan under section 3733(a)* .... | *2.25* | *2.25* |
| *(K) Hybrid loan under section 3707A* .... | *1.25* | *NA* |

* * * * * * *

(4) For the purposes of paragraph (2):

[(A) The term "active duty veteran" means any veteran eligible for the benefits of this chapter other than a Reservist.

[(B) The term "Reservist" means a veteran described in section 3701(b)(5)(A) of this title who is eligible under section 3702(a)(2)(E) of this title.]

*(A) The term "veteran" means any veteran eligible for the benefits of this chapter.*

【(C)】 *(B)* The term "other obligor" means a person who is not a veteran, as defined in section 101 of this title or other provision of this chapter.

【(D)】 *(C)* The term "initial loan" means a loan to a veteran guaranteed under section 3710 or made under section 3711 of this title if the veteran has never obtained a loan guaranteed under section 3710 or made under section 3711 of this title.

【(E)】 *(D)* The term "subsequent loan" means a loan to a veteran, other than an interest rate reduction refinancing loan, guaranteed under section 3710 or made under section 3711 of this title if the veteran has previously obtained a loan guaranteed under section 3710 or made under section 3711 of this title.

【(F)】 *(E)* The term "interest rate reduction refinancing loan" means a loan described in section 3710(a)(8), 3710(a)(9)(B)(i), 3710(a)(11), 3712(a)(1)(F), or 3762(h) of this title.

【(G)】 *(F)* The term "0-down" means a downpayment, if any, of less than 5 percent of the total purchase price or construction cost of the dwelling.

【(H)】 *(G)* The term "5-down" means a downpayment of at least 5 percent or more, but less than 10 percent, of the total purchase price or construction cost of the dwelling.

【(I)】 *(H)* The term "10-down" means a downpayment of 10 percent or more of the total purchase price or construction cost of the dwelling.

* * * * * * *

**§ 3733. Property management**

(a)(1) Of the number of purchases made during any fiscal year of real property acquired by the Secretary as the result of a default on a loan guaranteed under this chapter for a purpose described in section 3710(a) of this title, not more than 【65】 *85* percent, nor less than 50 percent, of such purchases 【may】 *shall* be financed by a loan made by the Secretary. 【The maximum percentage stated in the preceding sentence may be increased to 80 percent for any fiscal year if the Secretary determines that such an increase is necessary in order to maintain the effective functioning of the loan guaranty program.】

【(2) After September 30, 1990, the percentage limitations described in paragraph (1) of this subsection shall have no effect.】

* * * * * * *

(4)(A) Except as provided in subparagraph (B) 【of this paragraph】, the amount of a loan made by the Secretary to finance the purchase of real property from the Secretary described in paragraph (1) 【of this subsection】 may not exceed an amount equal to 95 percent of the purchase price of such real property.

(B)(i) The Secretary may waive the provisions of subparagraph (A) 【of this paragraph】 in the case of any loan described in paragraph (5) 【of this subsection】.

(ii) A loan described in subparagraph (A) 【of this paragraph】 may, to the extent the Secretary determines to be necessary in order to market competitively the property involved, exceed 95 percent of the purchase price.

(5) The Secretary may include, as part of a loan to finance a purchase of real property from the Secretary described in paragraph (1) [of this subsection], an amount to be used only for the purpose of rehabilitating such property. Such amount may not exceed the amount necessary to rehabilitate the property to a habitable state, and payments shall be made available periodically as such rehabilitation is completed.

(6) The Secretary shall make a loan to finance the sale of real property described in paragraph (1) [of this subsection] at an interest rate that is lower than the prevailing mortgage market interest rate in areas where, and to the extent, the Secretary determines, in light of prevailing conditions in the real estate market involved, that such lower interest rate is necessary in order to market the property competitively and is in the interest of the long-term stability and solvency of the Veterans Housing Benefit Program Fund established by section 3722(a) of this title.

* * * * * * *

(c)(1) * * *

(2) The Secretary shall include a summary of the information compiled, and the Secretary's findings, under paragraph (1) [of this subsection] in the annual report submitted to the Congress under section 529 of this title. As part of such summary and findings, the Secretary shall provide a separate analysis of the factors which contribute to foreclosures of loans which have been assumed.

* * * * * * *

## CHAPTER 39—AUTOMOBILES AND ADAPTIVE EQUIPMENT FOR CERTAIN DISABLED VETERANS AND MEMBERS OF THE ARMED FORCES

* * * * * * *

### § 3902. Assistance for providing automobile and adaptive equipment

(a) The Secretary, under regulations which the Secretary shall prescribe, shall provide or assist in providing an automobile or other conveyance to each eligible person by paying the total purchase price of the automobile or other conveyance (including all State, local, and other taxes) or [$9,000] *$11,000*, whichever is the lesser, to the seller from whom the eligible person is purchasing under a sales agreement between the seller and the eligible person.

* * * * * * *

## CHAPTER 41—JOB COUNSELING, TRAINING, AND PLACEMENT SERVICE FOR VETERANS

Sec.
4100. Findings.

* * * * * * *

*4113. Outstationing of Transition Assistance Program personnel.*

* * * * * * *

**§ 4102A. Assistant Secretary of Labor for Veterans' Employment and Training; program functions; Regional Administrators**

(a) * * *

* * * * * * *

(c) CONDITIONS FOR RECEIPT OF FUNDS.—(1) The distribution and use of funds under subsection (b)(5) in order to carry out sections 4103A(a) and 4104(a) of this title shall be subject to the continuing supervision and monitoring of the Secretary and shall not be governed by the provisions of any other law, or any regulations prescribed thereunder, that are inconsistent with this section or section 4103A or 4104 of this title.

