# Exhibit 3

focused on their responsibilities to foster children.

After a GAO report—requested by Senator GRASSLEY and me—revealed that some State governments are failing to adequately keep and provide information about foster children in their care, I worked with Chairman HERGER and lead sponsor Mr. CAMP to add a new provision to this bill.

The new provision imposes penalties on those States that do not keep up their records, and thereby let their foster children slip through the cracks.

Every new phase in a foster child's journey through the system can be the wrong turn that makes the difference between happiness and despair.

How can we expect them to work hard in school, stay optimistic about their future, and never lose hope if we can't even keep track of their address?

These kids start out in life facing adversity before they even know what the word means. They carry doubt and fear around on their backs like crosses. This provision and this bill will give America's foster children hope, and a better chance at finding the unconditional love they all deserve, but so few have ever known.

I thank the gentlemen for all their hard work in this legislation, and I urge all my colleagues to vote in favor of it.

Mr. SHAW. Mr. Speaker, I rise today in support of H.R. 3182, the Adoption Promotion Act of 2003, which continues to reward states for their efforts to promote adoption of children in need of loving families.

I am proud to be a cosponsor of this legislation as it reauthorizes the Adoption Incentives program. This program was created as part of the Adoption and Safe Families Act of 1997, which was signed into law while I was the Chairman of the Ways and Means' Human Resources Subcommittee. This law has resulted in moving thousands of children out of hopeless foster care situations and into loving adoptive families.

The current Adoption Incentives program rewards states that make gains in the number of children adopted and provides additional incentives for the adoption of foster children with special needs. Between 1997 and 2002, adoptions increased by 64 percent, and adoptions of children with special needs increased by 63 percent. However, more work needs to be done to assist the 542,000 children who remain in foster care, and the 126,000 who are eligible for adoption.

Research suggests that many older children still linger in foster care, so we must do more to encourage states to find adoptive families for these children. The Adoption Promotion Act of 2003 takes the necessary steps to enhance the current incentive program, by creating a new incentive for states that increase adoptions of children age 9 or older. Our children do not deserve to be languishing in foster care or living in dangerous situations. This bill will take a big step towards righting that wrong.

I would like to commend my colleagues on the Committee on Ways and Means, Representatives DAVE CAMP and BEN CARDIN, for their commitment to improving the Adoption Incentives program by the introduction of the Adoption Promotion Act of 2003. Their work on this legislation will assure that states continue to find safe, permanent homes for America's children.

Mr. Speaker, it's important that we continue to reward states for their good work in making adoptive matches and add additional incentive for those children still waiting for a home and loving family. With this in mind, I urge my colleagues to support America's foster children who are waiting on adoption by voting for this important bill.

Mr. CARDIN. Mr. Speaker, I have no further requests for time, and I yield back the balance of my time.

Mr. CAMP. Mr. Speaker, I have no further requests for time, and I yield back the balance of my time.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from Michigan (Mr. CAMP) that the House suspend the rules and pass the bill, H.R. 3182.

The question was taken; and (two-thirds having voted in favor thereof) the rules were suspended and the bill was passed.

A motion to reconsider was laid on the table.

## GENERAL LEAVE

Mr. CAMP. Mr. Speaker, I ask unanimous consent that all Members may have 5 legislative days within which to revise and extend their remarks and to include extraneous material on H.R. 3182, the bill just passed.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Michigan?

There was no objection.

## VETERANS BENEFITS ACT OF 2003

Mr. SMITH of New Jersey. Mr. Speaker, I move to suspend the rules and pass the bill (H.R. 2297) to amend title 38, United States Code, to modify and improve certain benefits for veterans, and for other purposes, as amended.

The Clerk read as follows:

H.R. 2297

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Veterans Benefits Act of 2003".

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Expansion of Montgomery GI Bill education benefits for certain self-employment training.
Sec. 3. Extension in period of eligibility for survivors' and dependents' education benefits for individuals who are involuntarily ordered to full-time National Guard duty.
Sec. 4. Extension of Veterans' Advisory Committee on Education.
Sec. 5. Repeal of provisions relating to obsolete education loan program.
Sec. 6. Retention of Dependency and Indemnity Compensation for surviving spouses remarrying after age 55.
Sec. 7. Eligibility of surviving spouses who remarry for burial in national cemeteries.
Sec. 8. Permanent authority for State cemetery grants.
Sec. 9. Reinstatement of veterans vocational training program for certain pension recipients.
Sec. 10. Increase in amounts for certain adaptive benefits for disabled veterans.
Sec. 11. Presumptions of service-connection relating to diseases and disabilities of former prisoners of war.
Sec. 12. Extension of spina bifida benefits for children of Vietnam-era veterans.
Sec. 13. Permanent authority for housing loans for members of the Selected Reserve.
Sec. 14. Adjustment to home loan fees and uniformity of fees for qualifying Reserve members with fees for active duty veterans.
Sec. 15. Reinstatement of minimum requirements for sale of vendee loans.
Sec. 16. Rate of payment of benefits for certain Filipino veterans and their survivors residing in the United States.
Sec. 17. Burial benefits for new Philippine scouts residing in the United States.
Sec. 18. Extension of authority to maintain regional office in the Republic of the Philippines.
Sec. 19. Outstationing of transition assistance program personnel.
Sec. 20. Forfeiture of benefits for subversive activities.
Sec. 21. Technical amendments related to Jobs for Veterans Act.
Sec. 22. Technical and conforming relating to establishment of Social Security Administration as an independent agency.

**SEC. 2. EXPANSION OF MONTGOMERY GI BILL EDUCATION BENEFITS FOR CERTAIN SELF-EMPLOYMENT TRAINING.**

(a) DEFINITION OF TRAINING ESTABLISHMENT.—Section 3452(e) of title 38, United States Code, is amended by striking "means any" and all that follows and inserting "means any of the following:

"(1) An establishment providing apprentice or other training on the job, including those under the supervision of a college or university or any State department of education.

"(2) An establishment providing self-employment on-job training consisting of full-time training for a period of less than six months that is needed or accepted for purposes of obtaining licensure to engage in a self-employment occupation or required for ownership and operation of a franchise that is the objective of the training.

"(3) A State board of vocational education.

"(4) A Federal or State apprenticeship registration agency.

"(5) A joint apprenticeship committee established pursuant to the Act of August 16, 1937, popularly known as the 'National Apprenticeship Act' (29 U.S.C. 50 et seq.).

"(6) An agency of the Federal Government authorized to supervise such training.".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on the date that is six months after the date of the enactment of this Act and shall apply to self-employment on-job training approved and pursued on or after that date.

**SEC. 3. EXTENSION IN PERIOD OF ELIGIBILITY FOR SURVIVORS' AND DEPENDENTS' EDUCATION BENEFITS FOR INDIVIDUALS WHO ARE INVOLUNTARILY ORDERED TO FULL-TIME NATIONAL GUARD DUTY.**

(a) IN GENERAL.—Section 3512(h) of title 38, United States Code, is amended by inserting "or is involuntarily ordered to full-time National Guard duty under section 502(f) of title 32," after "title 10,".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect as of September 11, 2001.

**SEC. 4. EXTENSION OF VETERANS' ADVISORY COMMITTEE ON EDUCATION.**

(a) EXTENSION.—Subsection (c) of section 3692 of title 38, United States Code, is amended by striking "December 31, 2003" and inserting "December 31, 2009".

(b) MODIFICATION OF MEMBERSHIP REQUIREMENTS.—The second sentence of subsection (a) of such section is amended by striking "World War II, the Korean conflict era, the post-Korean conflict era,".

