# Exhibit 4

**CONGRESSIONAL BUDGET OFFICE**
**COST ESTIMATE**

April 19, 2002

# H.R. 1108

## A bill to amend title 38, United States Code, to provide that remarriage of the surviving spouse of a veteran after age 55 shall not result in termination of dependency and indemnity compensation

*As introduced on March 20, 2001*

## SUMMARY

H.R. 1108 would allow a veteran's surviving spouse who remarries after age 55 to continue receiving dependency and indemnity compensation (DIC) payments from the Department of Veterans Affairs (VA). CBO estimates that enacting this legislation would increase direct spending by $38 million in 2003, $368 million over the 2003-2007 period, and $779 million over the 2003-2012 period. In addition, the bill would increase spending subject to appropriation by less than $100,000 each year over the 2003-2007 period. Because the bill would affect direct spending, pay-as-you-go procedures would apply.

H.R. 1108 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act (UMRA) and would impose no costs on state, local, or tribal governments.

## ESTIMATED COST TO THE FEDERAL GOVERNMENT

The estimated budgetary impact of H.R. 1108 is shown in the following table. This estimate assumes the legislation will be enacted by October 1, 2002. The costs of this legislation fall within budget function 700 (veterans benefits and services).

| | By Fiscal Year, in Millions of Dollars | | | | |
|---|---|---|---|---|---|
| | 2003 | 2004 | 2005 | 2006 | 2007 |
| **CHANGES IN DIRECT SPENDING** | | | | | |
| Estimated Budget Authority | 38 | 71 | 88 | 86 | 85 |
| Estimated Outlays | 38 | 71 | 88 | 86 | 85 |

a. Implementing the bill would also require small increases in spending subject to appropriation; but such increases would be less than $100,000 a year.

## BASIS OF ESTIMATE

H.R. 1108 would allow a surviving spouse who remarries after age 55 to continue receiving DIC payments. The bill would apply retroactively, allowing surviving spouses who have already remarried after the age of 55 to resume receiving DIC payments.

### Direct Spending

Under current law, the VA provides DIC payments to the surviving spouse of certain deceased veterans. If a surviving spouse remarries, DIC payments cease. Should the subsequent marriage end, either due to divorce or death of the new spouse, DIC payments can resume. In fiscal year 2001, about 300,000 surviving spouses received DIC payments. CBO estimates that in that year, a little more than 300 surviving spouses over age 55 (or about 0.1 percent of all surviving spouses receiving DIC) remarried and stopped receiving DIC payments as a result. CBO projects that, under current law, the number of remarriages would gradually increase each year as the overall population of DIC recipients increases and exceed 400 a year by the end of the decade.

CBO estimated the costs for three groups of surviving spouses—those over age 55 who would remarry under current law, those over age 55 who would choose not to remarry under current law but would remarry if H.R. 1108 were enacted, and those who remarried after age 55 before enactment of this bill.

**Surviving Spouses Over Age 55 Who Would Remarry Under Current Law.** CBO estimates that over the 2003-2012 period, 395 surviving spouses over age 55 would remarry each year on average under current law. Under H.R. 1108, federal spending for DIC would increase because those surviving spouses would now receive DIC payments that would have stopped under current law. The average DIC payment in fiscal year 2001 was $11,942.

Such payments are adjusted annually for increases in the cost of living. After accounting for expected mortality of the remarried surviving spouses as well as their new spouses, CBO estimates that the additional cost to provide DIC payments to surviving spouses over age 55 who would remarry under current law would be $6 million in 2003, $67 million over the 2003-2007 period, and $233 million over the 2003-2012 period.

**Surviving Spouses Over Age 55 Who Would Choose Not to Remarry Under Current Law.** Under H.R. 1108, some surviving spouses over age 55 might choose to remarry who would not have done so under current law. CBO estimates there would be no additional cost to provide DIC payments to those individuals. Because those surviving spouses would choose to remain unmarried and receive DIC payments continuously under current law, providing DIC payments if they remarry would result in no additional costs to the program.

**Surviving Spouses Who Remarried After Age 55 Before the Assumed Enactment Date.** H.R. 1108 also would apply retroactively, allowing surviving spouses who remarried after age 55 before enactment of this legislation to resume DIC once this legislation was enacted. After accounting for expected mortality of the remarried surviving spouses as well as their new spouses, CBO estimates that, over the 2003-2012 period, almost 5,700 surviving spouses who remarried after age 55 would resume receiving DIC payments. That estimate assumes that about 65 percent of the eligible retroactive cases would apply to resume DIC payments. CBO estimates that the additional cost to provide DIC payments to this population be $32 million in 2003, $301 million over the 2003-2007 period, and $546 million over the 2003-2012 period. Such costs could obviously be much higher or lower, depending on the portion of eligible people that apply for this retroactive benefit.

