# United States Court of Federal Claims

No. 07-547 C
Filed February 11, 2008
TO BE PUBLISHED

| | |
|---|---|
| PATRICIA R. SHARP, MARGARET M. HAVERKAMP, and IVA DEAN ROGERS,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Subject-Matter Jurisdiction; Tucker Act; Money-Mandating Statute; Survivor Benefit Plan, 10 U.S.C. § 1447 *et seq.*; Dependency and Indemnity Compensation, 38 U.S.C. § 1310 *et seq.*; Veterans Benefits Act of 2003; 38 U.S.C. § 1311(e); 10 U.S.C. § 1450(c)(1); Motion to Dismiss Pursuant to RCFC 12(b)(6); Statutory Construction; Plain Meaning; Disparate Treatment of Surviving Spouses of Veterans; Legislative History; *Chevron* Deference; *Skidmore* Deference. |

Edward R. Reines, Weil, Gotshal & Manges LLP, Redwood Shores, California, and Michael R. Franzinger and Azra M. Hadzimehmedovic, Weil, Gotshal & Manges LLP, Washington, D.C., for plaintiffs.

Douglas K. Mickle, Trial Attorney, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Major Kelly L. McGovern, U.S. Army, Military Personnel Branch, Army Litigation Division, Arlington, Virginia, and Scott Lafferty, Senior Associate Counsel, Office of General Counsel, Military and Civilian Pay Law Directorate, Defense Finance and Accounting Service, Cleveland, Ohio, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This action is before the Court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted ("Def.'s Mot. Dismiss," docket entry 5); plaintiffs' response to defendant's motion to dismiss ("Pls.' Response," docket entry 6); defendant's reply in support of its motion to dismiss ("Def.'s Reply," docket entry 9); plaintiffs' surreply addressing arguments offered in defendant's reply ("Pls.' Surreply," docket entry 11); and defendant's rejoinder to plaintiffs' surreply ("Def.'s Rejoinder," docket entry 13). Defendant's motion to dismiss, plaintiffs' response, and defendant's reply included appendices totaling over 300 pages of legislative history. In addition, the Court heard oral argument on defendant's motion on January 30, 2008. For the reasons discussed below, defendant's motion is **DENIED**.

## BACKGROUND

The following facts, taken from plaintiffs' complaint, are presumed true for the purpose of deciding defendant's motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (stating that decisions on such motions to dismiss rest "on the assumption that all the allegations in the complaint are true"); *Leider v. United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002); *Gould Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *Kawa v. United States*, 77 Fed. Cl. 294, 298 (2007); *Barth v. United States*, 28 Fed. Cl. 512, 514 (1993).

### I. Plaintiffs and their Entitlement to Certain Military Benefits

Plaintiffs were married to military service members before those service members died. Complaint ¶¶ 14, 24, 30. Specifically, plaintiff Patricia R. Sharp was married to Brigadier General Richard Harry Sharp of the United States Army. Complaint ¶ 14. Ms. Sharp married Brigadier General Sharp at the age of 20 in 1960. *Id.* Brigadier General Sharp died in 1983 while on active duty. *Id.* On November 25, 2000, at the age of 60, Ms. Sharp remarried. Complaint ¶ 17.

Plaintiff Margaret M. Haverkamp was married to Lieutenant Colonel George Talbot of the United States Army. Complaint ¶ 24. Ms. Haverkamp married Lieutenant Colonel Talbot at the age of 21 in 1957. *Id.* Some time before his death, Lieutenant Colonel Talbot retired from the Army with a 15 percent service-connected disability as a result of high blood pressure. *Id.* The disability continued until Lieutenant Colonel Talbot's death in 1997. *Id.* On November 25, 2000, at the age of 65, Ms. Haverkamp remarried. Complaint ¶ 27.

Plaintiff Iva Dean Rogers was married to Master Sergeant Arlan E. Wilson of the United States Army. Complaint ¶ 30. Ms. Rogers married Master Sergeant Wilson at the age of 20 in 1943. *Id.* Master Sergeant Wilson retired from the Army in 1973 and died on September 17,

1976, from what were later determined to be service-connected causes. *Id.* In November 1996, at the age of 74,[1] Ms. Rogers remarried. Complaint ¶ 32.

## II. The Benefit Plans at Issue

Because plaintiffs are the surviving spouses of deceased military service members, they are eligible for certain benefits paid by the Department of Veterans Affairs and the Department of Defense. The two benefit programs at issue in this case are the Survivor Benefit Plan ("SBP") and Dependency and Indemnity Compensation ("DIC").

The Department of Defense administers the SBP program. Complaint ¶ 7. This program is similar to life insurance in that service members or military retirees who are eligible and who choose to participate have premiums deducted from their paychecks. *Id.* If a service member or retiree chooses to participate in SBP by having these premiums deducted, his family receives SBP payments after he dies. *Id.*

The DIC program is administered by the Department of Veterans Affairs. Complaint ¶ 8.[2] DIC is designed to provide payments to the families of military service members or retirees who die while on active duty or while suffering from a service-connected disability. *Id.* Service members do not pay any premiums as a condition of participating in DIC; payments to the survivors of qualifying service members are automatic. *Id.*

Some service members, including Brigadier General Sharp, Lieutenant Colonel Talbot, and Master Sergeant Wilson, may qualify for both the SBP program and the DIC program. Complaint ¶ 9. Theoretically, then, a surviving spouse might be eligible to receive payments under both programs. However, 10 U.S.C. § 1450(c)(1) requires that any SBP payment be reduced by the amount of any DIC payment to the same surviving spouse: "[i]f . . . the surviving spouse . . . is also entitled to dependency and indemnity compensation under section 1311(a) of title 38, the surviving spouse . . . may be paid an annuity under this section, but only in the amount that the annuity otherwise payable under this section would exceed that compensation." 10 U.S.C. § 1450(c)(1) (2000 & Supp. V 2005). Thus, the Department of Defense pays SBP

---

[1] The complaint states Ms. Rogers's age at remarriage as 70, Complaint ¶ 32, but as she was born in October 1922, Complaint ¶ 30, and was remarried in November 1996, Complaint ¶ 32, her correct age at remarriage appears to have been 74, which the Court has used here. In either case, Ms. Rogers was old enough when she remarried to be entitled to restoration of Dependency and Indemnity Compensation benefits under the Veterans Benefits Act of 2003, which made such benefits available to surviving spouses who remarry after the age of 57.

[2] The complaint states that DIC is administered by the "Veterans Administration." Complaint ¶ 8. This was true until 1989, but since then the program has been administered by the Department of Veterans Affairs, which succeeded the Veterans Administration as of March 15, 1989.

only after deducting any amount that a recipient receives in DIC payments from the Department of Veterans Affairs.

## III. The Veterans Benefits Act of 2003

Before 2003, the DIC program was structured so that a surviving spouse would stop receiving DIC payments if and when she remarried. Complaint ¶ 10. In 2003, though, Congress enacted the Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651 (2003), which restored DIC benefits to some surviving spouses who chose to remarry—those surviving spouses who remarried after the age of 57. *Id.* at 2652; 38 U.S.C. § 103(d)(2)(B) ("The remarriage after age 57 of the surviving spouse of a veteran shall not bar the furnishing of benefits [under, *inter alia*, the DIC program] to such person as the surviving spouse of the veteran."). This provision became effective January 1, 2004. Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 101(c), 117 Stat. 2651, 2653 (2003).

The Veterans Benefits Act of 2003 also enacted 38 U.S.C. § 1311(e), which provides:

> In the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(B) of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, notwithstanding any other provision of law (other than section 5304(b)(3) of this title[3]), no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section.

