# United States Court of Federal Claims

No. 07-547 C
Filed June 12, 2008
TO BE PUBLISHED

| | |
|---|---|
| PATRICIA R. SHARP, MARGARET M. HAVERKAMP, and IVA DEAN ROGERS,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Survivor Benefit Plan, 10 U.S.C. § 1447 *et seq.*; 10 U.S.C. § 1450(c)(1); Dependency and Indemnity Compensation, 38 U.S.C. § 1310 *et seq.*; Veterans Benefits Act of 2003; 38 U.S.C. § 1311(e); Motion for Summary Judgment Pursuant to RCFC 56. |

Edward R. Reines, Weil, Gotshal & Manges LLP, Redwood Shores, California, and Michael R. Franzinger and Azra M. Hadzimehmedovic, Weil, Gotshal & Manges LLP, Washington, D.C., for plaintiffs.

Douglas K. Mickle, Trial Attorney, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Gregory G. Katsas, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Major Kelly L. McGovern, U.S. Army, Military Personnel Branch, Army Litigation Division, Arlington, Virginia, and Scott Lafferty, Senior Associate Counsel, Office of General Counsel, Military and Civilian Pay Law Directorate, Defense Finance and Accounting Service, Cleveland, Ohio, of counsel.

# OPINION AND ORDER

GEORGE W. MILLER, Judge.

This action is before the Court on plaintiffs' motion for summary judgment ("Pls.' Mot. Summ. J.," docket entry 20); defendant's response to plaintiffs' motion for summary judgment ("Def.'s Response," docket entry 22); and plaintiffs' reply in support of their motion ("Pls.' Reply," docket entry 23). In addition, the Court has before it the parties' list of stipulated facts ("Stipulation," docket entry 21). For the reasons discussed below, plaintiffs' motion is **GRANTED**.

## BACKGROUND

Much of the factual background of this case is set forth in the Court's February 11, 2008 opinion and order, in which the Court denied defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). *Sharp v. United States*, 80 Fed. Cl. 422 (2008). Familiarity with that opinion and order is presumed. The parties have now stipulated to the facts that are discussed below.

### I. Patricia R. Sharp.

Plaintiff Patricia R. Sharp was married to Brigadier General Richard H. Sharp, a deceased veteran and military retiree. Stipulation ¶ 1. Ms. Sharp is Brig. Gen. Sharp's surviving spouse. *Id.* As such, she is eligible to receive payments under both the Survivor Benefit Plan ("SBP") and the Dependency and Indemnity Compensation program ("DIC"). Stipulation ¶¶ 2-3. Ms. Sharp remarried in 2000 at the age of 60. Stipulation ¶ 4.

The Department of Veterans Affairs has made DIC payments to Ms. Sharp since January 1, 2004. Stipulation ¶ 5. From January 1, 2004, to October 1, 2004, the Defense Finance and Accounting Service ("DFAS") paid Ms. Sharp her full SBP annuity, with no offset to account for the DIC payments. Stipulation ¶ 6. Beginning October 1, 2004, DFAS began reducing Ms. Sharp's SBP payments by the amount of the DIC payments she was receiving. Stipulation ¶ 7. This offset continues to the present. Stipulation ¶ 8. In addition, DFAS has demanded that Ms. Sharp return $13,347, the amount by which defendant contends her SBP payments received between January 1 and October 1, 2004, should have been reduced. Stipulation ¶ 9. As a partial repayment of this amount, defendant has, between October 1, 2004, and February 29, 2008, withheld $2,329.40 from Ms. Sharp's SBP payments. Stipulation ¶ 10. In total, defendant has or will have deducted $73,953.40 from Ms. Sharp's SBP payments between October 1, 2004, and June 30, 2008; this total represents the sum of the deductions attributable to the DIC offset beginning in October 2004 and the deductions for the repayment of what defendant claims were overly generous SBP payments before October 2004. Stipulation ¶ 11.