(2)(A) * * *

(B)(i) * * *

(ii) The Secretary shall phase in over the three fiscal-year period that begins on October 1, [2002] *2003*, the manner in which amounts are made available to States under subsection (b)(5) and this subsection[, as amended by the Jobs for Veterans Act].

* * * * * * *

(f) ESTABLISHMENT OF PERFORMANCE STANDARDS AND OUTCOMES MEASURES.—(1) By not later than [6 months after the date of the enactment of this section,] *May 7, 2003*, the Assistant Secretary of Labor for Veterans' Employment and Training shall establish and implement a comprehensive performance accountability system to measure the performance of employment service delivery systems, including disabled veterans' outreach program specialists and local veterans' employment representatives providing employment, training, and placement services under this chapter in a State to provide accountability of that State to the Secretary for purposes of subsection (c).

* * * * * * *

***§ 4113. Outstationing of Transition Assistance Program personnel***

*(a) STATIONING OF TAP PERSONNEL AT OVERSEAS MILITARY INSTALLATIONS.—(1) The Secretary—*

*(A) shall station employees of the Veterans' Employment and Training Service, or contractors under subsection (c), at each veterans assistance office described in paragraph (2); and*

*(B) may station such employees or contractors at such other military installations outside the United States as the Secretary, after consultation with the Secretary of Defense, determines to be appropriate or desirable to carry out the purposes of this chapter.*

*(2) Veterans assistance offices referred to in paragraph (1)(A) are those offices that are established by the Secretary of Veterans Affairs on military installations pursuant to the second sentence of section 7723(a) of this title.*

*(b) FUNCTIONS.—Employees (or contractors) stationed at military installations pursuant to subsection (a) shall provide, in person, counseling, assistance in identifying employment and training opportunities, help in obtaining such employment and training, and other related information and services to members of the Armed*

*Forces who are being separated from active duty, and the spouses of such members, under the Transition Assistance Program and Disabled Transition Assistance Program established in section 1144 of title 10.*

*(c) AUTHORITY TO CONTRACT WITH PRIVATE ENTITIES.—The Secretary, consistent with such section 1144, may enter into contracts with public or private entities to provide, in person, some or all of the counseling, assistance, information and services under the Transition Assistance Program required under subsection (a).*

* * * * * * *

# PART IV—GENERAL ADMINISTRATIVE PROVISIONS

* * * * * * *

## CHAPTER 51—CLAIMS, EFFECTIVE DATES, AND PAYMENTS

* * * * * * *

### § 5101. Claims and forms

(a) A specific claim in the form prescribed by the Secretary (or jointly with the [Secretary of Health and Human Services] *Commissioner of Social Security*, as prescribed by section 5105 of this title) must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary.

* * * * * * *

## CHAPTER 53—SPECIAL PROVISIONS RELATING TO BENEFITS

Sec.
5301. Nonassignability and exempt status of benefits.

* * * * * * *

[5318. Review of Department of Health and Human Services death information.]
*5318. Review of Social Security Administration death information.*

* * * * * * *

### § 5317. Use of income information from other agencies: notice and verification

(a) The Secretary shall notify each applicant for a benefit or service described in subsection (c) of this section that income information furnished by the applicant to the Secretary may be compared with information obtained by the Secretary from the [Secretary of Health and Human Services] *Commissioner of Social Security* or the Secretary of the Treasury under section 6103(*l*)(7)(D)(viii) of the Internal Revenue Code of 1986. The Secretary shall periodically transmit to recipients of such benefits and services additional notifications of such matters.

(b) The Secretary may not, by reason of information obtained from the [Secretary of Health and Human Services] *Commissioner of Social Security* or the Secretary of the Treasury under section

6103(*l*)(7)(D)(viii) of the Internal Revenue Code of 1986, terminate, deny, suspend, or reduce any benefit or service described in subsection (c) of this section until the Secretary takes appropriate steps to verify independently information relating to the following:

(1) The amount of the asset or income involved.

(2) Whether such individual actually has (or had) access to such asset or income for the individual's own use.

(3) The period or periods when the individual actually had such asset or income.

* * * * * * *

(g) The authority of the Secretary to obtain information from the Secretary of the Treasury or the [Secretary of Health and Human Services] *Commissioner of Social Security* under section 6103(*l*)(7)(D)(viii) of the Internal Revenue Code of 1986 expires on September 30, 2008.

**[§ 5318. Review of Department of Health and Human Services death information]**

***§ 5318. Review of Social Security Administration death information***

(a) The Secretary shall periodically compare Department of Veterans Affairs information regarding persons to or for whom compensation or pension is being paid with information in the records of the [Department of Health and Human Services] *Social Security Administration* relating to persons who have died for the purposes of—

(1) * * *

* * * * * * *

(b) The [Department of Health and Human Services] *Social Security Administration* death information referred to in subsection (a) of this section is death information available to the Secretary from or through the [Secretary of Health and Human Services] *Commissioner of Social Security*, including death information available to the [Secretary of Health and Human Services] *Commissioner* from a State, pursuant to a memorandum of understanding entered into by [such Secretaries] *the Secretary and the Commissioner*. Any such memorandum of understanding shall include safeguards to assure that information made available under it is not used for unauthorized purposes or improperly disclosed.

* * * * * * *

## CHAPTER 61—PENAL AND FORFEITURE PROVISIONS

* * * * * * *

**§ 6105. Forfeiture for subversive activities**

(a) * * *

(b) The offenses referred to in subsection (a) of this section are those offenses for which punishment is prescribed in—

(1) * * *

(2) sections *175, 229,* 792, 793, 794, 798, *831, 1091, 2332a, 2332b,* 2381, 2382, 2383, 2384, 2385, 2387, 2388, 2389, 2390, and chapter 105 of title 18;

* * * * * * *

○