(c) TECHNICAL AMENDMENT.—Such section is further amended by striking "chapter 106" each place it appears and inserting "chapter 1606".

**SEC. 5. REPEAL OF PROVISIONS RELATING TO OBSOLETE EDUCATION LOAN PROGRAM.**

(a) TERMINATION OF PROGRAM.—Subchapter III of chapter 36 of title 38, United States Code, is repealed.

(b) TRANSFER OF LOAN FUND BALANCE.—Any balance as of the date of the enactment of this Act in the Department of Veterans Affairs Education Loan Fund shall be transferred to the Department of Veterans Affairs Readjustment Benefits Account.

(c) DISCHARGE OF LIABILITY.—The Secretary of Veterans Affairs shall discharge any outstanding liability of a veteran under such subchapter. Any overpayment declared under section 3698(e)(1) of that subchapter shall be waived without further process on the date on which funds are transferred under subsection (b).

(d) CLERICAL AMENDMENT.—The table of sections at the beginning of chapter 36 of such title is amended by striking the items relating to subchapter III and sections 3698 and 3699.

(e) CONFORMING AMENDMENTS.—(1) Section 3462(a) of such title is amended by striking paragraph (2).

(2) Section 3485(e)(1) of such title by striking "(other than an education loan under subchapter III)".

(3) Section 3512 of such title is amended by striking subsection (f).

**SEC. 6. RETENTION OF DEPENDENCY AND INDEMNITY COMPENSATION FOR SURVIVING SPOUSES REMARRYING AFTER AGE 55.**

(a) EXCEPTION TO TERMINATION OF BENEFITS UPON REMARRIAGE.—Section 103(d)(2)(B) of title 38, United States Code, is amended by inserting "1311 or" after "under section".

(b) COORDINATION OF BENEFITS.—Section 1311 of such title is amended by adding at the end the following new subsection:

"(e) In the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(B) of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, notwithstanding any other provision of law (other than section 5304(b)3 of this title), no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section.".

(c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) shall take effect on—

(1) the first day of the first month that begins after the date of the enactment of this Act; or

(2) the first day of the fiscal year that begins in the calendar year in which this Act is enacted, if later than the date specified in paragraph (1).

(d) RETROACTIVE BENEFITS PROHIBITED.—No benefit may be paid to any person by reason of the amendment made by subsections (a) and (b) for any period before the effective date specified in subsection (c).

(e) APPLICATION FOR BENEFITS.—In the case of an individual who but for having remarried would be eligible for dependency and indemnity compensation under section 1311 of title 38, United States Code, and whose remarriage was before the date of the enactment of this Act and after the individual had attained age 55, the individual shall be eligible for such compensation by reason of the amendment made by subsection (a) only if the individual submits an application for such compensation to the Secretary of Veterans Affairs not later than the end of the one-year period beginning on the date of the enactment of this Act.

(f) TECHNICAL CORRECTION.—Section 101(b) of the Veterans Benefits Act of 2002 (Public Law 107–330; 116 Stat. 2821; 38 U.S.C. 103 note) is amended by striking "during the 1-year period" and all that follows through "(c)" and inserting "before the end of the one-year period beginning on the date of the enactment of the Veterans Benefits Act of 2003".

**SEC. 7. ELIGIBILITY OF SURVIVING SPOUSES WHO REMARRY FOR BURIAL IN NATIONAL CEMETERIES.**

(a) ELIGIBILITY.—Section 2402(5) of title 38, United States Code, is amended by striking "(which for purposes of this chapter includes an unremarried surviving spouse who had a subsequent remarriage which was terminated by death or divorce)" and inserting "(which for purposes of this chapter includes a surviving spouse who had a subsequent remarriage)".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply with respect to deaths occurring on or after January 1, 2000.

**SEC. 8. PERMANENT AUTHORITY FOR STATE CEMETERY GRANTS.**

Paragraph (2) of section 2408(a) of title 38, United States Code, is amended—

(1) by striking "for fiscal year 1999 and for each succeeding fiscal year through fiscal year 2004"; and

(2) by adding at the end the following new sentence: "Funds appropriated under the preceding sentence shall remain available until expended.".

**SEC. 9. REINSTATEMENT OF VETERANS VOCATIONAL TRAINING PROGRAM FOR CERTAIN PENSION RECIPIENTS.**

(a) ESTABLISHMENT OF NEW PROGRAM PERIOD.—Subsection (a)(3) of section 1524 of title 38, United States Code, is amended by striking "the period beginning on February 1, 1985, and ending on December 31, 1995" and inserting "the five-year period beginning on the date of the enactment of the Veterans Benefits Act of 2003".

(b) CONFORMING AMENDMENT.—Subsection (b)(4) of such section is amended by striking "December 31, 1995" and inserting "the end of the program period".

(c) OUTREACH.—Such section is further amended by adding at the end the following new subsection:

"(f) The Secretary shall ensure that the availability of vocational training under this section is made known through a variety of means, including the Internet and announcements in Department publications and other veterans' publications.".

(d) REPORTS.—Such section, as amended by subsection (c), is further amended by adding at the end the following new subsection:

"(g) Not later than two years after the date of the enactment of the Veterans Benefits Act of 2003, and each year thereafter, the Secretary shall submit to the Committees on Veterans' Affairs of the Senate and House of Representatives a report on the operation of this section. The report shall set forth an evaluation of the vocational training provided under this section for the period involved, and shall include an analysis of the cost-effectiveness of the vocational training provided under this section as well as data on the entered-employment rate of veterans pursuing such vocational training.".

(e) STYLISTIC AMENDMENTS.—Such section is further amended—

(1) by striking "of Veterans Affairs" in subsection (a)(1); and

(2) by striking "of this section" in subsections (a)(2), (b)(1), (b)(4) (both places it appears), (c), (d), and (e).

**SEC. 10. INCREASE IN AMOUNTS FOR CERTAIN ADAPTIVE BENEFITS FOR DISABLED VETERANS.**

(a) INCREASE IN ASSISTANCE AMOUNT FOR SPECIALLY ADAPTED HOUSING.—Section 2102 of title 38, United States Code, is amended—

(1) in the matter preceding paragraph (1) of subsection (a), by striking "$48,000" and inserting "$50,000"; and

(2) in subsection (b)(2), by striking "$9,250" and inserting "$10,000".

(b) INCREASE IN AMOUNT OF ASSISTANCE FOR AUTOMOBILE AND ADAPTIVE EQUIPMENT FOR CERTAIN DISABLED VETERANS.—Section 3902(a) of such title is amended by striking "$9,000" and inserting "$11,000".

(c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) shall apply with respect to assistance furnished on or after the date of the enactment of this Act.

**SEC. 11. PRESUMPTIONS OF SERVICE-CONNECTION RELATING TO DISEASES AND DISABILITIES OF FORMER PRISONERS OF WAR.**

Subsection (b) of section 1112 of title 38, United States Code, is amended to read as follows:

"(b)(1) For the purposes of section 1110 of this title and subject to the provisions of section 1113 of this title, in the case of a veteran who is a former prisoner of war—

"(A) a disease specified in paragraph (2) shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service; and

"(B) if the veteran was detained or interned as a prisoner of war for not less than thirty days, a disease specified in paragraph (3) which became manifest to a degree of 10 percent or more after active military, naval, or air service shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service.

"(2) The diseases specified in this paragraph are the following:

"(A) Psychosis.

"(B) Any of the anxiety states.

"(C) Dysthymic disorder (or depressive neurosis).

"(D) Organic residuals of frostbite, if the Secretary determines that the veteran was interned in climatic conditions consistent with the occurrence of frostbite.