Together, CBO estimates that the additional cost to provide DIC payments to surviving spouses who remarry over age 55 would be $38 million in 2003, $368 million over the 2003-2007 period, and $779 million over the 2003-2012 period.

### Spending Subject to Appropriation

CBO estimates that enacting H.R. 1108 would result in almost 5,700 retroactive cases of surviving spouses applying to reinstate their DIC payments. Processing those additional applications would increase outlays by less than $100,000 each year over the 2003-2006 period, assuming appropriation of the necessary amounts, CBO estimates.

## PAY-AS-YOU-GO CONSIDERATIONS

The Balanced Budget and Emergency Deficit Control Act sets up pay-as-you-go procedures for legislation affecting direct spending or receipts. The net changes in outlays and governmental receipts that are subject to pay-as-you-go procedures are shown in the following table. For the purposes of enforcing pay-as-you-go procedures, only the effects through fiscal year 2006 are counted.

| | By Fiscal Year, in Millions of Dollars | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
| Changes in outlays | 0 | 38 | 71 | 88 | 86 | 85 | 84 | 83 | 82 | 81 | 81 |
| Changes in receipts | Not applicable | | | | | | | | | | |

## ESTIMATED IMPACT ON STATE, LOCAL, AND TRIBAL GOVERNMENTS

H.R. 1108 contains no intergovernmental or private-sector mandates as defined in UMRA and would impose no costs on state, local, or tribal governments.

## ESTIMATE PREPARED BY:

Federal Costs: Michelle S. Patterson and Victoria Heid Hall
Impact on State, Local, and Tribal Governments: Elyse Goldman
Impact on the Private Sector: Sally Maxwell

## ESTIMATE APPROVED BY:

Peter H. Fontaine
Deputy Assistant Director for Budget Analysis

# Exhibit 5

# CONGRESSIONAL BUDGET OFFICE
# COST ESTIMATE

March 28, 2003

## H.R. 36

**A bill to amend title 38, United States Code, to provide that remarriage of the surviving spouse of a deceased veteran after age 55 shall not result in termination of dependency and indemnity compensation otherwise payable to that surviving spouse**

*As introduced on January 7, 2003*

## SUMMARY

H.R. 36 would allow a veteran's surviving spouse who remarries after age 55 to continue receiving dependency and indemnity compensation (DIC) payments from the Department of Veterans Affairs (VA). CBO estimates that enacting this legislation would increase direct spending by $34 million in 2004, $306 million over the 2004-2008 period, and $630 million over the 2004-2013 period. In addition, the bill would increase spending subject to appropriation by less than $100,000 each year over the 2004-2006 period.

H.R. 36 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act (UMRA) and would impose no costs on state, local, or tribal governments.

## ESTIMATED COST TO THE FEDERAL GOVERNMENT

The estimated budgetary impact of H.R. 36 is shown in the following table. This estimate assumes that the legislation will be enacted by October 1, 2003. The costs of this legislation fall within budget function 700 (veterans benefits and services).

| | By Fiscal Year, in Millions of Dollars | | | | | |
|---|---|---|---|---|---|---|
| | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
| **CHANGES IN DIRECT SPENDING** | | | | | | |
| Estimated Budget Authority | 0 | 34 | 60 | 73 | 71 | 69 |
| Estimated Outlays | 0 | 34 | 60 | 73 | 71 | 69 |

## BASIS OF ESTIMATE

H.R. 36 would allow a surviving spouse who remarries after age 55 to continue receiving DIC payments. The bill would apply retroactively, allowing surviving spouses who have already remarried after the age of 55 to resume receiving DIC payments.

### Direct Spending

Under current law, the VA provides DIC payments to the surviving spouse of certain deceased veterans. If a surviving spouse remarries, DIC payments cease. Should the subsequent marriage end, either due to divorce or death of the new spouse, DIC payments can resume. In fiscal year 2002, about 300,000 surviving spouses received DIC payments. CBO estimates that in that year, about 330 surviving spouses over age 55 (or about 0.1 percent of all surviving spouses receiving DIC) remarried and stopped receiving DIC payments as a result. CBO projects that, under current law, the number of remarriages would gradually increase each year as the overall population of DIC recipients increases and exceed 400 a year by the end of the decade.