Complaint ¶ 11. This provision also became effective January 1, 2004. Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 101(c), 117 Stat. 2651, 2653, (2003). Because "individual[s] who [are] eligible for dependency and indemnity compensation . . . by reason of section 103(d)(2)(B)" include surviving spouses who became eligible to receive DIC by reason of remarrying after age 57, this section precludes the Government from making any reductions in non-DIC benefits of surviving spouses who remarry after age 57 that it might otherwise make because the recipient of those benefits also receives DIC, as long as those non-DIC benefits are received "by reason of [the surviving spouse's] status as the surviving spouse of a veteran." 38 U.S.C. § 1311(e). The parties disagree about the scope of this statutory provision. Plaintiffs contend that this provision

[3] The reference to "section 5304(b)(3) of this title" permits offsets of DIC for which a surviving spouse is eligible by reason of the death of one service member against DIC for which the same surviving spouse is eligible by reason of the death of a different service member (*e.g.*, when the surviving spouse was married twice, each time to different service members, both of whom died while on active duty or while suffering from service-related disabilities). 38 U.S.C. § 5304(b)(3). This is not relevant to the specific cases of plaintiffs here, nor is it relevant to the broader issue of whether the DIC-SBP offset falls within the scope of those offsets precluded by section 1311(e).

modifies or partially repeals the DIC-offset provision of the SBP statute (10 U.S.C. § 1450(c)(1)) to the extent that SBP payments are not to be reduced by the amount of DIC payments for those surviving spouses who receive DIC by virtue of their having remarried after the age of 57. Defendant disagrees and, acting through the Department of Defense, has continued deducting DIC payments from SBP payments even for those SBP recipients who, like plaintiffs, are eligible for DIC by virtue of having remarried after the age of 57.

## JURISDICTION

It is unclear whether defendant questions the Court's jurisdiction to hear this case. The motion to dismiss was brought under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), for failure to state a claim upon which the Court may grant relief, rather than under RCFC 12(b)(1). Def.'s Mot. at 1. But defendant also argues in its motion that "[t]here is no money-mandating statute or regulation that authorizes the government to pay plaintiffs" the money they seek, *id.* at 10, language normally used to indicate a lack of jurisdiction under the Tucker Act. At oral argument, counsel for defendant suggested that "[t]he statute that applies here is not [38 U.S.C. § 1311(e)], because that doesn't mandate the payment of [SBP]. The only statute that mandates any payment that this Court possesses jurisdiction to entertain is [10 U.S.C. § 1450]." 1/30/2008 Hrg. Tr. at 6–7. By referencing the concept of money-mandating statutes, it is not clear whether defendant intends merely to argue that, as a substantive matter, the statutes at issue in this case do not amount to a directive that the government pay plaintiffs their full SBP and DIC payments without any offsets, or whether defendant intends instead to argue that, as a matter of the Court's jurisdiction, the requirement of "a" money-mandating statute means that plaintiffs must point to a single, individual statute that requires the payment of money. In case defendant intends the latter, the Court feels it is prudent to address what it understands to be defendant's jurisdictional argument. In any case, jurisdiction is "a threshold question that must be resolved in [plaintiffs'] favor before proceeding to the merits." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). Further, "the court is always responsible for its own jurisdiction," so the Court may address the issue of jurisdiction *sua sponte*. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (*en banc*).

The Court understands defendant's argument on jurisdiction to be substantially as follows. The Tucker Act grants this Court "jurisdiction to render judgment upon any claim against the United States founded . . . upon . . . any Act of Congress . . . ." 28 U.S.C. § 1491(a)(1). "The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of [sovereign immunity effected by] the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher*, 402 F.3d at 1172. Because the language "any Act of Congress" in the Tucker Act is singular, defendant contends that this "separate source of substantive law" must be a single, solitary statutory provision, rather than (for example) a group of statutes that read together "create[] the right to money damages."

That is not the Court's understanding of the law. The "separate source of substantive law" need only be "reasonably amenable to the reading that it mandates a right of recovery in damages." *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (*quoting United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003)). Thus, while a plaintiff may in many cases be able to point to a single statutory provision as by itself mandating the payment of money, the Tucker Act does not require that this be the case. Indeed, both this court and the Federal Circuit have found Tucker Act jurisdiction in cases in which the money-mandating "separate source of substantive law" was a statutory scheme rather than a single statutory provision. *See, e.g., El-Sheikh v. United States*, 177 F.3d 1321, 1323–24 (Fed. Cir. 1999) (finding the "Act of Congress" needed for Tucker Act jurisdiction in a combination of 29 U.S.C. § 203(e)(2) and 29 U.S.C. § 216(b)); *Ralston Steel Corp. v. United States*, 169 Ct. Cl. 119, 340 F.2d 663, 667–68 (Ct. Cl. 1965) (finding a statute mandating the payment of money in a combination of sections 7122 and 7809 of the Internal Revenue Code). Thus, the Court concludes that separate statutory provisions can be read together to create a money-mandating statutory scheme sufficient to create jurisdiction under the Tucker Act.

Because plaintiffs assert a Tucker Act claim under such a statutory scheme, the Court is required under *Fisher* to "determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating." 402 F.3d at 1173. The Court finds that there is a money-mandating statutory scheme that requires (assuming plaintiffs eventually prove the factual allegations in their complaint) that plaintiffs receive money from the Government that they have not received. Specifically, as discussed below, the Court holds that 38 U.S.C. § 1311(e) modifies or partially repeals 10 U.S.C. § 1450(c)(1) to the extent that the deductions from SBP payments required under section 1450(c)(1) to offset DIC payments received should no longer be taken out of SBP payments to those surviving spouses of veterans who receive DIC by virtue of their having remarried after the age of 57. In the absence of any effective required offset under section 1450(c)(1), these surviving spouses are statutorily mandated to receive their full SBP payments, because 10 U.S.C. §1450(a)(1) requires the payment of SBP annuities to surviving spouses. Thus, the combination of 38 U.S.C. § 1311(e), 10 U.S.C. § 1450(c)(1), and 10 U.S.C. § 1450(a)(1) constitutes a money-mandating statutory scheme sufficient to allow this Court to exercise jurisdiction over plaintiffs' claims under the Tucker Act.

## DISCUSSION

Defendant presents four arguments to support its position that 38 U.S.C. § 1311(e) did not modify 10 U.S.C. § 1450(c)(1) in such a way that the Department of Defense should have stopped reducing plaintiffs' SBP payments. First, defendant claims that the plain meaning of section 1311(e) makes clear that it does not apply to section 1450(c)(1). Second, defendant states that accepting plaintiffs' position would result in arbitrary and capricious disparate treatment of SBP beneficiaries and that this could not have been Congress's intention in passing section 1311(e). Third, defendant argues that portions of the legislative history of section 1311(e) demonstrate that Congress did not intend section 1311(e) to modify or partially repeal section 1450(c)(1) in a way helpful to plaintiffs' cause. Finally, defendant argues that, even if section

1311(e) appears to modify section 1450(c)(1), this merely means that the statutes are in conflict, and the Department of Defense's construction of the statutes to attempt to resolve the conflict should be given deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Each of these arguments fails.

**I. The Plain Meaning of 38 U.S.C. § 1311(e) is that it Modifies or Partially Repeals 10 U.S.C. § 1450(c)(1) to the Extent that SBP Payments Are Not To Be Reduced by the Amount of DIC Payments for those Surviving Spouses who Receive DIC by Virtue of their Having Remarried after the Age of 57.**

The Veterans Benefits Act of 2003 contained the following provision:

> In the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(B) of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, notwithstanding any other provision of law (other than section 5304(b)(3) of this title), no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section.

38 U.S.C. § 1311(e). As noted above, the parties disagree about the scope of this section. Plaintiffs and defendant all agree that section 1311(e) is intended to instruct the government to avoid reducing some benefit or benefits other than dependency and indemnity compensation when those other benefits might otherwise be reduced because the recipient also is eligible to receive DIC. Plaintiffs suggest that among those benefits affected by this statutory provision is the survivor benefit plan administered by the Department of Defense. Defendant argues that SBP does not fall within the ambit of section 1311(e) because section 1311(e) is limited on its face to "eligib[ility] for benefits under another provision of law *by reason of [an] individual's status as the surviving spouse of a veteran*," a phrase defendant claims should be read to refer to benefits paid to all surviving spouses of veterans as a matter of course, without the imposition of any additional requirements. 38 U.S.C. § 1311(e) (emphasis added). Because receipt of SBP by a veteran's surviving spouse requires that the veteran in question have been eligible for retirement, 10 U.S.C. § 1448(a)(1), have chosen SBP coverage, 10 U.S.C. § 1448(a)(2), and have paid premiums for the benefit plan, 10 U.S.C. § 1452, defendant argues that section 1311(e) cannot apply to SBP.