## II. Margaret M. Haverkamp.

Plaintiff Margaret M. Haverkamp was married to Lieutenant Colonel George Talbot, a deceased veteran and military retiree. Stipulation ¶ 12. Ms. Haverkamp is Lt. Col. Talbot's surviving spouse. *Id.* As such, she is eligible to receive both SBP and DIC payments. Stipulation ¶¶ 13-14. Ms. Haverkamp remarried in 2000 at the age of 65. Stipulation ¶ 15.

The Department of Veterans Affairs has made DIC payments to Ms. Haverkamp since January 1, 2004. Stipulation ¶ 16. From at least January 1, 2004, to January 31, 2005, DFAS paid Ms. Haverkamp her full SBP annuity, with no offset to account for the DIC payments. Stipulation ¶ 17. Beginning February 1, 2005, DFAS began reducing Ms. Haverkamp's SBP payments by the amount of the DIC payments she was receiving. Stipulation ¶ 18. This offset continues to the present. Stipulation ¶ 19. In addition, DFAS has demanded that Ms. Haverkamp return the portion of the SBP payments she received between January 2004 and January 2005 that defendant contends should have been offset. Stipulation ¶ 20. As a partial repayment of this amount, defendant has withheld $7,769.50 from Ms. Haverkamp's SBP and DIC payments. *Id.* In total, defendant has or will have deducted $46,334.00 from Ms. Haverkamp's SBP payments between February 1, 2005, and June 30, 2008; this total represents the sum of the deductions attributable to the DIC offset beginning in February 2005 and the deductions for the repayment of what defendant claims were overly generous SBP payments before February 2005. Stipulation ¶ 21.

## III. Iva Dean Rogers.

Plaintiff Iva Dean Rogers was married to Master Sergeant Arlan E. Wilson, a deceased veteran and military retiree. Stipulation ¶ 22. Ms. Rogers is MSgt. Wilson's surviving spouse. *Id.* As such, she is eligible to receive both SBP and DIC payments. Stipulation ¶¶ 23-24. Ms. Rogers remarried in 1996 at the age of 71. Stipulation ¶ 25.

The Department of Veterans Affairs has made DIC payments to Ms. Rogers since January 1, 2004. Stipulation ¶ 26. DFAS has made deductions from Ms. Rogers's SBP payments in the amount of her DIC payments in every month since January 2004, and those deductions wholly offset Ms. Rogers's SBP payments so that those payments were reduced to zero. Stipulation ¶¶ 27-29. Had no deductions been made from Ms. Rogers's SBP payments, she would have received payments in the following amounts:

- $447 per month from January 2004 through November 2004;
- $459 per month from December 2004 through September 2005;
- $556 per month from October 2005 through November 2005;
- $578 per month from December 2005 through March 2006;
- $651 per month from April 2006 through November 2006;
- $672 per month from December 2006 through March 2007;
- $747 per month from April 2007 through November 2007;

- $764 per month from December 2007 through March 2008; and
- $840 per month from April 2008 through June 2008.

Stipulation ¶ 28. In total, defendant has or will have deducted $32,379.00 from Ms. Rogers's SBP payments between January 1, 2004, and June 30, 2008. Stipulation ¶ 30.

## IV. The Court's Earlier Opinion and Order.

On February 11, 2008, the Court issued its opinion and order denying defendant's motion to dismiss. *Sharp v. United States*, 80 Fed. Cl. 422 (2008). In its opinion, the Court held that 38 U.S.C. § 1311(e), enacted as part of the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 101(c), 117 Stat. 2651, 2653 (2003), "modifie[d] or partially repeal[ed] 10 U.S.C. § 1450(c)(1) to the extent that SBP payments are not to be reduced by the amount of DIC payments to those surviving spouses who receive DIC by virtue of their having remarried after the age of 57." *Sharp*, 80 Fed. Cl. at 441. Thus, effective January 1, 2004, 38 U.S.C. § 1311(e) required defendant to cease reducing SBP payments by the amount of DIC payments received by those surviving spouses who received DIC by virtue of having remarried after the age of 57. Such reductions had, prior to enactment of the Veterans Benefits Act of 2003, been mandated by 10 U.S.C. § 1450(c)(1).