"(E) Post-traumatic osteoarthritis.

"(3) The diseases specified in this paragraph are the following:

"(A) Avitaminosis.

"(B) Beriberi (including beriberi heart disease).

"(C) Chronic dysentery.

"(D) Helminthiasis.

"(E) Malnutrition (including optic atrophy associated with malnutrition).

"(F) Pellagra.

"(G) Any other nutritional deficiency.

"(H) Cirrhosis of the liver.

"(I) Peripheral neuropathy except where directly related to infectious causes.

"(J) Irritable bowel syndrome.

"(K) Peptic ulcer disease.".

**SEC. 12. EXTENSION OF SPINA BIFIDA BENEFITS FOR CHILDREN OF VIETNAM-ERA VETERANS.**

(a) ELIGIBLE CHILDREN.—Subchapter I of chapter 18 of title 38, United States Code, is amended by inserting before section 1802 the following new section:

"**§ 1801. Persons eligible for benefits**

"An individual is an eligible child for purposes of this subchapter if the individual is suffering from spina bifida and is—

"(1) a child as defined in section 1821(1) of this title; or

"(2) the natural child, regardless of age or marital status, of a parent who during the period beginning on October 1 1967, and ending on May 7 1975, performed active military, naval, or air service in the Republic of Korea in the area between the south line of the Demilitarized Zone and a line five miles south of the Civilian Control Line established with respect to the Demilitarized Zone, but only if the individual was conceived after the parent performed such service.".

(b) HEALTH CARE.—Section 1803(a) of such title is amended by striking "a child of a Vietnam veteran who is suffering from spina bifida" and inserting "an eligible child".

(c) VOCATIONAL TRAINING AND REHABILITATION.—Section 1804(a) of such title is amended by striking "a child of a Vietnam veteran who is suffering from spina bifida" and inserting "an eligible child".

(d) MONETARY ALLOWANCE.—Section 1805(a) of such title is amended by striking "any child of a Vietnam veteran" and inserting "any eligible child".

(e) CONFORMING AMENDMENTS.—Chapter 18 of such title is amended as follows:

(1) The heading of the chapter is amended to read as follows:

**"CHAPTER 18—DISABILITY BENEFITS FOR CHILDREN OF VIETNAM VETERANS AND OTHER VETERANS EXPOSED TO HERBICIDE AGENTS".**

(2) The heading of subchapter I is amended to read as follows:

"SUBCHAPTER I—CHILDREN BORN WITH SPINA BIFIDA".

(3) The table of sections at the beginning of the chapter is amended—

(A) by striking the item relating to subchapter I and inserting the following:

"SUBCHAPTER I—CHILDREN BORN WITH SPINA BIFIDA";

and

(B) by inserting before the item relating to section 1802 the following new item:

"1801. Persons eligible for benefits.".

(f) TABLES OF CHAPTERS.—The items relating to chapter 18 in the tables of chapters at the beginning of title 38, United States Code, and at the beginning of part II of such title, are amended to read as follows:

"18. Disability Benefits for Children of Vietnam Veterans and Other Veterans Exposed to Herbicide Agents .......... 1801".

**SEC. 13. PERMANENT AUTHORITY FOR HOUSING LOANS FOR MEMBERS OF THE SELECTED RESERVE.**

Section 3702(a)(2)(E) of title 38, United States Code, is amended by striking "For the period" and all that follows through "each" and inserting "Each".

**SEC. 14. ADJUSTMENT TO HOME LOAN FEES AND UNIFORMITY OF FEES FOR QUALIFYING RESERVE MEMBERS WITH FEES FOR ACTIVE DUTY VETERANS.**

(a) REVISED LOAD FEE TABLE.—Paragraph (2) of section 3729(b) of title 38, United States Code, is amended to read as follows:

"(2) The loan fee table referred to in paragraph (1) is as follows:

"LOAN FEE TABLE

| Type of loan | Veteran | Other obligor |
|---|---|---|
| (A)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed before October 1, 2003) | 2.00 | NA |
| (A)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2003, and before October 1, 2011) | 2.15 | NA |
| (A)(iii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other initial loan described in section 3710(a) other than with 5-down or 10-down (closed on or after October 1, 2011) | 1.40 | NA |
| (B)(i) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed before October 1, 2011) | 3.30 | NA |
| (B)(ii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2011 and before October 1, 2013) | 2.15 | NA |
| (B)(iii) Subsequent loan described in section 3710(a) to purchase or construct a dwelling with 0-down, or any other subsequent loan described in section 3710(a) (closed on or after October 1, 2013) | 1.25 | NA |
| (C)(i) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed before October 1, 2011) | 1.50 | NA |
| (C)(ii) Loan described in section 3710(a) to purchase or construct a dwelling with 5-down (closed on or after October 1, 2011) | 0.75 | NA |
| (D)(i) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed before October 1, 2011) | 1.25 | NA |
| (D)(ii) Initial loan described in section 3710(a) to purchase or construct a dwelling with 10-down (closed on or after October 1, 2011) | 0.50 | NA |
| (E) Interest rate reduction refinancing loan | 0.50 | NA |
| (F) Direct loan under section 3711 | 1.00 | NA |
| (G) Manufactured home loan under section 3712 (other than an interest rate reduction refinancing loan) | 1.00 | NA |
| (H) Loan to Native American veteran under section 3762 (other than an interest rate reduction refinancing loan) | 1.25 | NA |
| (I) Loan assumption under section 3714 | 0.50 | 0.50 |
| (J) Loan under section 3733(a) | 2.25 | 2.25 |
| (K) Hybrid loan under section 3707A | 1.25 | NA". |

(b) CONFORMING AMENDMENTS.—(1) Subparagraph (A) of paragraph (4) of such section is amended to read as follows:

"(A) The term 'veteran' means any veteran eligible for the benefits of this chapter.".

(2) Such paragraph is further amended by striking subparagraph (B) and redesignating subparagraphs (C), (D), (E), (F), (G), (H), and (I) as subparagraphs (B), (C), (D), (E), (F), (G), and (H), respectively.

**SEC. 15. REINSTATEMENT OF MINIMUM REQUIREMENTS FOR SALE OF VENDEE LOANS.**

(a) REINSTATEMENT.—Subsection (a) of section 3733 of title 38, United States Code, is amended by striking paragraph (2).

(b) INCREASE IN MAXIMUM PERCENTAGE.—Paragraph (1) of such subsection is amended—

(1) by striking "65 percent" in the first sentence and inserting "85 percent";

(2) by striking "may be financed" and inserting "shall be financed"; and

(3) by striking the second sentence.

(c) STYLISTIC AMENDMENTS.—Such section is further amended—

(1) by striking "of this subsection" after—

(A) "paragraph (1)" in subsections (a)(4)(A), (a)(5), (a)(6), and (c)(2); and

(B) "paragraph (5)" in subsection (a)(4)(B)(i); and

(2) by striking "of this paragraph" each place it appears in subsection (a)(4).

**SEC. 16. RATE OF PAYMENT OF BENEFITS FOR CERTAIN FILIPINO VETERANS AND THEIR SURVIVORS RESIDING IN THE UNITED STATES.**

(a) RATE OF PAYMENT.—Section 107 of title 38, United States Code, is amended—

(1) in the second sentence of subsection (b), by striking "Payments" and inserting "Except as provided in subsection (c), payments"; and

(2) in subsection (c)—

(A) by inserting "and subchapter II of chapter 13 (except section 1312(a)) of this title" after "chapter 11 of this title";

(B) by striking "in subsection (a)" and inserting "in subsection (a) or (b)"; and

(C) by striking "of subsection (a)" and inserting "of the applicable subsection".