CBO estimated the costs for three groups of surviving spouses—those over age 55 who would remarry under current law, those over age 55 who would choose not to remarry under current law but would remarry if H.R. 36 were enacted, and those who remarried after age 55 before enactment of this bill.

**Surviving Spouses Over Age 55 Who Would Remarry Under Current Law.** CBO estimates that over the 2004-2013 period, about 385 surviving spouses over age 55 would remarry each year on average under current law. Under H.R. 36, federal spending for DIC would increase because those surviving spouses would now receive DIC payments that would have stopped under current law. These payments would not begin until 2004. The average DIC payment in fiscal year 2002 was $12,244. Such payments are adjusted annually for increases in the cost of living. After accounting for expected mortality of the remarried

surviving spouses as well as their new spouses, CBO estimates that the additional cost to provide DIC payments to surviving spouses over age 55 who would remarry under current law would be $7 million in 2004, $69 million over the 2004-2008 period, and $227 million over the 2004-2013 period.

**Surviving Spouses Over Age 55 Who Would Choose Not to Remarry Under Current Law.** Under H.R. 36, some surviving spouses over age 55 might choose to remarry who would not have done so under current law. CBO estimates there would be no additional cost to provide DIC payments to those individuals. Because those surviving spouses would choose to remain unmarried and receive DIC payments continuously under current law, providing DIC payments if they remarry would result in no additional costs to the program.

**Surviving Spouses Who Remarried After Age 55 Before Enactment of the Bill.** H.R. 36 also would apply retroactively, allowing surviving spouses who remarried after age 55 before enactment of this legislation to resume DIC once this legislation was enacted. After accounting for expected mortality of the remarried surviving spouses as well as their new spouses, CBO estimates that, over the 2004-2013 period, almost 4,500 surviving spouses who remarried after age 55 would resume receiving DIC payments. That estimate assumes that about 65 percent of the eligible retroactive cases would apply to resume DIC payments. CBO estimates that the additional cost to provide DIC payments to this population be $27 million in 2004, $237 million over the 2004-2008 period, and $403 million over the 2004-2013 period. Such costs could obviously be much higher or lower, depending on the portion of eligible people that apply for this retroactive benefit.

Together, CBO estimates that the additional cost to provide DIC payments to surviving spouses who remarry over age 55 would be $34 million in 2004, $306 million over the 2004-2008 period, and $630 million over the 2004-2013 period.

## Spending Subject to Appropriation

CBO estimates that enacting H.R. 36 would result in almost 6,000 retroactive cases of surviving spouses applying to reinstate their DIC payments. Processing those additional applications would increase outlays by less than $100,000 each year over the 2004-2006 period, assuming appropriation of the necessary amounts, CBO estimates.

**INTERGOVERNMENTAL AND PRIVATE-SECTOR IMPACT**

H.R. 36 contains no intergovernmental or private-sector mandates as defined in UMRA and would impose no costs on state, local, or tribal governments.

**ESTIMATE PREPARED BY:**

Federal Costs: Melissa E. Zimmerman
Impact on State, Local, and Tribal Governments: Gregory Waring
Impact on the Private Sector: Allison Percy

**ESTIMATE APPROVED BY:**

Peter H. Fontaine
Deputy Assistant Director for Budget Analysis

# Exhibit 6

**Military Update**
**A Military Association Internet Exclusive for the FRA (The Fleet Reserve Association) at http://www.fra.org/**

**by Tom Philpott**
**January 15, 2004**

*FRA - Serving Active Duty, Reserve and Retired Enlisted Personnel of the Navy, Marine Corps and Coast Guard.*

## Congress, DOD Differ On Scope Of Restored Widow Benefits

Members and staff of the House Veterans Affairs Committee are confident they took a first step late last year toward ending a lesser-known ``ban on concurrent receipt,'' the one that reduces survivor benefit payments to widows and widowers of military retirees.

Defense Department lawyers are just as confident, a Pentagon source said, that the bill's language missed its mark, and does not end for a small group of widows the dollar-for-dollar offset in military Survivor Benefit Plan (SPB) payments mandated when widows also receive Dependency and Indemnity Compensation (DIC) from the Department of Veterans Affairs.