The Court disagrees with defendant's reading of the statute. There is not, within the text of section 1311(e), any suggestion that "eligib[ility] for benefits . . . by reason of [an] individual's status as the surviving spouse of a veteran" must be limited to those benefits paid to surviving spouses of veterans with no additional qualifications for eligibility, instead of being applicable to those benefits for which one's "status as the surviving spouse of a veteran" is one of several requirements. Put another way, the statutory language limits the statute's applicability to those benefits for which one's "status as the surviving spouse of a veteran" is a necessary

condition for eligibility, but defendant wishes to read the statute as if it were limited to those benefits for which one's "status as the surviving spouse of a veteran" is both a necessary condition and a sufficient condition for eligibility. The text of section 1311(e) does not support such a reading.

To support its reading of section 1311(e), defendant argues that the term "veteran," when used in title 38 of the U.S. Code, should be read to mean "persons covered by the programs and benefits provided in title 38." Def.'s Reply at 6. The Court disagrees. The term "veteran" is defined in 38 U.S.C. § 101(2) as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." This definition does not, as defendant suggests, limit the definition of "veteran" to persons entitled to receive some benefit or benefits under title 38; rather, it comports with the ordinary plain meaning of "veteran."

Defendant also suggests that the Veterans Benefits Act of 2003 contains language that permits the act to amend, modify, or repeal only statutes within title 38 of the United States Code and that therefore an interpretation of section 1311(e) that requires that the statute modify or partially repeal 10 U.S.C. § 1450(c)(1) cannot be correct. Def.'s Reply at 7 (*quoting* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 2, 117 Stat. 2651, 2652) ("Except as otherwise expressly provided, whenever in this Act an amendment or repeal is expressed in terms of an amendment to, or repeal of, a section or other provision, the reference shall be considered to be made to a section or other provision of title 38, United States Code."). Defendant's interpretation of this language is incorrect. The quoted language is merely a shortcut that permits the drafters of the legislation to make reference throughout the bill to, for example, just "Section 103(d)(2)(B)," rather than spelling out "Section 103(d)(2)(B) of title 38 of the United States Code" each time an amendment or repeal to a portion of title 38 is intended. *See, e.g.,* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 101, 117 Stat. 2651, 2652 ("Section 103(d)(2)(B) is amended by . . ."). This is a common drafting technique for bills that make amendments to title 38: the Court's search turned up 44 uses of the precise language of section 2 of the Veterans Benefits Act of 2003 in public laws enacted between 1982 and 2006. Contrary to defendant's argument, this language does not appear intended to have any substantive effect beyond its use as a convenience for the legislative drafters.

By contrast to defendant's proffered construction, plaintiffs' construction of section 1311(e) is consistent with the plain meaning of the statute's language. In stating, "notwithstanding any other provision of law (other than section 5304(b)(3) of this title), no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section," Congress made clear that no other provision of law (except 38 U.S.C. § 5304(b)(3)) could be relied upon to limit the effect of section 1311(e). "[I]n construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993). In fact, "a clearer statement [of intent to supersede all other laws] is difficult to

imagine." *Liberty Mar. Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991). By its terms, the "notwithstanding" clause in section 1311(e) pertains to "*any* other provision of law," without limitation. 38 U.S.C. § 1311(e) (emphasis added). The existence of an exception to the "notwithstanding" clause, in the form of the reference to "section 5304(b)(3) of this title" demonstrates that Congress was aware of how to draft a reference to statutes limited to a given portion of the United States Code. By failing to limit the "notwithstanding" clause in section 1311(e) to "any other provision of this title" or something similar, Congress demonstrated its intent that section 1311(e) should apply to all benefits for which a qualifying criterion is the recipient's status as the surviving spouse of a veteran. Thus, the Court finds that the plain language of section 1311(e) applies, as plaintiffs argue, to the DIC-SBP offset.

In addition, defendant's reading of section 1311(e) would apparently render section 1311(e) meaningless. Plaintiffs and defendant all agree that the statute directs the government not to reduce some benefit or benefits other than DIC when those other benefits might otherwise be reduced because their recipient also is eligible to receive DIC. The defendant's reading of section 1311(e) would certainly remove SBP from the reach of the section, but, as discussed below, no party has identified any other benefit falling within section 1311(e) under defendant's reading, and the Court is not aware of any.[4] A reading of the statute that ensures it has no application in the real world renders the statute meaningless and should therefore be rejected. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' . . . We are thus 'reluctant to treat statutory terms as surplusage' in any setting.") (*quoting Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698 (1995); *United States v. Menasche*, 348 U.S. 538–39 (1955)); *Donnelly v. Federal Aviation Administration*, 411 F.3d 267, 271 (D.C. Cir. 2005) ("We must strive . . . certainly not to treat an entire [statutory] subsection as mere surplusage."); *FAG Italia S.p.A. v. United States*, 291 F.3d 806, 820 (Fed. Cir. 2002) ("When interpreting statutes, our task is to construe what Congress has enacted beginning with the language of the statute itself, giving effect--if at all possible--to every clause and word of the statute.").

Defendant does suggest two candidates for benefit programs that Congress might have intended to affect by enacting section 1311(e). Were the Court to adopt defendant's construction of the statute, though, it is clear that both of these candidates would also fall outside section 1311(e). As set forth above, defendant urges a reading of the statute that would end reductions in benefits other than DIC only when those other benefits are paid to any surviving spouse of a veteran, with no additional qualifications for receipt of the benefits, but both candidates defendant proposes as possible targets of section 1311(e) do in fact impose requirements on beneficiaries in addition to that of being the surviving spouse of a veteran.

---

[4] The Court is mindful that defendant bears no burden to identify benefits, other than SBP, against which DIC should be offset under section 1311(e). Still, had defendant been able to identify a benefit to which the statute did apply, the Court might have been more receptive to the argument that the statute was not intended to apply to the DIC-SBP offset.

As one candidate target of section 1311(e), defendant suggests the Radiation Exposure Compensation Act of 1990. Def.'s Reply at 8 (*citing* 42 U.S.C. § 2210; 38 C.F.R. § 3.715(c)). The Radiation Exposure Compensation Act ("RECA") provides payments only to "radiation-exposed veteran[s]." 38 C.F.R. § 3.715(a). They are defined elsewhere in the regulations as "veteran[s] who while serving on active duty, or [individuals] who while a member of a reserve component of the Armed Forces during a period of active duty for training or inactive duty training, participated in a radiation-risk activity." 38 C.F.R. § 3.309(d)(3)(i). That veterans must have "participated in a radiation-risk activity" to be eligible for RECA compensation demonstrates that, under defendant's reading of the statute, 38 U.S.C. § 1311(e) does not apply to RECA. Even if this were not the case, though, section 1311(e) could not have been intended to apply to RECA. RECA requires that DIC payments be reduced by the amount of any RECA payment, not that RECA payments be reduced by the amount of any DIC payment. 38 C.F.R. § 3.715(c) ("the amount of a RECA payment will be deducted from . . . the amount of dependency and indemnity compensation payable").[5] Thus, section 1311(e)'s injunction against making any deduction in benefits other than DIC because DIC is also payable cannot be intended to apply to the offset created by eligibility for both DIC and RECA.

Defendant also suggests that certain compensation under the Federal Employees' Compensation Act ("FECA") that has offsets against DIC might have been the congressional target in enacting section 1311(e). Def.'s Reply at 8 (*citing* 5 U.S.C. § 8116; 38 C.F.R. § 3.708). Under FECA regulations, beneficiaries who are eligible for both DIC and workers' compensation payments under FECA must elect to receive one or the other, not both. Therefore, a beneficiary who elects DIC payments over FECA payments could be seen as creating an offset to the FECA payment in an amount equal to the entire FECA payment. However, once again this "offset" provision falls without the ambit of section 1311(e) under defendant's reading. In order for a surviving spouse to be eligible for FECA, she must choose FECA payments over DIC payments. Making this election eliminates any offset against FECA (instead, any "offset" would be against DIC, which the surviving spouse would not receive), and the offset in question is therefore of a type not affected by section 1311(e). In addition, the requirement to elect FECA payments over DIC payments in order to maintain FECA payment eligibility means that FECA payment

---

[5] At oral argument, counsel for defendant pointed out that 38 C.F.R. § 3.715(c) was not promulgated until after 38 U.S.C. § 1311(e) and that the deduction of an offset from DIC payments in the amount of any RECA payment—as opposed to the deduction of an offset from RECA payments in the amount of any DIC payment—was therefore not the governing law at the time section 1311(e) was enacted. This is true: 38 C.F.R. § 3.715(c) became effective August 8, 2006. 71 Fed. Reg. 44,919 (Aug. 8, 2006). But this is not helpful to defendant's case. Before the 2006 change to section 3.715(c), the regulation stated that receipt of *any* payment under RECA would bar receipt of *any* payment under DIC. 58 Fed. Reg. 25,564–65 (Apr. 27, 1993). To the extent this could be characterized as an offset provision, it is still an offset provision requiring a decrease in DIC payments, not a provision requiring a decrease in some other benefit payment because of the receipt of DIC payments. As such, it cannot have been the target of section 1311(e).

eligibility is not automatically granted solely by virtue of one's status as the surviving spouse of a veteran, as demanded by defendant's reading of section 1311(e).