## DISCUSSION

Both parties agree that, given the Court's earlier decision construing 38 U.S.C. § 1311(e) and the parties' stipulation of facts, summary judgment in plaintiffs' favor should be granted. Pls.' Mot. Summ. J. at 6 ("Plaintiffs respectfully request an order granting summary judgment in their favor and awarding damages in the stipulated amounts."); Def.'s Response at 3 (". . . [W]e disagree with the Court's finding that the 2003 amendment repealed by implication the plain language of 10 U.S.C. § 1450(c), [but] we do agree that the Court's decision is controlling for this case. Accordingly, we agree that, given the parties' stipulation of facts regarding the quantum portion of each plaintiff's damages, this case is ripe for the Court to issue a final judgment . . . .").

Despite defendant's agreement that summary judgment in plaintiffs' favor is warranted, defendant presents three arguments opposing summary judgment. First, in response to the Court's earlier statement that the procedures for promulgating the Department of Defense Financial Management Regulation ("FMR") were not part of the record, *Sharp*, 80 Fed. Cl. at 440, defendant has submitted excerpts from the FMR and a declaration describing how the FMR is promulgated as attachments to defendant's response to plaintiffs' motion for summary judgment; defendant suggests that the FMR is promulgated with sufficient formality to warrant deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Second, defendant repeats its argument that Congress's enactment in the National Defense Authorization Act of 2008 of a new monthly allowance for surviving spouses who are subject to the DIC-SBP offset demonstrates that Congress intended 38 U.S.C. § 1311(e), enacted

in 2003, to have no effect on the DIC-SBP offset. Finally, defendant argues that the promulgation of regulations by the Department of Veterans Affairs that are consistent with defendant's interpretation of the statute demonstrates that defendant's interpretation is correct.

## I. Effect of the Department of Defense Financial Management Regulation.

Defendant's first argument is without merit. In the Court's opinion and order denying defendant's motion to dismiss, the Court gave three reasons for declining to accord *Chevron* deference to the FMR. One reason was that defendant's interpretation of section 1311(e) conflicted with the plain language of the statute. *Sharp*, 80 Fed. Cl. at 437-38. Another was that the Department of Defense was not charged by Congress with administering section 1311(e). *Id.* at 438-39. Finally, the Court held that the FMR constituted an agency manual or enforcement guideline rather than a regulation formally interpreting the statute. *Id.* at 439-40. Any one of these reasons would be sufficient to deny *Chevron* deference to defendant's interpretation of section 1311(e). Defendant here offers an argument challenging only the third reason: defendant contends that the process of promulgating the FMR is sufficiently formal that the FMR should be considered a regulation (to which deference is owed) rather than an agency manual or enforcement guideline (to which no deference is owed). *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (*citing EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256-58 (1991); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). To support this contention, defendant has submitted the declaration of David P. Smith ("Smith Decl."). Mr. Smith is the Acting Deputy Chief Financial Officer for the Department of Defense, and he is responsible for the review of and updates to the FMR. Smith Decl. ¶ 1. But the declaration does not support the conclusion that the FMR warrants *Chevron* deference. First, the declaration describes the purpose of the FMR as "provid[ing] all Department of Defense components with policy and procedures by establishing and enforcing requirements, principles, standards, systems, procedures, and practices necessary to comply with financial management statutory and regulatory requirements applicable to the Department of Defense." Smith Decl. ¶ 1. Two parts of this statement support the Court's conclusion that the FMR is an agency manual or enforcement guideline. First, the FMR "provides . . . policy and procedures by . . . enforcing requirements." Smith Decl. ¶ 1. That the FMR, as described by Mr. Smith, is concerned with enforcement procedures is more consistent with the FMR's being an enforcement guideline than a regulation. Second, the FMR is "necessary to comply with financial management statutory *and regulatory* requirements." Smith Decl. ¶ 1 (emphasis added). That the FMR, as described by Mr. Smith, implements requirements set by regulation further supports the Court's conslusion that the FMR itself is not a regulation. A regulation cannot interpret itself. Thus, the Court remains of the view that the FMR is an agency manual or enforcement guideline and therefore is not due *Chevron* deference.