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall apply to benefits paid for months beginning after the date of the enactment of this Act.

**SEC. 17. BURIAL BENEFITS FOR NEW PHILIPPINE SCOUTS RESIDING IN THE UNITED STATES.**

(a) BENEFIT ELIGIBILITY.—Section 107 of title 38, United States Code, as amended by section 16, is further amended—

(1) in subsection (b)(2)—

(A) by striking "and" and inserting a comma; and

(B) by inserting ", 23, and 24 (to the extent provided for in section 2402(8))" after "(except section 1312(a))";

(2) in the second sentence of subsection (b), as amended by section 16(a)(1), by inserting "or (d)" after "subsection (c)";

(3) in subsection (d)(1), by inserting "or (b), as otherwise applicable," after "subsection (a)"; and

(4) in subsection (d)(2), by inserting "or whose service is described in subsection (b) and who dies after the date of the enactment of the Veterans Benefits Act of 2003," after "November 1, 2000,".

(b) NATIONAL CEMETERY INTERMENT.—Section 2402(8) of such title is amended by striking "section 107(a)" and inserting "subsection (a) or (b) of section 107".

(c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) shall apply with respect to deaths occurring after the date of the enactment of this Act.

**SEC. 18. EXTENSION OF AUTHORITY TO MAINTAIN REGIONAL OFFICE IN THE REPUBLIC OF THE PHILIPPINES.**

Section 315(b) of title 38, United States Code, is amended by striking "December 31, 2003" and inserting "December 31, 2009".

**SEC. 19. OUTSTATIONING OF TRANSITION ASSISTANCE PROGRAM PERSONNEL.**

(a) IN GENERAL.—(1) Chapter 41 of title 38, United States Code, is amended by adding at the end the following new section:

**"§ 4113. Outstationing of Transition Assistance Program personnel**

"(a) STATIONING OF TAP PERSONNEL AT OVERSEAS MILITARY INSTALLATIONS.—(1) The Secretary—

"(A) shall station employees of the Veterans' Employment and Training Service, or contractors under subsection (c), at each veterans assistance office described in paragraph (2); and

"(B) may station such employees or contractors at such other military installations outside the United States as the Secretary, after consultation with the Secretary of Defense, determines to be appropriate or desirable to carry out the purposes of this chapter.

"(2) Veterans assistance offices referred to in paragraph (1)(A) are those offices that are established by the Secretary of Veterans Affairs on military installations pursuant to the second sentence of section 7723(a) of this title.

"(b) FUNCTIONS.—Employees (or contractors) stationed at military installations pursuant to subsection (a) shall provide, in person, counseling, assistance in identifying employment and training opportunities, help in obtaining such employment and training, and other related information and services to members of the Armed Forces who are being separated from active duty, and the spouses of such members, under the Transition Assistance Program and Disabled Transition Assistance Program established in section 1144 of title 10.

"(c) AUTHORITY TO CONTRACT WITH PRIVATE ENTITIES.—The Secretary, consistent with such section 1144, may enter into contracts with public or private entities to provide, in person, some or all of the counseling, assistance, information and services under the Transition Assistance Program required under subsection (a).".

(2) The table of sections at the beginning of such chapter is amended by adding at the end the following new item:

"4113. Outstationing of Transition Assistance Program personnel.".

(b) DEADLINE FOR IMPLEMENTATION.—Not later than the date that is 90 days after the date of the enactment of this Act, the Secretary of Labor shall implement section 4113 of title 38, United States Code, as added by subsection (a), and shall have employees of the Veterans' Employment and Training Service, or contractors, to carry out that section at the military installations involved by such date.

**SEC. 20. FORFEITURE OF BENEFITS FOR SUBVERSIVE ACTIVITIES.**

(a) ADDITION OF CERTAIN OFFENSES.—Paragraph (2) of section 6105(b) of title 38, United States Code, is amended—

(1) by inserting "175, 229," after "sections"; and

(2) by inserting "831, 1091, 2332a, 2332b," after "798,".

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall apply to claims filed after the date of the enactment of this Act.

**SEC. 21. TECHNICAL AMENDMENTS RELATED TO JOBS FOR VETERANS ACT.**

(a) JOB TRAINING AND PLACEMENT FUNCTIONS OF THE DEPARTMENT OF LABOR.—(1) Subsection (c)(2)(B)(ii) of section 4102A of such title is amended by striking "October 1, 2002" and inserting "October 1, 2003".

(2) The amendment made by paragraph (1) shall take effect as if included in the enactment of section 4(a) of the Jobs for Veterans Act (Public Law 107-288; 116 Stat. 2038).

(b) OTHER TECHNICAL AMENDMENTS.—(1) Such subsection is further amended by striking ", as amended by the Jobs for Veterans Act".

(2) Subsection (f)(1) of such section is amended by striking "6 months after the date of the enactment of this section," and inserting "May 7, 2003,".

**SEC. 22. TECHNICAL AND CONFORMING RELATING TO ESTABLISHMENT OF SOCIAL SECURITY ADMINISTRATION AS AN INDEPENDENT AGENCY.**

Title 38, United States Code, is amended as follows:

(1) Section 1322 is amended—

(A) in subsection (a), by striking "Secretary of Health and Human Services" and all that follows through the period and inserting "Commissioner of Social Security, and shall be certified by the Commissioner to the Secretary upon request of the Secretary."; and

(B) in subsection (b)—

(i) by striking "Secretary of Health and Human Services" in the first sentence and inserting "Commissioner of Social Security";

(ii) by striking "the two Secretaries" and inserting "the Secretary and the Commissioner"; and

(iii) by striking "Secretary of Health and Human Services" in the second sentence and inserting "Commissioner".

(2) Section 5101(a) is amended by striking "Secretary of Health and Human Services" and inserting "Commissioner of Social Security".

(3) Section 5317 is amended by striking "Secretary of Health and Human Services" in subsections (a), (b), and (g) and inserting "Commissioner of Social Security".

(4)(A) Section 5318 is amended—

(i) in subsection (a), by striking "Department of Health and Human Services" and inserting "Social Security Administration"; and

(ii) in subsection (b)—

(I) by striking "Department of Health and Human Services" and inserting "Social Security Administration";

(II) by striking "Secretary of Health and Human Services" the first place it appears and inserting "Commissioner of Social Security";

(III) by striking "Secretary of Health and Human Services" the second place it appears and inserting "Commissioner"; and

(IV) by striking "such Secretaries" and inserting "the Secretary and the Commissioner".

(B)(i) The heading of such section is amended to read as follows:

**"§ 5318. Review of Social Security Administration death information".**

(ii) The item relating to that section in the table of sections at the beginning at chapter 53 is amended to read as follows:

"5318. Review of Social Security Administration death information.".

The SPEAKER pro tempore. Pursuant to the rule, the gentleman from New Jersey (Mr. SMITH) and the gentleman from Illinois (Mr. EVANS) each will control 20 minutes.

The Chair recognizes the gentleman from New Jersey (Mr. SMITH).

Mr. SMITH of New Jersey. Mr. Speaker, I yield myself such time as I may consume.

Mr. Speaker, H.R. 2297 as amended, the Veterans Benefit Act of 2003, contains 20 substantive provisions and is a diverse and comprehensive measure with very broad bipartisan support.

☐ 1215

This bill will affect veterans and survivors alike.