At stake in how the new law is interpreted is an average of $9204 in annual survivor benefits for about 400 widows of military retirees who died from service-connected disabilities. But Rep. Henry Brown, Jr. (R-S.C.) said it's also a symbolic first step toward ending the DIC-triggered SBP offset for 44,000 dual-eligible surviving spouses of retirees.

Military retirees buy SBP coverage so their surviving spouses can continue to receive a portion of retired pay after retirees die. The widow of any veteran, including a military retiree, also can be eligible for DIC, which pays at a minimum pay $967 a month, if the veteran died from a service-related injury or illness. But widows of military retirees see their SBP reduced dollar for dollar by the amount drawn in tax-free DIC.

The current controversy is over a provision in the Veterans Benefits Act of 2003, which was signed into law Dec. 16. For years, widows who remarried lost their DIC entitlement. But Section 101 of the new benefit package [Public Law 108-183] allows veterans' surviving spouses who remarry at 57 or older to retain DIC. Indeed, widows who earlier remarried at 57 or older, and lost DIC, have until Dec. 16, 2004 to reapply [Use VA Form 21-686c]. More than 12,000 widows are said to qualify but officials estimate fewer than 15 percent will know to apply, even after an aggressive public

information campaign. An estimated 350 DIC-eligible widows a year remarry after age 56, and therefore stand to gain from the bill.

The controversy for widows of military retirees arises in paragraph B of Section 101. It says individuals made eligible for DIC under the provision, by reason of their ``status as the surviving spouse of a veteran," should see no reduction in other federal benefits as a result of this provision.

Brown, chairman of the House veterans' benefits subcommittee, said in a phone interview that the paragraph was added specifically to avoid for this group of widows a reduction in SBP benefit once DIC is restored.

``We put a special paragraph in there to, basically, get [the Defense Department] to do that," Brown said. ``This was to get the camel's nose under the tent, sort of like we did with concurrent receipt" for disabled retirees. ``We did the Purple Heart folks first and then we went back and to address anybody with a [combat-related] disability. Then last year we said anybody up to 50 percent [disabled] even outside of combat" will be able, within 10 years, to draw both full retired pay and VA disability compensation

Peter Dickinson, communications director for the House Committee on Veterans' Affairs, agreed that eliminating the offset in SBP for DIC-eligible widows who remarry after age 56 was the committee's intent.

``We wanted to make sure that this group did not see this new benefit come in, and then lose another benefit," he said.

The National Association of the Uniformed Services explained to its members in a Dec. 5 newsletter that the provision ``in essence, eliminates the requirement for DIC to offset SBP annuities as required by current law."

But a Pentagon source said Defense pay officials and lawyers have reviewed the provision and found no impact on SBP. If the intent was to end the SBP offset as DIC is restored, the bill would have referred specifically to the surviving spouse of ``a military retiree" not of ``a veteran."

Defense officials also are said to question the logic of eliminating cuts in SBP only for DIC widows who remarry after age 56, leaving widows who don't remarry to continue to see SBP reduced.

``It would be a totally incongruous result," said this Pentagon official. The department, therefore, isn't inclined to interpret the law as restoring SBP to a small group of widows drawing DIC, without clarifying guidance from the armed services committees, which have oversight responsibility for SBP.

Edith Smith, a long-time advocate for military widows, also is troubled by the prospect of remarried widows receiving more in combined benefits than other widows. But Smith said she applauds the House veterans' committee for taking a first step to end the SBP offset, and she argues that defense officials should apply the law as written.

If that happens, said Smith, she and service associations can press the

armed services committees hard this year to end such an obvious disparity among retiree widows by passing legislation to grant full concurrent receipt of SBP and DIC. In fact, Brown and Sen. Bill Nelson (D-FL) have sponsored bills (HR 1726, S 585) to repeal the SBP-DIC offset.

As of mid-January, the House committee had not officially discussed the intent of the provision known as ``DIC 57" with Defense officials. That could happen soon.

``If there's a question of interpretation," Brown said, ``I think we would try to get them to reconsider."

``SBP is not within scope of our jurisdiction," conceded committee spokesman Dickinson. ``But DIC 57 was. And we merely wanted to ensure that it was a paid benefit for all those eligible."

**Comments and suggestions welcomed**

Write to Military Update, P.O. Box 231111, Centreville, Va. 20120-1111,
e-mail to Tom Philpott
or visit Philpott's website at: militaryupdate.com.

---

**send questions and comments to FRA at**
**news-fra@fra.org or call (703) 683-1400**
**or**
**comments and suggestions to Tom Philpott**

**Military Update Archive**

*Updated...*