In view of the fact that defendant's construction of the statute would render it inapplicable to SBP payments without apparently placing any other payment programs within its reach, the Court concludes that section 1311(e) cannot be given any effect unless its language is construed to modify or partially repeal 10 U.S.C. § 1450(c)(1) to the extent that SBP payments are not to be reduced by the amount of DIC payments for those surviving spouses who receive DIC by virtue of their having remarried after the age of 57. The Court understands that the partial repeal of section 1450(c)(1) by section 1311(e) is a repeal by implication and that this type of repeal is generally disfavored. *E.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 156 (1976). But the limitation on repeals by implication is not absolute. When two statutes cannot coexist if they are both given full effect, such that the statutes "are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one." *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936); *see also Foreman v. United States*, 60 F.3d 1559, 1563 (Fed. Cir. 1995). Here, section 1311(e) and section 1450(c)(1) are in conflict as regards surviving spouses who receive DIC by virtue of their having remarried after the age of 57: section 1311(e) demands that their SBP payments not be reduced by the amount of their DIC payments, while section 1450(c)(1) requires such a reduction. This conflict is irreconcilable, so the later statute--38 U.S.C. § 1311(e)--must act as a repeal of the earlier statute--10 U.S.C. 1450(c)(1)--to the extent necessary to resolve the conflict. Thus, while section 1311(e) does not totally repeal section 1450(c)(1), it does act as a partial repeal or a modification. Section 1450(c)(1) operates now just as it did before the Veterans Benefits Act of 2003 was passed, except that the DIC offset deductions required by section 1450(c)(1) are no longer to be taken from SBP payments to those surviving spouses who receive DIC by virtue of their having remarried after the age of 57. All other deductions from SBP payments for the purpose of offsetting DIC payments are still to be made, in accordance with the requirement of section 1450(c)(1).

Given that plaintiffs' construction of the statute comports with the plain meaning of its language, even though that plain language appears to effect a somewhat disfavored implicit repeal, the Court concludes that the plain meaning of 38 U.S.C. § 1311(e) supports plaintiffs' view that the statute modifies or partially repeals 10 U.S.C. § 1450(c)(1) to the extent that SBP payments are not to be reduced by the amount of DIC payments for those surviving spouses who receive DIC by virtue of their having remarried after the age of 57.

## II. While Interpreting 38 U.S.C. § 1311(e) According to its Plain Meaning May Give Rise to Some Disparate Treatment Among Surviving Spouses of Veterans, This Disparate Treatment Is Not So Arbitrary or Capricious As to Be Absurd.

Defendant argues that 38 U.S.C. § 1311(e) cannot properly be interpreted according to its plain meaning, because adopting such a reading of section 1311(e) would lead to disparate treatment of different categories of surviving spouses, and this disparate treatment cannot,

according to defendant, have been the intent of Congress. In short, defendant asserts that there is no support for a reading of the statute that would allow a surviving spouse to remarry after age 57 and thereby collect the full amounts of both her DIC and SBP payments, while a similarly situated surviving spouse who chose not to remarry would still be required by 10 U.S.C. § 1450(c)(1) to have her SBP payment reduced by the amount of her DIC payment. Plaintiffs acknowledge that, under their construction of the statute, a surviving spouse could increase her total benefits by choosing to remarry after age 57 rather than remaining unmarried, but they argue that this result was intentional.[6]

The Court agrees with defendant that, to some extent, it seems a perverse result to grant additional compensation to surviving spouses who remarry after age 57 when not granting the same or greater compensation to surviving spouses who remain single. Generally, married people are in a better financial situation than single people are, because married people have the earning power of two individuals on which to draw. Thus, an interpretation of section 1311(e) that gives more money to married people appears to create an odd result.

On the other hand, it is difficult to conceive of any possible reading of section 1311(e) that does not have such an effect. The language in section 1311(e) providing "notwithstanding any other provision of law (other than section 5304(b)(3) of this title), no reduction in benefits under [an]other provision of law shall be made by reason of such individual's eligibility for benefits under this section" clearly is intended to eliminate a reduction in some benefit or benefits by the amount of DIC received. The portion of section 1311(e) stating "[i]n the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(B) of this title" limits this elimination to those surviving spouses who receive DIC by virtue of being beneficiaries of 38 U.S.C. § 103(d)(2)(B). Section 103(d)(2)(B), in turn, provides DIC when "[t]he remarriage after age 57 of the surviving spouse of a veteran" occurs. Thus, no matter what offset section 1311(e) eliminates, it must be interpreted to eliminate that offset only for surviving spouses who remarry after age 57, not for those surviving spouses who remain single or who remarry before age 57. To the extent that this is a perverse result when the offset being eliminated is the SBP-DIC offset, it would be just as perverse a result if the offset being eliminated were between DIC and any other benefit program.

But if the perverse result of construing section 1311(e) exists no matter what offset it is intended to eliminate, the only way to eliminate the perverse result is to hold that section 1311(e)

---

[6] The parties' positions were foreshadowed in a classic law review article by Karl N. Llewellyn. In describing the thrust of a statutory construction argument, Llewellyn noted the existence of a canon stating that, "[i]f [the statutory] language is plain and unambiguous, it must be given effect." Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 VAND. L. REV. 395, 403 (1950). In describing the parry to this thrust, Llewellyn noted the countervailing canon "[but] [n]ot when literal interpretation would lead to absurd or mischievous consequences or thwart manifest purpose." *Id.*

is not intended to eliminate any offset. This would render all of section 1311(e) superfluous, which the Court declines to do. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' . . . We are thus 'reluctant to treat statutory terms as surplusage' in any setting.") (*quoting Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698 (1995); *United States v. Menasche*, 348 U.S. 538-39 (1955)); *Donnelly v. Federal Aviation Administration*, 411 F.3d 267, 271 (D.C. Cir. 2005) ("We must strive . . . certainly not to treat an entire [statutory] subsection as mere surplusage."); *FAG Italia S.p.A. v. United States*, 291 F.3d 806, 820 (Fed. Cir. 2002) ("When interpreting statutes, our task is to construe what Congress has enacted beginning with the language of the statute itself, giving effect--if at all possible--to every clause and word of the statute.").

Put another way, there are at least two principles of statutory construction in conflict in this case. The first is the instruction to avoid interpreting statutes in such a way as to bring about absurd or "unreasonable results." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982). The second is the injunction against interpreting statutes so as to render them surplusage. *Duncan*, 533 U.S. at 174. Because the apparently perverse result of section 1311(e), granting additional money to married people who may not need the money while denying money to single people who might arguably derive greater benefit from it, would exist regardless of the type of offsets to which the Court found section 1311(e) applicable, there is no way to interpret section 1311(e) that both gives effect to the statute and avoids creating an apparently perverse result. Thus, the Court must choose which canon of construction to follow. The canon requiring avoidance of absurd or "unreasonable results" is to be followed "whenever possible." *Am. Tobacco Co.*, 456 U.S. at 71. The canon requiring that statutes not be rendered meaningless is to be followed "in any setting." *Duncan*, 533 U.S. at 174. Thus, the requirement to give effect to the statute takes precedence over the requirement to avoid unreasonable results, and the Court must construe section 1311(e) to have some effect. The Court therefore concludes that 38 U.S.C. § 1311(e) must be read to eliminate some offset or offsets between some benefit payments and DIC payments for surviving spouses who remarry after age 57. It remains for the Court only to determine whether that class of offsets includes the DIC-SBP offset. As stated above, the Court finds that it does.