Even if the FMR were a regulation, however, there is insufficient evidence in the record to permit the Court to grant deference to the FMR as a considered interpretation of section 1311(e). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care,

its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position. . . ." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). But Mr. Smith's declaration contains no explanation of how the Department of Defense goes about ensuring that the FMR reflects a correct interpretation of relevant statutes, including section 1311(e). Mr. Smith says only that the policies in the FMR "are reviewed on a regular basis to ensure they remain consistent with changes in applicable law." Smith Decl. ¶ 2. There is no information about the form this review takes, and therefore there is no information regarding how careful and thorough the Department of Defense is in reviewing the FMR, how formal the review process is, or the extent of the expertise possessed by the personnel who carry out periodic reviews of the FMR. If the review took the form of a formal adjudication, a notice-and-comment rule making, or if it were conducted by a high-level committee that documented its analysis of the statute and its legislative history, such a process might be sufficiently thorough, careful, and formal to persuade the Court that the Department of Defense's interpretation of the statute, as embodied in the FMR, qualified as an expert agency interpretation of section 1311(e). Without a basis in the record for finding that a review along these lines took place, however, the Court is unable to say that the FMR constitutes an expert agency interpretation of the 2003 Act.

Moreover, defendant's argument—that the FMR is promulgated through a process sufficiently formal that it should be deferred to—addresses only one of the Court's three reasons for not according *Chevron* deference to the FMR, leaving the other two reasons unchallenged, namely that defendant's interpretation of section 1311(e) conflicts with the plain language of the statute, *Sharp*, 80 Fed. Cl. at 437-38, and that the Department of Defense was not charged by Congress with administering section 1311(e), *id.* at 438-39. Thus, even if the review process for the FMR were sufficiently formal that the FMR could be said to embody the considered expert interpretation of section 1311(e) by the Department of Defense, the Court still could not afford the FMR *Chevron* deference.

## II. Significance of the National Defense Authorization Act of 2008.

Defendant also opposes summary judgment on the ground that the enactment of the National Defense Authorization Act of 2008, Pub. L. No. 110-181, § 644, 122 Stat. 3, 158 (2008), which provides for a new monthly allowance to those surviving spouses who are subject to the DIC-SBP offset, demonstrates that Congress could not have intended to repeal the offset in 2003, because if it had, a monthly allowance to surviving spouses affected by the offset would be unnecessary. This argument is no more availing now than it was when the Court rejected it in denying defendant's motion to dismiss. *See Sharp*, 80 Fed. Cl. at 435-36. In support of its motion to dismiss, defendant pointed to several instances, including the enactment of the National Defense Authorization Act of 2008, of what defendant characterized as continuing congressional efforts to repeal the DIC-SBP offset altogether, even after the enactment of the Veterans Benefits Act of 2003. Defendant argued that these continuing congressional efforts were evidence that Congress must have intended that the 2003 legislation would have no effect on the offset. As the Court noted in its earlier opinion, *Sharp*, 80 Fed. Cl. at 435-36, that is incorrect. There are several possible reasons why Congress might have sought legislation after

2003 to effect a total repeal of the DIC-SBP offset. Defendant interprets this activity as showing that Congress intended the 2003 Act to have no effect on the DIC-SBP offset, and that later efforts to effect a total repeal represent the very first efforts by Congress to address the offset. Another and more plausible interpretation is that Congress intended to effect only a partial repeal of the offset in 2003, and that the later legislative efforts represent Congress's attempt to address the larger problem of eliminating the offset for surviving spouses not affected by the 2003 legislation. At most, the post-2003 congressional activity shows that Congress understood at the time of that later activity that some surviving spouses were still affected by the DIC-SBP offset. That activity, in and of itself, sheds no light on why those surviving spouses were still being affected by the offset—either (1) because Congress, notwithstanding the language it enacted, intended in 2003 not to repeal the offset for any surviving spouses, or (2) because Congress, as the text of the 2003 legislation makes clear, intended in 2003 to repeal the offset only for surviving spouses who remarried after the age of 57, and to address the remaining offset in later legislation.[1] The Court therefore concludes that the post-2003 congressional activity provides no reason to alter its interpretation of section 1311(e) based on the plain language of the statute.