Among the education provisions, the bill provides for an expansion of the Montgomery GI Bill, the college program, by authorizing educational assistance for on-job training in certain 6-month self-employment training programs. It provides an extension of the delimiting date for survivors' and dependents' education benefits when the eligible individual is involuntarily ordered to full-time National Guard duty. It provides for an extension of the VA's Veterans' Advisory Committee on education through December 31 of 2009 and for the repeal of the VA's obsolete education loan program authorization. This program has not made a loan in the past several years because of other better options in the public and private sector.

The bill would also provide that the remarriage of the surviving spouse of a veteran after attaining the age of 55 would not result in the termination of Dependency and Indemnity Compensation, or the DIC program. It allows a remarried surviving spouse to attain eligibility for burial in a national cemetery based on his or her marriage to a veteran. It makes permanent the State Cemetery Grants Program. It reinstates a VA pilot program to provide vocational training to newly eligible VA nonservice-connected pension recipients.

It increases, Mr. Speaker, the specially adapted automobile grant from $9,000 to $11,000 and increases the specially adapted housing grant from $48,000 to $50,000 for the most severely disabled veterans and from $9,350 to $10,000 for less severely disabled veterans.

The bill also adds cirrhosis of the liver to the list of presumed service-connected disabilities for former prisoners of war.

It eliminates the requirement that a POW be held for 30 days or more to qualify for presumptions of service-connection for certain disabilities: psychosis and any of the anxiety states, organic residuals of frostbite, and post-traumatic osteoarthritis.

It expands benefits eligibility to those children with spina bifida who were born to Vietnam-era veterans who served in an area of Korea near the demilitarized zone between October 1 of 1967 and May 7 of 1975.

Out of concern about spina bifida, Mr. Speaker, I would note parenthetically that the gentleman from Michigan (Mr. STUPAK) and I formed the Congressional Spina Bifida Caucus, which we now co-chair. This caucus is dedicated to improving the health care and overall quality of life for the some 70,000 Americans and their families living with spina bifida, and in a very short time I would again note to my colleagues we have about 20 Members who have joined. And just a little push here in promotion, if they would like to join that spina bifida caucus, we would very much like to have them as part of it.

Let me continue with the bill.

H.R. 2297, as amended, would also make permanent the VA home loan program for members of the Selected Reserve. It reinstates the Department of Veterans Affairs' vendee loan program and provides the full amount of compensation and Dependency and Indemnity Compensation for eligible members of the New Philippine Scouts, who served just after World War II, who are legal residents of the United States. It also provides the full amount of DIC for service in the organized military forces of the Commonwealth of the Philippines, including organized guerrilla units, to individuals who are legal residents of the United States. It extends eligibility for burial in a national cemetery to New Philippine Scouts, as well as eligibility for burial benefits to those who lawfully reside in the United States. It extends the authority of the Secretary of Veterans Affairs to maintain a regional office in Manila, Philippines, through December 31 also of 2009.

It mandates that the Department of Labor place staff in veterans' assistance offices at oversees military installations 90 days after the date of enactment, and it expands the list of serious Federal criminal offenses a conviction of which would result in a bar to all VA benefits.

As I mentioned, Mr. Speaker, the bill addresses the needs for former prisoners of war. Current law requires former POWs to have been confined for at least 30 days before they qualify for a presumption of service-connection for certain disabilities. Prisoners of war in more recent conflicts, however, have been interred for shorter periods of time. All the POWs from Operation Iraqi Freedom were confined for less than 30 days, for example.

Because physical and psychological trauma can indeed occur within minutes of capture, let alone days or weeks, H.R. 2297, as amended, would provide a presumption of service-connection disability without regard to length of confinement for certain psychiatric disabilities as well as cold-weather-related injuries and traumatic osteoarthritis.

The bill would also, as I said, add a number of other aspects, and I hopefully have outlined those adequately to the committee.

Let me just say, finally, Mr. Speaker, I really want to congratulate the gentleman from South Carolina (Mr. BROWN), the subcommittee chair of our Subcommittee on Benefits, and the gentleman from Maine (Mr. MICHAUD), his ranking member, for their outstanding work on this legislation, for doing the hard work, holding the hearings, working out all the different disparate provisions, and then working to bring it together in a bipartisan way so that we can present to this body a bill that we can all be proud of that will tangibly advance the ball when it comes to our veterans. I want to thank them very much for their good hard work and also the gentleman from Illinois (Mr. EVANS), my good friend and colleague, on whom we have partnered for years now as chairman and ranking member, working on bills to benefit our veterans both on the health care area and benefits area. I want to thank him as well.

Mr. Speaker, I reserve the balance of my time.

Mr. MICHAUD. Mr. Speaker, I yield myself such time as I may consume.

Mr. Speaker, I rise today in strong support of H.R. 2297, the Veterans Benefits Act of 2003. I would like to thank the gentleman from New Jersey (Chairman SMITH) and the gentleman from Illinois (Mr. EVANS), ranking member, for their leadership on the full committee on this important measure.

I would also like to thank personally the gentleman from South Carolina (Chairman BROWN) for his leadership and professionalism on our subcommittee as well as staff on both sides of the aisle who have worked so hard during this session.

The Veterans Benefits Package of 2003 includes provisions drawn from many bills considered by the Subcommittee on Benefits this year. I am especially pleased that this legislation includes bills introduced by Members of both sides of the aisle.

Our Nation's service members and veterans have earned, and their family deserve, all the benefits provided under H.R. 2297. Indeed, they deserve so much more as well. I am pleased that this package takes a strong step in the right direction.

Mr. Speaker, I am proud to sponsor many of the measures that were incorporated in H.R. 2297, including provisions aimed to equalize home loan benefits for members of the Guard and Reserve, improve veterans' education benefits, enhance self-employment opportunities, and expand employment counseling and job search assistance for service members returning to civilian life after separating from military installations overseas.

H.R. 2297 provides for more equitable and rational treatment of surviving spouses and Filipino World War II veterans, which I fully support. It allows former prisoners of war to qualify for certain presumptions of service-connection and adds cirrhosis of the liver to the disease considered presumptively disabling for POWs. It also allows the Gold Star Wives to remarry after age 55 without losing the Dependency and Indemnity Compensation benefits which they currently receive.

This measure is long overdue.

Mr. Speaker, the provisions in this package will benefit the service members and veterans from my State of Maine and all around the country. It will also help others. I fully support H.R. 2297 and urge my colleagues to do the same.

Mr. Speaker, I reserve the balance of my time.

Mr. SMITH of New Jersey. Mr. Speaker, I yield such time as he may consume to the gentleman from South Carolina (Mr. BROWN), our distinguished chairman of the Subcommittee on Benefits, and again I want to thank him for his good work on this bill.

Mr. BROWN of South Carolina. Mr. Speaker, the chairman has done a great job in explaining the bill under consideration. As chairman of the Subcommittee on Benefits, I would like to take this opportunity to thank a few members of the House Committee on Veterans' Affairs for their hard work.

We would not be considering this bill today without the bipartisan spirit of the Subcommittee on Benefits. The gentleman from Maine (Mr. MICHAUD), ranking member, and I have established a strong working relationship, a relationship built on what is best for our service members, veterans, and their families. Likewise, we enjoy strong participation from the subcommittee members, and I would like to thank them for their support and dedication.

We are very fortunate to have the gentleman from New Jersey's (Chairman SMITH) vision and leadership at the full committee level. As a member of the committee for more than 20 years, he clearly understands how important these benefit programs are to deserving veterans.

Likewise, the gentleman from Illinois (Mr. EVANS) has been a strong advocate for our military throughout his congressional career.

I am pleased to serve on this committee, which brings to the floor, year in and year out, such quality legislation.