Moreover, the mere fact that an interpretation of a statute consistent with its plain meaning leads to an apparently undesirable or perverse result from a policy point of view does not mean that the interpretation produces a result that is so absurd or bizarre that the interpretation cannot have been intended by Congress. The rule is that "'[p]olicy considerations cannot override our interpretation of the text and structure of [a statute], except to the extent that they may help to show that adherence to the text and structure would lead to a result so bizarre that Congress could not have intended it.'" *Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004) (*quoting Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 188 (1994)). Such is not the case here. While the outcome of granting more money to married people than to similarly situated single people may seem odd, it is entirely reasonable to assume a scenario in which various factions within Congress, each of which had different policy

goals, were motivated to--and did--compromise in order to pass the Veterans Benefits Act of 2003, which gave each group a portion of what it sought. It is therefore impossible to say that Congress could not reasonably have intended a result that seems odd from a policy point of view.[7]

For example, one group of legislators may have wished to eliminate the DIC-SBP offset for all surviving spouses (remarried or not) because they viewed the offset as somehow unfair to veterans or the surviving spouses of veterans.[8] A second group of legislators may have been interested most in containing costs and, while wishing to help veterans and their surviving spouses, may have wanted to limit the cost of any repeal of the DIC-SBP offset to a subset of all surviving spouses. Still a third group of legislators may reasonably have been principally interested in eliminating disincentives to marriage and in creating incentives to marry, in order to support particular religious or social values.[9] If the votes of all three of these factions were

---

[7] Even the result of granting more money to certain remarried surviving spouses than to similarly situated single surviving spouses seems less odd if it is viewed as a result of a statute that was intended to be a temporary repeal of the DIC-SBP offset for a small group of surviving spouses until Congress was persuaded to repeal the offset altogether. This is an entirely plausible interpretation of the legislative history of 38 U.S.C. § 1311(e). That Congress may have intended to eliminate the DIC-SBP offset for a subset of surviving spouses as the first step on the road to a complete repeal of the offset was colorfully illustrated by Representative Henry Brown, Jr., when he said of section 1311(e) that "'[t]his was to get the camel's nose under the tent, sort of like we did with concurrent receipt' for disabled retirees." Pls.' Response at 15 (*quoting* T. Philpott, *Congress, DOD Differ on Scope of Restored Widow Benefits*, MILITARY UPDATE, January 15, 2004, http://www.fra.org). Representative Brown was a sponsor of the Veterans Benefits Act of 2003. 149 Cong. Rec. H4787 (daily ed. Jun. 2, 2003). Thus, although "'[o]ral testimony of . . . individual Congressmen, unless very precisely directed to the intended meaning of particular words in a statute, can seldom be expected to be as precise as the enacted language itself,'" Representative Brown's view of the purpose of the legislation "should be afforded some weight." *Glaxo Operations UK, Ltd. v. Quigg*, 894 F.2d 392, 398 (Fed. Cir. 1990) (*quoting Regan v. Wald*, 468 U.S. 222, 237 (1984)).

[8] The existence of this group of legislators is supported by the continuing congressional efforts in 2005 and 2007 to amend title 10 of the U.S. Code to eliminate the DIC-offset provision altogether. *See* Def.'s Mot. Dismiss at 15–16 (*citing* Military Surviving Spouses Equity Act, H.R. 808, 109th Cong. (Feb. 15, 2005); Military Surviving Spouses Equity Act of 2005, S. 185, 109th Cong. (Jan. 26, 2005); Military Surviving Spouses Equity Act, H.R. 1589, 110th Cong. (Mar. 20, 2007); Military Surviving Spouses Equity Act, S. 935, 110th Cong. (Mar. 20, 2007)).

[9] The views of this group of legislators are exemplified by the statement of Representative Gus Bilirakis, who, in urging passage of the Veterans Benefits Act of 2003, stated that removing a disincentive to remarriage of surviving spouses was a key purpose of the law:

needed to pass any statute, a three-way compromise would have been required. In the Veterans Benefits Act of 2003, the first group would have settled for repealing the DIC-SBP offset for a small number of surviving spouses, as opposed to their desired outcome of repealing the offset for all surviving spouses. The second group would have managed to contain costs to a great degree, while still doing something to help surviving spouses of veterans. The third group would have achieved a great deal of its objective, both eliminating a disincentive to marriage and creating an additional incentive to marry, albeit only for a small number of surviving spouses of veterans.

Under the foregoing scenario, the seemingly perverse effects of section 1311(e) would, in fact, reflect the intent of Congress. The Court cannot say that, in enacting the Veterans Benefits Act of 2003, Congress could not rationally have reasoned in the manner described. Accordingly, the Court cannot say that Congress could not have intended section 1311(e) to have its ordinary plain meaning.

## III. The Legislative History of 38 U.S.C. § 1311(e) Does Not Contain an Extraordinary Showing of a Clearly Expressed Legislative Intention Contrary to the Statutory Language, as Required by Governing Case Law.

Given that the plain language of 38 U.S.C. § 1311(e) is both unambiguous and consistent with plaintiffs' interpretation, the Court might be excused for stopping its analysis here.[10] However, the Federal Circuit has held that, "even when the plain meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a clearly expressed legislative intention contrary to the statutory language.'" *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395–96 (Fed. Cir. 1990) (*quoting Madison Galleries Ltd. v. United States*, 870 F.2d 627, 629 (Fed. Cir. 1989)). "If the plain language of a statute is clear, there is a strong presumption that the plain language expresses congressional intent." *Bull v. United States*, 479 F.3d 1365, 1377 (Fed. Cir. 2007). Thus, to overcome the plain meaning of the statute, the party challenging that plain meaning by reference to legislative history must establish that the legislative history embodies "an 'extraordinary showing of contrary intentions.'" *Glaxo*, 894 F.2d at 396 (*quoting*

---

> I think it is a wonderful thing if an older person finds companionship, falls in love and decides to marry. I don't think we should be discouraging such marriages by making them financially burdensome. In these circumstances, it is often the case that both partners are living on fixed incomes, [and] the prospect of one partner losing financial benefits as a result of the marriage is a real disincentive.

149 CONG. REC. H11705-01 (daily ed. Nov. 20, 2003) (statement of Rep. Bilirakis).

[10] "Resort to legislative history is only justified where the face of an Act is inescapably ambiguous . . . ." *Schwegman Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395 (1951) (Jackson, J., concurring).

*Garcia v. United States*, 469 U.S. 70, 75 (1984)). Defendant has not cited any legislative history that approaches the "extraordinary showing of contrary intentions" that the Federal Circuit and the Supreme Court require of parties seeking to construe statutes in ways that conflict with their plain meaning.

Defendant relies upon two separate types of legislative history to support its construction of the statute: (1) the continuing efforts of Congress to repeal 10 U.S.C. § 1450(c)(1) even after the enactment of 38 U.S.C. § 1311(e) in 2003, and (2) a Congressional Budget Office ("CBO") report prepared immediately after 38 U.S.C. § 1311(e) was enacted that shows cost savings resulting from leaving the DIC-offset provision in effect. Defendant's first argument is that Congress's efforts to completely repeal the DIC offset to SBP payments since 2003 demonstrate that Congress does not believe that its 2003 legislation resulted in such a repeal. The second argument is that, had Congress intended its 2003 legislation to repeal the DIC-offset provision, the CBO would not have prepared a cost estimate report that relied on cost savings from the DIC offset. To the extent that these arguments have any merit, plaintiffs have provided contrary explanations for the legislative history that render that history sufficiently equivocal that it fails to provide the necessary "extraordinary showing" that, in enacting 38 U.S.C. § 1311(e), Congress intended something different from the plain meaning of the statutory language.