## III. Regulations of The Department of Veterans Affairs.

Finally, defendant cites regulations promulgated by the Department of Veterans Affairs that are consistent with defendant's interpretation of 38 U.S.C. § 1311(e). The cited regulations are not helpful, however, because they are also consistent with plaintiffs' (and the Court's) interpretation of the statute. Specifically, defendant cites 38 C.F.R. § 3.55(a)(10), which provides in pertinent part:

---

[1] As explained in the Court's earlier opinion and order, this interpretation of the Veterans Benefits Act of 2003 is both compelled by the plain language of the statute and entirely reasonable. *Sharp*, 80 Fed. Cl. at 427-34. The 2003 legislation in all likelihood reflected a compromise among several groups of legislators each seeking a different preferred outcome. *Sharp*, 80 Fed. Cl. at 427-34. The compromise in all likelihood reflected Congress's intent to repeal the DIC-SBP offset for a small group of surviving spouses as a first step, until such time as Congress could be persuaded to repeal the offset altogether. *Sharp*, 80 Fed. Cl. at 433 n.7. As long as "there is any reasonably conceivable state of facts that could provide a rational basis for" Congress to repeal the DIC-SBP offset for only those surviving spouses who remarry after the age of 57, the legislative classification is not subject to constitutional challenge, and "it is entirely irrelevant . . . whether the conceived reason for the challenged distinction actually motivated the legislature." *Fed. Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313, 315 (1993). Moreover, when Congress makes decisions regarding changes to benefit programs, as it did here, "the reform may take one step at a time, . . . [and t]he legislature may select one phase of the field and apply a remedy there, neglecting the others." *Id.* at 316. Thus, it was reasonable for Congress in 2003 to enact section 1311(e), repealing the DIC-SBP offset for one group of surviving spouses, and to turn in later years to seeking legislation repealing or otherwise moderating the effect of the offset for all surviving spouses.

> (10) Benefits for a surviving spouse who remarries after age 57.
>
> (i) On or after January 1, 2004, the remarriage of a surviving spouse after the age of 57 shall not bar the furnishing of benefits relating to dependency and indemnity compensation under 38 U.S.C. § 1311 . . . .
>
> (ii) A surviving spouse who remarried after the age of 57, but before December 16, 2003, may be eligible for dependency and indemnity compensation under 38 U.S.C. § 1311 . . . pursuant to paragraph (a)(10)(i) only if the application for such benefits was received by VA before December 16, 2004.

38 C.F.R. § 3.55(a)(10) (2007). These provisions, relied upon by defendant, speak only to the payment of DIC benefits to certain surviving spouses; they are silent on the question whether reductions of the surviving spouses' SBP payments in the amount of DIC payments received by the surviving spouses remain permissible after the enactment of 38 U.S.C. § 1311(e). Because the regulation is silent on that issue, it fails to provide the Court with meaningful guidance in interpreting section 1311(e).

Second, defendant cites a Federal Register notice published by the Department of Veterans Affairs as follows:

> Section 101 of the [Veterans Benefits Act of 2003] . . . amended 38 U.S.C. § 103(d)(2)(B) concerning eligibility requirements for certain survivor's benefits for remarried surviving spouses. This amendment preserves potential eligibility for the following benefits for surviving spouses who remarry after age 57: dependency and indemnity compensation under 38 U.S.C. § 1311 . . . . Section 101 of the 2003 Act additionally amended 38 U.S.C. § 1311 consistent with the amendment to section 103.