Lastly, Mr. Speaker, I want to commend the gentleman from Florida (Mr.

BILIRAKIS) for his dedication to the surviving spouses of our active-duty service members and veterans. I have been a strong supporter of allowing these widows and widowers to marry and still retain their dependency and indemnity compensation. I am pleased this subcommittee was able to identify the offsets necessary to include this provision in H.R. 2297, as amended.

As the chairman indicated, the gentleman from Florida (Mr. BILIRAKIS) has introduced his bill to help widows in seven Congresses. I appreciate his patience with the process. As my colleagues may remember, the House passed this provision in legislation in the 107th Congress. I intend to work with my colleagues in the other body to ensure that this provision is retained during negotiations on the final version of the benefits package for the first session of the 108th Congress. Many survivors in the First District of South Carolina will benefit, as well as military survivors in all 50 States.

H.R. 2297, as amended, contains more than 20 provisions which would enhance, improve, or extend benefits to our most deserving veterans, those who put their lives on the line daily defending our homeland. I am proud to serve on the authorizing committee overseeing these benefits, and I urge my colleagues to support this bill.

Mr. MICHAUD. Mr. Speaker, I yield 3 minutes to the gentleman from Illinois (Mr. EVANS), ranking member of the full committee, a gentleman who has fought for veterans issues as long as he has been in Congress.

Mr. EVANS. Mr. Speaker, I thank the gentleman for yielding me this time and for his fine work on the Subcommittee on Benefits package this year.

Mr. Speaker, I rise in strong support of H.R. 2297, a legislative package encompassing a number of important measures that help our veterans.

I would like to take the time to recognize the gentleman from New Jersey (Mr. SMITH), chairman of the full committee, who has done a great job working hand in hand together. As we get back in session, we have got a few things to cover, and I look forward to working with him on that.

I want to thank the gentleman from South Carolina (Mr. BROWN), Mr. Speaker, for his hard work in bringing this important legislation to the floor. This has been truly a bipartisan effort.

I am very proud to have been an original cosponsor of this package. I am pleased that this bill incorporates a number of measures from bills I have introduced. I am also pleased that it has included provisions to provide long-term, overdue benefits to our Gold Star Wives and Filippino veterans.

Mr. Speaker, H.R. 2297 is a good bill, and I urge all Members to show their support for our troops and veterans by voting for it.

Mr. SMITH of New Jersey. Mr. Speaker, I yield such time as he may consume to the gentleman from Florida (Mr. BILIRAKIS) who is the vice chairman of the committee and has been, and as the gentleman from South Carolina (Mr. BROWN) pointed out, seven times he has now tried to get the Gold Star Wives' compensation not lost if they were to remarry, and this time we have it in the bill. Last year when we sent it over to the Senate, we lost it, but this time I think the seventh time is the charm, and I thank him for his leadership.

Mr. BILIRAKIS. Mr. Speaker, I thank the gentleman for yielding me this time.

I, too, rise in strong support of the bill. It addresses, in addition to many other things that it does, an issue that I have been working on for a number of years, and I thank my colleagues sincerely for their recognition of those efforts.

Dependency and Indemnity Compensation, DIC, as others have already said, is a benefit accorded to the surviving dependents of those of the Armed Forces who died while on active duty or of a service-connected cause. Who would argue that this benefit is undeserved? I have always felt that their sacrifices even exceed, even exceed, those of the service member.

DIC is the only Federal annuity program that does not allow a widow who is receiving compensation to remarry at an older age and retain her annuity. Earlier this year I reintroduced legislation which provides that the remarriage of the surviving spouse of a veteran after age 55 shall not result in termination of Dependency and Indemnity Compensation. I have heard, as I am sure most of us, from military widows from across the country who have found someone they would like to spend the rest of their lives with but cannot afford to do so because of the current law. They have expressed deep frustrations about not being able to remarry. Many of these women lost their husbands at a very young age and have been alone for a long time. They have finally found someone to share their lives with, but they are afraid to remarry because they will lose their DIC benefits.

I think it is a wonderful thing if an older person finds companionship, falls in love, and decides to marry. I do not think we should be discouraging such marriages by making them financially burdensome.

□ 1230

For those remarrying after the age of 55, it is often the case that both partners are living on fixed incomes. The prospect of one partner losing financial benefits as a result of the marriage is a real disincentive. In fact, current law makes it virtually impossible for some couples to marry after age 55 because they simply cannot afford to do so and continue to support themselves.

Mr. Speaker, I would like so very much to thank the gentleman from New Jersey (Chairman SMITH); the ranking member, the gentleman from Illinois (Mr. EVANS); the Subcommittee on Benefits chairman, the gentleman from South Carolina (Mr. BROWN); and the subcommittee ranking member, the gentleman from Maine (Mr. MICHAUD) for working with me to include, finally, DIC remarriage provisions in this legislation, H.R. 2297.

I urge my colleagues to support the bill before us today.

Mr. MICHAUD. Mr. Speaker, I yield 3 minutes to the gentleman from Illinois (Mr. DAVIS).

Mr. DAVIS of Illinois. Mr. Chairman, I want to thank the gentleman from Maine (Mr. MICHAUD) for yielding me time. I also want to commend the chairman of the Committee on Veterans' Affairs, the gentleman from New Jersey (Chairman SMITH), and the ranking member, my good friend and neighbor, the gentleman from Illinois (Mr. EVANS), for the outstanding leadership that they continue to provide as we try and make sure that our veterans receive the benefits that they are indeed due.

I represent a district that has a number of very core veterans' facilities. I have three Veterans' Administration hospitals in my district, as well as a residence. Unfortunately, one is slated to be closed. But we have a large number of veterans who are always seeking services.

Particularly, I want to mention the addition of cirrhosis of the liver to the list of service-connected disabilities, which I think is so important, and also the provision of services for the Filipino scouts. I have a very active Filipino community and group of individuals who lobby me consistently about the role that the Filipinos played in giving assistance to this country. They deserve to, in fact, be included, and I am just simply delighted to see those additions.

So, again, I want to commend the Committee on Veterans' Affairs under the leadership of Chairman SMITH and the ranking member, the gentleman from Illinois (Mr. EVANS), for the services that they provide to all of us as we provide benefits to our veterans, who have given so much to our country.

Mr. MICHAUD. Mr. Speaker, I have no further requests for time, and I yield back the balance of my time.

Mr. SMITH of New Jersey. Mr. Speaker, before yielding back, I do want to thank and commend the hard work of committee staff, Devon Seibert, Paige McManus, Darryl Kehrer, Patrick Ryan, Kingston Smith, Jim Holley, Mary Ellen McCarthy, Geoffrey Collver, Leah Booth and so many others who have made this legislation and all the bills that we work cooperatively on with my friend and colleague, the gentleman from Illinois (Mr. EVANS), to bring to the floor what we think are quality, well-vetted, very thoughtful pieces of legislation that make the difference in the lives of veterans and their families.

This is another example of that kind of cooperation. This is the way this

body should work, and it is so good to see us again working hand-in-glove in this partnership. Again, I want to thank the gentleman from South Carolina (Mr. BROWN) and the gentleman from Maine (Mr. MICHAUD) for their good work as chairman and ranking member of the subcommittee. I urge all Members to support this bill.

Mrs. WILSON of New Mexico. Mr. Speaker, I rise today in support of H.R. 2297. Within the bill there is a provision which is very special to me personally.

Millions of men and women have served honorably in the United States military. One of the promises we make to veterans is that they may be laid to rest in a national cemetery, if they so choose, and that their spouse can be buried with them.