Examining the first argument, defendant points to congressional efforts in 2005 and 2007 to amend title 10 of the U.S. Code to eliminate the DIC-offset provision. Def.'s Mot. Dismiss at 15–16 (*citing* Military Surviving Spouses Equity Act, H.R. 808, 109th Cong. (Feb. 15, 2005); Military Surviving Spouses Equity Act of 2005, S. 185, 109th Cong. (Jan. 26, 2005); Military Surviving Spouses Equity Act, H.R. 1589, 110th Cong. (Mar. 20, 2007); Military Surviving Spouses Equity Act, S. 935, 110th Cong. (Mar. 20, 2007)). Defendant also notes that the President issued a policy statement in 2006 opposing a repeal of the DIC offset. Def.'s Mot. Dismiss at 15–16. Based on these efforts, defendant argues that "[t]he fact that the legislative and executive branches continue to debate the repeal of the SBP/DIC offset is additional evidence that the SBP/DIC offset continues to exist under 10 U.S.C. § 1450(c)(1)." *Id.* at 16. Defendant's conclusion is plausible, but plaintiffs offer a different, also-plausible interpretation of the same activity. Plaintiffs note that the more recent bills attempt to eliminate the DIC offset for *all* surviving spouses who receive both SBP and DIC, while section 1311(e) only eliminated the offset for those surviving spouses who receive both SBP and DIC *and who also remarry after age 57*. Under plaintiffs' interpretation, the recent legislative efforts to effect a complete repeal of the DIC-offset provision acknowledge that the 2003 legislation did not result in such a complete repeal, but say nothing about whether the 2003 legislation effected a partial repeal of the provision (that is, a repeal of 10 U.S.C. § 1450(c)(1) as it applies to some but not all recipients of benefits under both SBP and DIC programs). Both sides have provided plausible interpretations of the continuing legislative activity, and this equivocal evidence cannot support an interpretation at variance with the plain meaning of the statute.

Similarly, defendant points to section 644 of the recently-enacted National Defense Authorization Act for Fiscal Year 2008 ("Fiscal Year 2008 NDAA"), Pub. L. No. 110-181, §

644, 122 Stat. 3, 158 (2008), which contains a provision for "a special survivor indemnity allowance . . ., which entitles a[n] SBP recipient, who is also entitled to DIC and subject to the offset in 10 U.S.C. § 1450(c), to separately receive a monthly $40[11] allowance to make up for a portion of the DIC offset."[12] Def.'s Reply at 17 (*citing* H.R. Rep. No. 110-146, at 342 (May 11, 2007)). Defendant argues that the passage of such an apparent legislative amelioration of the DIC-SBP offset shows that Congress believes that the full offset is still in place. As with the other legislative activity discussed above, however, while defendant's interpretation of this legislative activity is plausible, plaintiffs' contrary conclusion that the recent legislative efforts merely constitute an acknowledgment by Congress that the 2003 legislation effected only a partial repeal is also plausible. This equivocal evidence of congressional intent cannot permit a finding that Congress intended to enact a statute at odds with the plain meaning of the language actually used in the statute it did adopt.

Turning to defendant's second argument, defendant notes a CBO cost estimate issued on December 8, 2003, for the legislation that resulted in section 1311(e). The CBO report discusses the cost of the legislation's extension of DIC payments to surviving spouses who remarry after age 57 and who would not previously have been able to receive those payments. In the course of this discussion, the CBO report asserts that much of this cost would be offset by the statutory provision that requires SBP payments to be reduced by the amount of any DIC payments received. Thus, defendant argues, in preparing its report, the CBO understood that the legislation did not eliminate the DIC-offset provision of the SBP statute.

This argument is somewhat more availing than defendant's continuing-legislative-efforts argument, but it is still not sufficient to constitute the extraordinary showing that Congress intended to enact a provision different from the plain meaning of the language of section 1311(e) as enacted. The CBO issued its report on December 8, 2003, more than two weeks after

---

[11] The amount of the allowance was $40 in the House of Representatives report cited by defendant, but that amount was changed to an escalating amount, beginning with $50 in fiscal year 2009, escalating by $10 each fiscal year through 2013, in the bill as enacted. National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 644, 122 Stat. 3, 158 (2008).

[12] During oral argument, the parties discussed whether, should plaintiffs ultimately establish that the modification or partial repeal of 10 U.S.C. § 1450(c)(1) by 38 U.S.C. § 1311(e) entitles plaintiffs to receive full payments under both SBP and DIC without any offsets, plaintiffs would in addition be eligible to receive the new monthly survivor indemnity allowance provided for in the Fiscal Year 2008 NDAA. The Court need not reach the question whether the NDAA allowance is payable to all those who receive both SBP and DIC (which would include plaintiffs here) or only to those who receive both SBP and DIC and who actually have an offset deducted from their SBP payments (which would not include plaintiffs here, assuming that plaintiffs eventually prove the allegations in their complaint and assuming that—as the Court holds here—plaintiffs' construction of 38 U.S.C. § 1311(e) is correct).

Congress passed H.R. 2297 on November 20, 2003. Thus, Congress could not have had in mind the CBO's interpretation of the statute when it was voting on the bill.[13] The Court notes with approval the Seventh Circuit's statement that the CBO's "view—on which the Congress did not vote, and [which] the President did not sign—cannot alter the meaning of enacted statutes." *Ameritech Corp. v. McCann*, 403 F.3d 908, 913 (7th Cir. 2005). The CBO's analysis of the statute may be somewhat persuasive evidence of the general understanding of a bill at the time the CBO conducted its analysis, but it cannot by itself resolve the issue of the meaning of statutory language.

In addition, it is possible, as plaintiffs argue, that the CBO's analysis relying on the DIC-offset provision's remaining in place was the result of a mistake or oversight in which CBO did not take into account section 1311(e), either because the CBO failed to notice section 1311(e) or because the CBO misinterpreted the language of section 1311(e). It appears that the first time the CBO noted possible cost savings in implementing H.R. 2297 from the DIC-offset provision was in a cost estimate set forth in a July 15, 2003 House of Representatives report.[14] H.R. REP. NO. 108-211, at 43 (July 15, 2003). Some time between this report and October 8, 2003, when H.R. 2297 was presented for vote in the House, the language that became 38 U.S.C. § 1311(e) was added. *Compare* 149 Cong. Rec. H9305 (daily ed. Oct. 8, 2003) (showing addition of language that became section 1311(e)) *with* H.R. REP. NO. 108-211, at 2–3 (July 15, 2003) (showing no such addition). Plaintiffs argue therefore that Congress must have added section 1311(e) to H.R. 2297 in reaction to CBO's July 15, 2003 analysis. This is possible, although the December 8, 2003 CBO report does not mention this addition to the legislation in the discussion of changes between H.R. 2297 as it was passed by Congress on November 20, 2003, and previous drafts of the legislation that the CBO had analyzed earlier. *See* CONGRESSIONAL BUDGET OFFICE, COST ESTIMATE FOR H.R. 2297 (Dec. 8, 2003), http://www.cbo.gov/ftpdoc.cfm?index=4880&type=1 (stating that "[m]ost provisions in H.R. 2297, as cleared by Congress, are similar or identical to provisions in [earlier drafts]" and listing exceptions to this statement, but not including any

---

[13] No party has argued otherwise, of course. But a necessary condition to accepting defendant's argument that the CBO's interpretation of the statute must be Congress's interpretation of the statute is that Congress had an opportunity to ratify the CBO's analysis. Because the CBO's analysis was not completed until after Congress had taken its final action on H.R. 2297, Congress never had such an opportunity, and the Court therefore cannot accept the CBO's interpretation of section 1311(e) as Congress's interpretation.

[14] The CBO had previously prepared cost estimates on at least three occasions for legislation containing language similar to the language in H.R. 2297 that restored DIC benefits to those surviving spouses who remarried after age 57, and the CBO had not indicated in those analyses that there would be any decreased implementation costs because of the DIC-offset provision. *See* CONGRESSIONAL BUDGET OFFICE, COST ESTIMATE FOR H.R. 1108 (Apr. 19, 2002), http://www.cbo.gov/ftpdoc.cfm?index=3387&type=1; H.R. REP. NO. 107-472, at 13-18 (May 16, 2002) (Cost Estimate for H.R. 4085 (2002)); CONGRESSIONAL BUDGET OFFICE, COST ESTIMATE FOR H.R. 36 (Mar. 28, 2003), http://www.cbo.gov/ftpdoc.cfm?index=4137&type=1.

description of the added section 1311(e) language). It is conceivable that the CBO was aware of the change in the legislation and thought it was unimportant and therefore not worth mentioning in its cost estimate, but it is also possible that, as plaintiffs argue, the CBO overlooked the amendment to the legislation and thereby failed to take account of the effect of the language that became section 1311(e). Given these two plausible interpretations of the CBO analyses, the Court concludes that defendant has not carried its heavy burden to make the extraordinary showing that the legislative history reflects a clearly expressed congressional intent to enact something different from what Congress set forth in the plain language of section 1311(e).