Remarriage of a Surviving Spouse, 71 Fed. Reg. 29,083 (May 19, 2006). The reference here to "amend[ing] 38 U.S.C. § 1311 consistent with the amendment to section 103" is plainly a reference to 38 U.S.C. § 1311(e), which provides that,

> [i]n the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(B) of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, notwithstanding any other provision of law . . . , no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section.

38 U.S.C. § 1311(e). Defendant apparently expects the Court to agree with its interpretation of section 1311(e) merely because the Department of Veterans Affairs stated in its Federal Register

notice that section 1311(e) was "consistent with the amendment to section 103," which provided for the restoration of DIC benefits to surviving spouses who remarry after age 57. But that is so without regard to whether section 1311(e) is interpreted as eliminating the corresponding reductions in SBP payments. The elimination of the DIC-SBP offset in section 1311(e) is also entirely consistent with the restoration of DIC benefits, as provided for in section 103 of the 2003 Act, because Congress's intent presumably was to extend DIC benefits to surviving spouses who remarried after the age of 57 rather than to give those surviving spouses the DIC benefit and then take it away by subtracting each surviving spouse's DIC payment from his or her SBP payment. Thus, the statement by the Department of Veterans Affairs that section 1311(e) is "consistent" with the restoration of DIC benefits to certain surviving spouses is manifestly unhelpful in interpreting section 1311(e).[2]

## IV. Plaintiffs May Seek Additional Damages in Subsequent Actions.

Because none of defendant's arguments persuade the Court that its interpretation of 38 U.S.C. § 1311(e), as elaborated in its earlier opinion and order, is incorrect, the Court holds that section 1311(e) modifies or partially repeals 10 U.S.C. § 1450(c)(1) to the extent that SBP payments are not to be reduced by the amount of DIC payments to those surviving spouses who receive DIC by virtue of their having remarried after the age of 57. The parties have stipulated the amount of damages due each plaintiff under the Court's interpretation of section 1311(e). Thus, there are no material facts in dispute. Accordingly, plaintiffs' motion for summary judgment is **GRANTED**.

Plaintiffs are entitled to recover the damages the parties have stipulated are owed to them under the Court's interpretation of section 1311(e). The Court understands that these damages cover only the period from the effective date of section 1311(e)—January 1, 2004—to June 30, 2008. Stipulation ¶¶ 11, 21, 30. Should defendant continue making deductions from plaintiffs' SBP payments pursuant to 10 U.S.C. § 1450(c)(1) after June 30, 2008, neither this opinion and order nor defendant's satisfaction of the judgment provided for herein shall prejudice plaintiffs' rights to bring further actions to recover amounts improperly deducted after June 30, 2008. RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(b) (1982) ("[T]he general rule [extinguishing a claim after a final judgment is entered] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant . . . [if t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action."); RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. b ("A determination by the court that its judgment is 'without prejudice' (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the

---

[2] Moreover, even if the statement of the Department of Veterans Affairs did constitute an interpretation of section 1311(e) at odds with the Court's holding, *Chevron* deference to that interpretation is precluded because that interpretation directly contradicts the plain meaning of the statutory language. *Sharp*, 80 Fed. Cl. at 437-38.

second action."); *see Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1378 (Fed. Cir. 2005) ("We agree with the exceptions to the rules of merger and bar set out in Restatement (Second) of Judgments, section[] 26(1)(b) . . . .").

## CONCLUSION

Consistent with the Court's holding as to the proper interpretation of section 1311(e) and the parties' stipulation, the Court **ORDERS** that Ms. Sharp shall recover of and from defendant damages in the amount of $73,953.40 for the period beginning October 1, 2004, and ending June 30, 2008; Ms. Haverkamp shall recover of and from defendant damages in the amount of $46,334.00 for the period beginning February 1, 2005, and ending June 30, 2008; and Ms. Rogers shall recover of and from defendant damages in the amount of $32,379.00 for the period beginning January 1, 2004, and ending June 30, 2008. The Clerk is directed to enter judgment in favor of each of the three plaintiffs in the amounts indicated.

**IT IS SO ORDERED.**

s/ George W. Miller
GEORGE W. MILLER
Judge