Today there are 26 million living United States veterans. Behind each of these veterans is a husband or wife who has carried a greater burden than most of us ask our husbands or wives to carry. These spouses are just as important to our Nation as the veterans to whom they are, and were, married. But there is a glitch in the law which denies them their right, as the surviving spouse of a veteran, to be buried in a national cemetery with their husband or wife, in some circumstances.

The law also says that if a veteran's spouse dies and he or she remarries, both spouses are eligible for burial in a national cemetery. But, if a veteran dies and the spouse remarries a non-veteran, the spouse can't be buried with their first spouse in a national cemetery. It is this problem that this bill, H.R. 2297, seeks to remedy.

Kay Brown is a constituent of mine. She told me the story of her mother, Francis Gilkerson.

E.T. Gilkerson met and married Kay Brown's mother, Francis, some 66 years ago. It was during World War II and E.T. signed up as an enlisted volunteer for the Air Force. He was an X-Ray technician stationed in Fresno, California, for three years. After he got out of the service, he and Francis were married for 56 years until he died at the age of 84 in 1993.

Some years went by and Francis met an 80-year-old fellow who was also a widower and a neighbor in the mobile home park where they both lived. The two of them were both very lonely and they found comfort and friendship in each others company. Francis was of a generation who would never consider living with somebody unless they were married. She was very concerned that she should be buried with her first husband and did not want to get married for a second time if that right was to be taken away from her. So Kay contacted the local VA on her mother's behalf to check. According to Kay, the VA asked her if her mother and father were still married at the time of his death. The answer was "yes," and the VA said that it wouldn't be a problem for Kay's mom to be buried at the national cemetery in Santa Fe.

Francis married her second husband and lived very happily until her death in September of 2000. When Kay Brown was at the mortuary making arrangements for her mothers' cremation, the mortician asked her where she was to be buried. Kay said that she was to be buried at the national cemetery in Santa Fe with her husband of 56 years. The mortician shook his head and said that wasn't possible because her second husband was not a veteran.

When Kay called the VA again after her mother's death, they told her that the law prohibited her mother from being buried with her father because she had remarried a non-veteran who was living when Kay's mom died.

The VA gave Kay the wrong information when she first asked, and their error has caused heartache for Kay and her family. But the prohibition is in the law.

The ashes of Kay's mother, Francis, are still in a closet at Kay's house. But there are thousands of other widows and widowers in the same situation. The law gives the surviving veteran's spouse (many of them elderly women) a Hobson's choice: live alone in order to keep your burial right, or give up your right to be buried with your first spouse, to have companionship in your sunset years.

H.R. 2297 would allow surviving spouses to remarry and still be buried in a national cemetery with their first spouse if they choose.

Mr. FILNER. Mr. Speaker, I rise today in support of H.R. 2297, the Veterans Benefits Act of 2003. This bill contains many improvements in the benefits for our Nation's veterans and for their survivors and dependents.

One important provision of this legislation that I would like to highlight will positively affect many Filipino veterans of World War II who are living in the United States, as well as their survivors. Many of my colleagues know that in 1946, Congress unfairly rescinded the benefits of many Filipino veterans and cut in half the benefits of many others—those who were service-connected disabled veterans. This limitation on compensation benefits was intended to reflect the difference in the cost of living between the Philippines and the United States.

But in the 60 years since World War II, a large number of Filipino veterans and their dependents have immigrated to our country. As citizens or permanent residents, these disabled Filipino veterans face living expenses comparable to those of United States veterans. Limiting their benefits has caused hardships for these disabled veterans and for their survivors who are receiving DIC (disability indemnity compensation). To fix this inequity, this bill eliminates the "50 cents on the dollar amount" that they are currently receiving and restores full payment of their compensation benefits.

In addition, it extends burial benefits in national cemeteries for the Filipino World War II veterans living in the United States who, to this date, did not have these benefits—namely, the New Philippine Scouts. And the bill provides other in-kind and monetary burial benefits to these deserving veterans.

I am elated that, with this legislation, my colleagues are addressing the 60-year-long injustice to Filipino soldiers who lived in a territory of the United States and fought side-by-side with our soldiers from the mainland during World War II. Without their vital participation in this war, the outcome might have been entirely different!

Combined with H.R. 2357, which has passed the House and which improves access to VA medical facilities for Filipino World War II veterans who live in the United States, we are clearly making progress. I sincerely thank the Chairman of the House Veterans Affairs Committee (Mr. SMITH) and the Chairmen and Ranking Members of the House VA Benefits and Health Subcommittees (Mr. SIMMONS, Mr. BROWN, Mr. RODRIGUEZ, and Mr. MICHAUD) for their assistance in putting these bills forward. And a special thank you to my colleague, VA Committee Ranking Member LANE EVANS who, with me, at a Veterans Town Hall Meeting in San Diego County ten years ago, heard first-hand the moving story of the injustices affecting Filipino World War II veterans, voted into law by the 1946 Congress. We heard this story from one veteran who had survived the Bataan Death March. From that moment, he has been my ally in this fight to restore justice and equity. I thank him for his unfailing support.

My colleagues, please join me in voting for H.R. 2297.

Ms. CORRINE BROWN of Florida. Mr. Speaker, H.R. 2297, the Veterans Benefits Act of 2003, would expand the Montgomery GI Bill program to provide veterans considering self-employment with improved access to training benefits, including training related to franchises. Allowing veterans to use their MGIB benefit in this manner gives the flexibility necessary so that veterans can pursue an educational path that best suits their talents and interests.

Additionally, this legislation would allow a surviving spouse of a veteran to be eligible for burial in a VA national cemetery regardless of the status of a subsequent marriage. In many cases, the veteran's children and grandchildren, and often the most recent spouse of the veteran, support this burial eligibility.

This legislation also makes important strides in including more disabilities as service-connected. The VA Advisory Committee on Former Prisoners of War recommended that the original 30-day requirement for service-connection be eliminated for all psychiatric conditions, cold weather related injuries and post traumatic arthritis. No durational criteria exist for post-traumatic stress syndrome or frostbite. PTSD is common in former prisoners of war. And frostbite can occur within hours if the temperature is low enough. Post-traumatic arthritis is a condition that comes from trauma—which can occur in seconds. Removing the 30-day requirement is the right thing to do in order to make these disabilities presumptive.

H.R. 2297 also expands benefits eligibility to children with spina bifida who were born to veterans who served in an area of Korea near the demilitarized zone between October 1, 1967 and May 7, 1975. The Department of Defense estimates that approximately 12,056 service members were potentially exposed to Agent Orange and other herbicides while serving in the Republic of Korea between 1968 and 1969. This legislation is similar to other legislation that covers the children of members of the Armed Forces that serve in Vietnam.

This legislation also provides for uniformity of home loan guaranty fees between reserve and active duty members of the Armed Forces. Reservists have traditionally been paying a funding fee that is 75 percent higher than active duty members, although reservists have a lower foreclosure rate than other loan guaranty beneficiaries.

H.R. 2297 includes many other benefits that will help us to meet our veterans' needs. This is a step in the right direction. However, time and time again, our veterans' needs are being ignored.

Not only do America's veterans face issues with concurrent receipt, but they also face long waiting periods to see a VA doctor and prescription drug copayments. Also, VA still

needs $1.8 billion to bring the fiscal year 2004 appropriation to the level set forth by the Budget Resolution. Where are our priorities?

On average, 14,000 veterans have been waiting more than 15 months for their disability claims to be finalized. And 200,000 veterans wait for six months or more for an appointment at VA hospitals. This shabby treatment of our veterans is intolerable. If we can come up with an $87 billion supplemental appropriation for the war in Iraq, in addition to the $63 billion already provided by Congress, then surely we can give VA the $1.8 billion that is necessary to minimally provide for our veterans. We should be ashamed of ourselves.