Finally, plaintiffs point to the legislative history of bills similar to H.R. 2297 considered during prior sessions of Congress to support their contention that, not only did Congress not intend to enact something different from the plain language of section 1311(e), but Congress understood exactly the meaning of the language it did enact. In 2002, Congress considered H.R. 4085, which included the following text:

> In the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(A)[15] of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, notwithstanding any other provision of law, no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section.

Veterans' and Survivors' Benefits Expansion Act of 2002, H.R. 4085, 107th Cong. § 3(e) (2002). With the irrelevant exception of the reference to 38 U.S.C. § 5304(b)(3), this language is identical to that included in H.R. 2297 that became 38 U.S.C. § 1311(e). In a Veterans Affairs Committee report discussing H.R. 4085, the committee expressly identified this language as relating to SBP payments:

> [T]he committee has included language so that [retained DIC payments] will be paid to all remarried surviving spouses, and that no reduction of other benefits to which the surviving spouse may be entitled, *such as Survivor Benefit Plan payments*, would occur.

H.R. REP. NO. 107-472, at 6 (May 16, 2002) (emphasis added). Although the legislative history of H.R. 4085 is not by itself dispositive of Congress's intent regarding H.R. 2297, the existence of this particular legislative history supporting plaintiffs' construction of the statute helps make clear that the legislative history is insufficient to constitute an "extraordinary showing of contrary intentions" that would permit the Court to construe section 1311(e) as defendant urges, contrary to the plain meaning of the statutory language.

---

[15] This 2002 legislation would have placed the DIC restoration language at 38 U.S.C. § 103(d)(2)(A), while the eventual Veterans Benefits Act of 2003 enacted the same language at section 103(d)(2)(B).

## IV. Defendant's Interpretation of 38 U.S.C. § 1311(e) Is Not Due Any Deference Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, Because There Is No Ambiguity in the Language of 38 U.S.C. § 1311(e), and Defendant's Proffered Interpretation Conflicts with the Plain Language of the Statute.

While defendant argues, as discussed above, that the plain language and legislative history of section 1311(e) support defendant's construction of the statute, defendant also argues in the alternative that, since the apparent conflict between 38 U.S.C. § 1311(e) and 10 U.S.C. § 1450(c)(1) renders section 1311(e) ambiguous, the administrative resolution of that ambiguity by the Department of Defense should be given deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Def.'s Reply at 10 n.10. Although defendant raised this argument for the first time in its reply brief and thereby arguably waived the argument, *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002), the Court will address the issue in light of plaintiffs' surreply responding to the *Chevron* deference issue and the subsequent rejoinder filed by defendant.

Under *Chevron*, deference to an agency's construction or interpretation of a statute is due only when the interpretation is permissible. *Chevron*, 367 U.S. at 843. "[W]e should not disturb [the agency's interpretation of the statute] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id.* at 845 (*quoting United States v. Shimer*, 367 U.S. 374, 383 (1961)). Here, even absent the problems with *Chevron* deference discussed below, defendant's interpretation of 38 U.S.C. § 1311(e) as not affecting the DIC offset to SBP payments is impermissible because it is in conflict with the plain language of the statute and therefore not entitled to deference.

As discussed above, construing 38 U.S.C. § 1311(e) in the way suggested by defendant would render the statute utterly devoid of meaning. The only construction that gives 38 U.S.C. § 1311(e) any effect at all is that construction advocated by plaintiffs, *i.e.*, that the statute modifies or partially repeals the DIC offset to SBP payments. Because defendant's proffered construction conflicts with the language of the statute, it cannot be given deference under *Chevron*.

Further, while defendant did not raise the issue of lesser deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), or *United States v. Mead Corp.*, 533 U.S. 218 (2001), the Court finds that such deference is also not owed to the Department of Defense's interpretation of section 1311(e), for the same reason that *Chevron* deference is not owed: the construction allegedly offered by the Department of Defense is inconsistent with the plain language of section 1311(e). *See Fortis, Inc. v. United States*, 420 F. Supp. 2d 166, 179 (S.D.N.Y. 2004), *aff'd*, 447 F.3d 190 (2d Cir. 2006) (declining to give deference either under *Skidmore* and its progeny or under *Chevron* to an administrative interpretation "inconsistent with the unambiguous meaning" of the relevant statute).

## V. Even Assuming *Arguendo* that There Were Some Ambiguity in 38 U.S.C. § 1311(e), the Department of Defense's Interpretation of the Statute Would Not Be Due *Chevron* Deference.

Even if there were sufficient ambiguity in the language of section 1311(e) to permit a government agency to make an interpretation of the statute to which deference would be owed under *Chevron*, this Court could not, at least at this motion to dismiss stage, properly defer to defendant's interpretation. First, the only agency that defendant asserts interpreted section 1311(e), the Department of Defense, was not charged with administering section 1311(e), and therefore it cannot be the agency to which Congress delegated interpretive authority. Second, the actions of the Department of Defense that defendant has identified as constituting interpretations of section 1311(e) do not in fact constitute such interpretations within the meaning of *Chevron*.

### *A. The Agency That Allegedly Acted to Resolve the Assumed Ambiguity in 38 U.S.C. § 1311(e), the Department of Defense, Was Not Charged with Administering 38 U.S.C. § 1311(e).*

The first step in *Chevron* deference analysis is to determine whether Congress in fact delegated responsibility for administering the statute to the agency that made the decision to which the Court is asked to defer. Here, the decision to continue the DIC offset against SBP payments even after the enactment of 38 U.S.C. § 1311(e) was made by the Department of Defense, so the Court must first determine whether Congress actually delegated authority to the Department of Defense to interpret section 1311(e). The Court concludes that there was no such delegation of authority.

Defendant argues that 10 U.S.C. § 1455(a) gives the Secretary of Defense authority to make rules regarding payment of SBP. Def.'s Rejoinder at 2. This is true but irrelevant. Section 1455(a) states that "[t]he President shall prescribe regulations to carry out this subchapter," with the phrase "this subchapter" referring to sections 1447 to 1455 of title 10, which are the sections within title 10 that relate to SBP. Neither party disputes that the delegation of authority to "the President" amounts to a delegation to the Secretary of Defense as "the regular constitutional organ of the President for the administration of the military." Def.'s Rejoinder at 3 n.1. However, this delegation of authority is only with respect to certain sections of title 10, not with respect to any section of title 38. Because section 1311(e) falls within title 38, the delegation of authority to the Department of Defense in 10 U.S.C. § 1455(a) does not represent any delegation to the Department of Defense of interpretive authority with respect to section 1311(e).

Title 38 of the U.S. Code does not appear to contain a separate delegation-of-authority provision along the lines of 10 U.S.C. § 1455(a). If any such provision does exist either within the subchapter relating to DIC or elsewhere in title 38, neither party has brought it to the Court's attention, and the Court's own search has failed to locate such a provision. Many provisions of title 38, though, including several provisions within the subchapter relating to DIC, contain direct commands to the Secretary of Veterans Affairs. *See, e.g.,* 38 U.S.C. § 101 (defining "Secretary"

for purposes of title 38 as "the Secretary of Veterans Affairs"); 38 U.S.C. § 1310(a) (". . . the Secretary shall pay dependency and indemnity compensation . . ."); 38 U.S.C. § 1312(a) (". . . the Secretary shall pay . . ."); 38 U.S.C. § 1315 ("Under regulations prescribed by the Secretary, benefits under this section may be paid less frequently than monthly . . ."); 38 U.S.C. § 1318(a) ("The Secretary shall pay benefits under this chapter . . ."); 38 U.S.C. § 5312(b)(2)(B) ("The adjustment in rates of dependency and indemnity compensation . . . shall be made by the Secretary in accordance with regulations which the Secretary shall prescribe."). To the extent Congress intended to delegate authority to interpret provisions of title 38 to any executive agency,[16] it seems that it intended to delegate that authority to the Secretary of Veterans Affairs, not to the Secretary of Defense. Where Congress delegates authority to interpret a statute to one agency, no *Chevron* deference is owed to an interpretation of the statute by a second agency. *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 479 n.14 (1997). Thus, even if some agency's interpretation of 38 U.S.C. § 1311(e) were entitled to *Chevron* deference, deference to an interpretation by the Department of Defense would not be warranted.