At this time, more than every, we need to show our veterans that we appreciate them. We first need to pass H.R. 2297, the Veterans Benefits Act of 2003; then we need to give VA the $1.8 billion it still needs to bring the fiscal year 2004 appropriation to the level set forth by the Budget Resolution. Our veterans should not have to come begging at our doors.

Mrs. JO ANN DAVIS of Virginia. Mr. Speaker, I rise today to state my support of H.R. 2297. Coming from the First District of Virginia, where roughly 100,000 military veterans live, it goes without saying that this legislation is of enormous importance. For that reason, I want to commend Chairman CHRIS SMITH, Ranking Member LANE EVANS, and their hard-working colleagues and staff on the House Veterans Affairs Committee for getting this bill to us on the floor today. I would also like to share some observations about a few aspects of the bill.

I am pleased that H.R. 2297 restores the Dependency and Indemnity Compensation (DIC) benefit to those who wish to remarry after 55 years of age. As many of my constituents know, DIC is a monthly benefit paid to surviving spouses of uniformed service members who die either in the line of duty or from a service-connected disability. Until this bill reaches the President for enactment, eligible survivors who remarry after 55 will continue to lose this benefit.

I am also pleased that H.R. 2297 restores some equity in education benefits for those National Guard members who are eligible for Title 38 survivors and dependents education benefits, bringing them in line with their Reserve counterparts. Presently, only Title 38-eligible Reservists, who have been activated post-9/11, have the end date of their eligibility extended by a period equal to the length of the call-up period plus 4 months. H.R. 2297 offers the same extension to eligible members of the Guard.

Finally, I want to commend the committee for expanding Montgomery GI Bill education benefits for self-employment training for veterans and disabled veterans. H.R. 2297 would authorize educational assistance benefits for on-job training of less than six months in specified self-employment training programs. Under the Veterans Entrepreneurship and Small Business Development Act (Public Law 106–50), Federal agencies are required to support self-employment for veterans directly and through partnerships with the private sector. H.R. 2297 would improve access to related training benefits.

In the present atmosphere, in which many members are having the sincerity of their commitment to fairness for veterans questioned, it is reassuring to see that dedicated people like my colleagues, Chairman SMITH and Ranking Member EVANS, are bringing their efforts to bear on behalf of veterans in a way that should clearly have a positive impact. I now look forward to the Senate acting on this legislation to expedite its passage.

Ms. BORDALLO. Mr. Speaker, I rise today in support of H.R. 2297, a bill that will significantly improve the quality of benefits offered to Guam's veterans.

In addition to offering enhanced education, disability and home loan benefits to veterans and their families, H.R. recognizes the efforts of veterans of the Philippine Commonwealth Army or new Philippine Scouts by ensuring their right to be buried at Arlington National Cemetery. I am pleased that H.R. 2297 will honor these brave soldiers whose contributions helped secure victory in the Pacific.

Mr. Speaker, it is important that we demonstrate to our men and women in uniform our nation's continued commitment to members of the armed services, past, present and future. I am committed to improve the conditions of veterans in Guam. They need access to affordable housing and vocational training. Disabled veterans need assistance that recognizes the struggle of daily life they must endure for having served their country.

I commend Chairman SMITH and Ranking Member EVANS for their leadership on this important legislation that will reiterate our nation's commitment to veterans. I look forward to reporting to the people of Guam that this legislation has become law and that we have taken another step in honoring our commitment to veterans.

Mr. REYES, Mr. Speaker, I rise today in support of H.R. 2297, the Veterans Benefits Act of 2003. This bill will provide an overdue expansion of several benefits already available to many veterans.

Mr. Speaker I have long been an advocate for expansion of benefits to those veterans who suffered as a result of environmental exposures during military service. Because we now have the acknowledgment from the Department of Defense that Agent Orange and other similar herbicides were used near the Korean Demilitarized Zone (DMZ) in the late 1960's, this bill will allow the children of veterans who were exposed to herbicides in Korea to receive the same benefits from the Department of Veterans' Affairs (VA) as those provided for children whose parents were exposed in Vietnam.

As you know, the members of the 507th Maintenance Company that were recently interned as prisoners of war in Iraq hailed from the district that I represent. This situation impacted our entire community. I am proud to say that as a member of the House Veterans Affairs Committee, I pushed for the removal of the 30-day internment requirement for former prisoners of war (POWs) with certain presumptive service-connection disabilities. These disabilities suffered by these POWs may have occurred within minutes or hours of their internment. I am glad that this issue will be addressed and included in this legislation. Mr. Speaker, this is merely a small recognition of former POWs who deserve more that what we are providing for them.

Mr. Speaker, I would like to thank the Chairman and sponsor of this bill, Mr. CHRIS SMITH, as well as Ranking Member LANE EVANS for working with me and for the rapid consideration of this important legislation. I strongly urge my colleagues to join me in support of passage of this bill.

Mr. SMITH of New Jersey. Mr. Speaker, I yield back the balance of my time.

The SPEAKER pro tempore (Mr. CULBERSON). The question is on the motion offered by the gentleman from New Jersey (Mr. SMITH) that the House suspend the rules and pass the bill, H.R. 2297, as amended.

The question was taken.

The SPEAKER pro tempore. In the opinion of the Chair, two-thirds of those present have voted in the affirmative.

Mr. SMITH of New Jersey. Mr. Speaker, on that I demand the yeas and nays.

The yeas and nays were ordered.

The SPEAKER pro tempore. Pursuant to clause 8 of rule XX and the Chair's prior announcement, further proceedings on this motion will be postponed.

## SUPPORTING ERECTION OF NATIONAL RAILROAD HALL OF FAME

Mr. PORTER. Mr. Speaker, I move to suspend the rules and agree to the resolution (H. Res. 342) supporting the National Railroad Hall of Fame, Inc., of Galesburg, Illinois, in its endeavor to erect a monument known as the National Railroad Hall of Fame.

The Clerk read as follows:

H. RES. 342

Whereas Galesburg, Illinois, has been linked to the history of railroading since 1849 when the Peoria and Oquawka Railroad was organized;

Whereas the citizens of Galesburg supported a railroad to Chicago which was chartered as the Central Military Tract Railroad in 1851;

Whereas upon completion of the Central Military Tract Railroad, the Northern Cross Railroad joined the Central Military Tract Railroad at Galesburg;

Whereas in 1886 Galesburg secured the Atchison, Topeka, and Santa Fe Railway and became one of the few places in the world served by 2 major railroads;

Whereas the National Railroad Hall of Fame, Inc., has been established in Galesburg and chartered under the laws of the State of Illinois as a not-for-profit corporation;

Whereas the objectives of the National Railroad Hall of Fame, Inc., include (1) perpetuating the memory of leaders and innovators in the railroad industry, (2) fostering, promoting, and encouraging a better understanding of the origins and growth of railroads, especially in the United States, and (3) establishing and maintaining a library and collection of documents, reports, and other items of value to contribute to the education of all persons interested in railroading; and

Whereas the National Railroad Hall of Fame, Inc., is planning to erect a monument known as the National Railroad Hall of Fame to honor the men and women who actively participated in the founding and development of the railroad industry in the United States: Now, therefore, be it

*Resolved*, That the House of Representatives supports the National Railroad Hall of Fame, Inc., of Galesburg, Illinois, in its endeavor to erect a monument known as the National Railroad Hall of Fame.