To the extent that any deference is owed to the Department of Defense's interpretation of section 1311(e) by virtue of the Department's role as the agency responsible for SBP and in light of the statute's effect on SBP, the interpretation offered by the Department here cannot be given any deference because, as explained above, it is inconsistent with the unambiguous plain meaning of the statutory language.

### *B. Even if the Court Were Required under* **Chevron** *to Defer to an Interpretation of 38 U.S.C. § 1311(e) by the Department of Defense, the Department of Defense Has Not Made any Such Interpretation to which the Court Could Defer.*

Even if Congress had intended to delegate authority to interpret 38 U.S.C. § 1311(e) to the Department of Defense, the Court cannot, on the record before the Court at this early stage, divine any interpretation by the Department of Defense to which deference would be owed. There are three activities by the Department of Defense that might conceivably constitute interpretations of the statute: (1) the Department's promulgation of financial management regulations describing how to calculate SBP payments; (2) the actions taken to make deductions from plaintiffs' (and others') SBP checks pursuant to the unamended SBP statute (10 U.S.C. § 1450(c)(1)); and (3) the statement of an interpretation of the statute during the present litigation. None of these is properly afforded any deference under *Chevron*.

First, defendant asserts that the financial management regulations of the Department of Defense, which explain how to determine the amount of SBP payments, should be considered interpretations of 38 U.S.C. § 1311(e). Def.'s Rejoinder at 2-3 (*citing* Department of Defense

---

[16] In light of the unambiguous language used in section 1311(e), Congress may not have intended to delegate interpretive authority to *any* executive agency.

Financial Management Regulation, Volume 7B, Chapter 46, ¶ 460202,[17] available at http://www.defenselink.mil/comptroller/fmr/07b/index.html). The Court is not persuaded that this regulation constitutes an interpretation of section 1311(e). First, the language of Chapter 46 of the Department of Defense Financial Management Regulation, the chapter dealing with SBP payments and offsets, has not been modified since September 1999, four years before section 1311(e) was passed. Had this language been modified after section 1311(e) was enacted, the Court might be inclined to find that it was drafted in response to (or at least with awareness of) section 1311(e), but regulatory language drafted in 1999 cannot have been created with a 2003 statutory enactment in mind. Even if it is the case, as defendant stated at oral argument, that the language of the financial management regulation was reviewed in December 2007, after 38 U.S.C. § 1311(e) had been enacted, and that the reviewers apparently found that no change to the 1999 language was warranted, given the very limited record available to the Court on this motion to dismiss, it is unclear whether the procedure followed by the Department in reviewing the financial management regulation was sufficiently formal and thorough to warrant *Chevron* deference. Obviously, if there were a factual record showing that the review of the financial management regulation in light of section 1311(e)'s enactment included notice-and-comment rulemaking or formal adjudication, the Court would be obligated to afford the resulting interpretation of the statute deference under *Chevron* (barring those problems with *Chevron* deference discussed above). *See Mead*, 533 U.S. at 229–30. The absence of such administrative formality is not necessarily fatal to defendant's request for *Chevron* deference, but it militates against affording such deference. Should defendant establish in subsequent proceedings in this case that a formal administrative procedure was employed in connection with any review of the financial management regulation in light of the enactment of 38 U.S.C. § 1311(e), the Court might be obligated to revisit the issue of the proper level of deference to the Department of Defense financial management regulation.

As the record stands at this stage, however, the Court views the Department of Defense financial management regulation as an "agency manual" or "enforcement guideline." As such, *Chevron* deference is inappropriate, and deference should be given pursuant to *Skidmore*, only to the extent that the financial management regulation has the "power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (*citing EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256–58 (1991); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991); *Skidmore*, 323 U.S. at 140). As explained above, the Court finds unpersuasive the interpretation allegedly reflected in the financial management regulation, because it is contrary to the unambiguous plain meaning of the statutory language.

---

[17] Section 4602 of Chapter 46 of Volume 7B of the Department of Defense Financial Management Regulation is titled "Offsets to the [SBP] Annuity." Within this section, paragraph 460201 states that "[t]he gross SBP annuity payable to a spouse or former spouse (spouse category) is offset by an award of DIC." In relevant part, paragraph 460202 states that "The DIC offset equals the actual DIC payment the spouse or former spouse receives . . . ."

Second, in some cases, agency action itself can constitute an interpretation of a statute that is owed deference under *Chevron*. Here, though, the actions of the Department of Defense in sending checks to plaintiffs and other SBP recipients after the enactment of 38 U.S.C. § 1311(e) that were reduced by deductions for the DIC offset do not constitute such deference-worthy actions. The proper standard for determining whether agency activity is deserving of deference was articulated by the Supreme Court in *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001). The Supreme Court held that agency activity that does not "naturally bind more than the parties to the ruling" is not entitled to *Chevron* deference. In the present case, the Department of Defense's issuance of a check to a particular SBP recipient represents only the Department's decision that such SBP recipient was entitled to the particular SBP payment she received. Defendant does not point to any process here that resembles the "relatively formal administrative procedure" in *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1380 (Fed. Cir. 2001), where the Federal Circuit found that administrative antidumping proceedings that were intended to be precedential were entitled to *Chevron* deference.

Third, defendant argues that its articulation of its interpretation of 38 U.S.C. § 1311(e) in its motion to dismiss in this case warrants *Chevron* deference. Defendant's citation of *Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005) for this position is inapposite, though. The "generous degree of deference" referred to in *Cathedral Candle* is with respect to "an agency's interpretation of its own regulations." *Id.* at 1363. *Cathedral Candle* specifically points out that this deference "is broader than deference to the agency's construction of a statute." *Id.* at 1363-64. *Auer v. Robbins*, too, dealt with deference to an agency's interpretation of its own regulations. 519 U.S. 452, 463 (1997). The Court in the present case is dealing with an alleged construction of a statute, 38 U.S.C. § 1311(e), by the Department of Defense, not the Department's construction of its own regulations.[18] The Supreme Court has precluded deference to an agency's interpretation of a statute--as opposed to an interpretation of the agency's own regulations--when that interpretation is offered for the first time in a litigation document. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). Given that defendant's first interpretation of the statute at issue here occurred in this litigation and not in any earlier agency proceeding or rulemaking, the Court cannot, pursuant to *Bowen*, give the interpretation any deference.

## CONCLUSION

For the reasons discussed above, the Court concludes that 38 U.S.C. § 1311(e) modifies or partially repeals 10 U.S.C. § 1450(c)(1) to the extent that SBP payments are not to be reduced by the amount of DIC payments to those surviving spouses who receive DIC by virtue of their having remarried after the age of 57. According to plaintiffs' complaint, plaintiffs are eligible to

[18] While there is arguably a regulation here in the form of the Department of Defense financial management regulation, Volume 7B, Chapter 46, the construction to which defendant asks the Court to defer is the Department of Defense's construction of 10 U.S.C. § 1450(c)(1), a statute, not the Department's construction of its own financial management regulation.

receive SBP payments under 10 U.S.C. § 1450, as well as DIC payments under 38 U.S.C. § 1311, and plaintiffs all remarried after age 57. Complaint ¶¶ 15–17, 25–27, 31, 32, 34, 35. Further, according to plaintiffs' complaint, plaintiffs' SBP payments were reduced by the amount of plaintiffs' DIC payments even after the effective date of 38 U.S.C. § 1311(e). Complaint ¶¶ 19, 27, 35. As noted at the outset, plaintiffs' allegations must be presumed true for the purpose of deciding this motion to dismiss. Under this presumption, and given the Court's construction of section 1311(e), plaintiffs have stated a claim that they received less money in SBP payments than they were owed by defendant.

Accordingly, defendant's motion to dismiss is **DENIED**. Pursuant to RCFC 12(a)(2)(A), defendant's answer to plaintiffs' complaint shall be filed and served not later than **Tuesday, February 26, 2008**.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge