# United States Court of Federal Claims

No. 07-547 C
Filed March 1, 2010
TO BE PUBLISHED

---

| | |
|---|---|
| PATRICIA R. SHARP, MARGARET M. HAVERKAMP, and IVA DEAN ROGERS, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) ) |

Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A); whether Government's position was substantially justified; denial of attorneys' fees

---

Edward R. Reines, Weil, Gotshal & Manges LLP, Redwood Shores, California, Michael R. Franzinger and Azra M. Hadzimehmedovic, Weil, Gotshal & Manges LLP, Washington, D.C., for plaintiffs.

Douglas K. Mickle, Trial Attorney, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.  Major Kelly L. McGovern, U.S. Army, Military Personnel Branch, Army Litigation Division, Arlington, Virginia, Scott Lafferty, Senior Associate Counsel, Office of General Counsel, Military and Civilian Pay Law Directorate, Defense Finance and Accounting Service, Cleveland, Ohio, and Shelley D. Weger, Trial Attorney, United States Department of Justice, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Plaintiffs prevailed before this Court and the Court of Appeals for the Federal Circuit regarding the proper interpretation of a statute conveying benefits to certain surviving spouses of military veterans. *Sharp v. United States*, 82 Fed. Cl. 222 (2008) ("*Sharp II*"), *aff'd* 580 F.3d 1234 (Fed. Cir. 2009). As prevailing parties, they now seek attorneys' fees under the Equal Access to Justice Act ("EAJA"), asserting that the Government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Because the Court concludes that defendant has satisfied its burden to demonstrate substantial justification, plaintiffs' motion for attorneys' fees will be **DENIED**.

## BACKGROUND

Plaintiffs in this case were previously married to members of the military services who died while on active duty or from service-connected causes. *Sharp v. United States*, 80 Fed. Cl. 422, 424 (2008) ("*Sharp I*"). As surviving spouses, they were technically eligible to receive both Survivor Benefit Plan ("SBP") payments and Dependency and Indemnity Compensation ("DIC"). *Id.* at 425. But 10 U.S.C. § 1450(c)(1) mandates the reduction of any SBP payment by the amount of any DIC payment, so that only one benefit is actually paid. *Id.*

After the deaths of their military spouses, plaintiffs remarried. Prior to 2003, that remarriage would have disqualified them from receiving DIC benefits. *Sharp I*, 80 Fed. Cl. at 425. But the Veterans Benefit Act of 2003 restored DIC benefits to surviving spouses who, like plaintiffs, remarried after the age of 57. *Id.*; *see also* Pub. L. No. 108-183, § 101(a), 117 Stat. 2651, 2652 (2003) (codified at 38 U.S.C. § 103(d)(2)(B)). The crux of the parties' dispute arose from another provision of the Veterans Benefit Act, which provided that:

> In the case of an individual who is eligible for dependency and indemnity compensation under this section by reason of section 103(d)(2)(B) of this title who is also eligible for benefits under another provision of law by reason of such individual's status as the surviving spouse of a veteran, then, *notwithstanding any other provision of law* (other than section 5304(b) of this title), *no reduction in benefits under such other provision of law shall be made by reason of such individual's eligibility for benefits under this section*.

Pub. L. No. 108-183, § 101(b), 117 Stat. 2651, 2652-53 (2003) (codified at 38 U.S.C. § 1311(e)) (emphasis added).

This language created a dilemma, given that 10 U.S.C. § 1450(c)(1) required the reduction of SBP payments by the amount of DIC payments, and the new statute mandated no reductions for spouses who remarried after the age of 57. The Government took the position that

2

10 U.S.C. § 1450(c)(1) controlled, and continued deducting DIC payments from SBP payments, even when the spouse remarried after the age of 57.  *Sharp I*, 80 Fed. Cl. at 426.

Plaintiffs sued in this court, alleging that the DIC benefits were being wrongfully deducted from their SBP checks.  In support of its motion to dismiss the lawsuit, defendant asserted, first, that § 1311(e) did not alter the offset scheme because § 1311(e) applied only when the benefits were due "by reason of such individual's status as the surviving spouse of a veteran." That is, defendant maintained that § 1311(e) applied only to benefits for which one qualified simply by being the surviving spouse of a veteran, and being a surviving spouse was not, by itself, enough to trigger SBP benefits.  In order to qualify for the SBP, the veteran had to have "been eligible for retirement, have chosen SBP coverage, and have paid premiums for the benefit plan."  *Sharp I*, 80 Fed. Cl. at 428 (internal citations omitted).  Thus, defendant maintained, § 1311(e) could not be referring to SBP benefits due under § 1450(c)(1).  The Court ultimately disagreed with this reading, holding that the statute did not apply only to benefits for which being the "surviving spouse of a veteran" was the sole criterion.  *Id.*

Second, defendant contended that portions of the legislative history demonstrated that Congress did not intend § 1311(e) to modify or partially repeal § 1450(c)(1).  *Sharp I*, 80 Fed. Cl. at 427.  Defendant pointed to ongoing congressional efforts to repeal the offset entirely, and a provision in the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 644, 122 Stat. 3, 158 (2008), that provided a monthly allowance to ameliorate the offset.  *Sharp I*, 80 Fed. Cl. at 435.  This activity was evidence, the Government contended, that Congress knew that the offset still existed.  *Id.* at 435-36.  Defendant also relied upon a Congressional Budget Office report "assert[ing] that much of the cost [of extending DIC payments to spouses remarrying after age 57] would be offset by the statutory provision that requires SBP payments to be reduced by the amount of any DIC payments received."  *Sharp I*, 80 Fed. Cl. at 436.  As to the first argument, the Court did not agree with defendant because § 1311(e) effected only a partial repeal, and the cited provisions would continue to apply to those situations where the offset remained in effect.  While recognizing the merit in defendant's position with respect to the CBO report, the Court acknowledged that the CBO may have been in error and this legislative history did not make the "extraordinary showing" necessary to demonstrate congressional intent different from the plain language of the statute.  *Id.* at 436-37.

Third, defendant correctly argued that accepting plaintiffs' position would result in arbitrarily disparate treatment of SBP beneficiaries due to the age of remarriage.  *Sharp I*, 80 Fed. Cl. at 427.  That being the case, defendant argued that plaintiffs' interpretation "could not have been Congress's intention in passing § 1311(e)."  *Id.*  That is, it would be "a perverse result to grant additional compensation to surviving spouses who remarry after age 57 when not granting the same or greater compensation to surviving spouses who remain single."  *Id.* at 432 ("Generally, married people are in a better financial situation than single people are, because married people have the earning power of two individuals on which to draw.  Thus, an interpretation of section 1311(e) that gives more money to married people appears to create an odd result.").  While agreeing with this assessment, the Court was constrained to hold that this

arguably unreasonable result was exactly the impact of § 1311(e), because if the statute were otherwise interpreted it would have no effect whatsoever.  That is, "there is no way to interpret section 1311(e) that both gives effect to the statute and avoids creating an apparently perverse result."  *Id.* at 432-33 (choosing between canons of statutory interpretation "requiring avoidance of absurd or 'unreasonable results'" and "requiring that statutes not be rendered meaningless").

Finally, defendant argued that the apparent conflict between § 1311(e) and § 1450(c)(1) gave rise to deference to the agency's construction of its statutory authority under *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).  *Sharp I*, 80 Fed. Cl. at 427.  Because the Court had already found the statute unambiguous, it concluded that *Chevron* deference was inapplicable.  *Id*. at 438-41.

The legal determinations made in deciding the motion to dismiss essentially resolved the merits of the case.  After further briefing, the Court entered summary judgment in favor of plaintiffs.  *Sharp II*, 82 Fed. Cl. at 229.  The Government appealed this decision to the Court of Appeals for the Federal Circuit.  After considering many of the same arguments raised before the trial court, the Federal Circuit affirmed the entry of judgment in favor of plaintiffs.  *Sharp*, 580 F.3d at 1240.

On November 23, 2009, plaintiffs filed a motion for attorneys' fees under the EAJA. (docket entry 29) ("Pl.'s Mot.").  The thrust of the motion is that the plaintiffs prevailed on the merits and that the Government's position in the litigation was without substantial justification. The three-page opening motion merely asserts that "the government's position suffered from a number of legal shortcomings, one of which was that it depended on construing a statutory provision to have no effect."  Pl.'s Mot. at 1.  Moreover, the "government's interpretation was additionally at odds with the plentiful evidence that the 'no reduction in benefits' provision primarily addressed the SBP offset."  *Id.* at 2.

In opposition to the motion for attorneys' fees, defendant counters that it was attempting to comply with the clear statutory mandate of § 1450(c)(1), and "[i]t is well-settled law that agencies cannot ignore clear statutory mandates."  Defendant's Opposition to Plaintiffs' Application for Attorneys Fees at 6 (docket entry 33, Jan. 7, 2010) ("Def.'s Opp.").  Moreover, the Government asserts its "position was reasonable because agencies have a duty not to spend unappropriated funds" and there was no appropriation for the increased cost of partially eliminating the SBP offset.  *Id.*  Finally, defendant points to Congress's inaction in the face of the Government's continued offsetting of SBP payments as supporting the substantial justification of its reading.  *Id.*  The Government maintains that its position was "substantially justified" because its arguments were "reasonably based upon established principles of law" such as (1) the plain language of § 1450(c)(1); (2) the failure of SBP benefits to vest solely as the result of veteran status; (3) the legislative history, including the CBO report; (4) the arbitrarily disparate treatment of spouses resulting from plaintiffs' argument; and (5) the disfavoring of implicit repeals.  *Id.* at 7-8.

4

**LEGAL STANDARD**

Because the parties do not dispute that plaintiffs are prevailing parties, "the burden shifts to the Government to show that its litigating position was 'substantially justified.'" *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1288 (Fed. Cir. 1999). The legal question confronted here is not the same issue decided in the merits opinion. In considering a request for fees under EAJA, the court decides "not what the law now is, but what the Government was substantially justified in believing it to have been." *Pierce v. Underwood*, 487 U.S. 552, 561 (1988); *see also Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000) ("[S]ubstantial justification is measured, not against the case law existing at the time the EAJA motion is decided, but rather, against the case law that was prevailing at the time the government adopted its position."). The Government meets this standard when it argues a position that is "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. Whether the position of the United States was substantially justified "depends on all the pertinent facts of the case," and this Court must provide a sufficient factual basis to justify a "conclusion that the Government's position was reasonable." *Bailey v. United States*, 721 F.2d 357, 360-61 (Fed. Cir. 1983) (quoting *Broad Ave. Laundry and Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed. Cir. 1982)) (vacating and remanding for additional analysis by trial court); *see also Libas, Ltd. v. United States*, 314 F.3d 1362, 1364 (Fed. Cir. 2003); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000) ("Where, as here, the trial court's merits opinion so strongly favors the [prevailing party] against the government, a more thorough explanation for denying attorney's fees to the prevailing party is warranted.").

**DISCUSSION**

The mere fact that the Government lost on the merits does not demonstrate the absence of substantial justification. *Pierce*, 487 U.S. at 566 n.2 ("[A] position can be justified even though it is not correct, and we believe it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."). The courts have been particularly receptive to finding a reasonable basis for the Government's position "in matters of novelty or first impression." *Abramson v. United States*, 45 Fed. Cl. 149, 152 (1999).

In the present circumstances, the Government has offered a reasonable basis in law and fact for its position. Given the enactment of a new statute that conflicted with a prior statute, the "complexity, uniqueness and newness of the issues" weighs in favor of finding that the Government's "legal arguments were tenable." *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467-68 (Fed. Cir. 1988) (utilizing earlier "clearly reasonable" standard). The conflict between § 1311(e) and § 1450(c)(1) presented a "serious issue of statutory interpretation" that required "significant intellectual effort, careful analysis of relevant interpretive sources, and sophisticated applications of traditional canons of statutory construction" to resolve. *United States v. Paisley*, 957 F.2d 1161, 1168-69 (4th Cir. 1992). This is not a case where the Government advanced creative but unsupported arguments, where "the

novelty of the Government's position cannot compensate for the paucity of support in favor of that position." *Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed. Cir. 1984), *superseded by statute on other grounds, as noted in Doty v. United States*, 71 F.3d 384, 385-86 (Fed. Cir. 1995); *see also id.* ("[A] prevailing party's entitlement to fees under the EAJA should not depend on the creativity of the government in fashioning novel, but meritless, arguments."). The Government possessed some authority and utilized some canons of statutory interpretation that favored its preferred outcome. Although both this Court and the Court of Appeals acknowledged various reasons why Congress might, in theory, have acted as it did, *Sharp*, 580 F.3d at 1239; *Sharp I*, 80 Fed. Cl. at 433, defendant had a reasonable basis in law and fact to argue that the oddity of the result weighed against plaintiffs' interpretation of the statute. The Court put substantial effort into answering the presented question of law, which was at the outset "unresolved and of unclear resolution." *Kali v. Bowen*, 854 F.2d 329, 330 (5th Cir. 1988); *see also Heasley v. Comm'r of Int. Rev.,* 967 F.2d 116, 121 (5th Cir. 1992) (noting that the Government is justified in arguing for one of two plausible interpretations on an unsettled issue); *Alaskan Arctic Gas Pipeline Co. v. United States*, 19 Cl. Ct. 211, 218 (1990) (finding Government's position substantially justified when issue was of first impression and arguably supported by persuasive authority).

The Court cannot, therefore, conclude that the Government's position lacked substantial justification. As now-Chief Justice Roberts wrote: "[J]ust as discovery of contraband does not establish probable cause, nor an accident negligence, nor poor returns an imprudent trustee, so too a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) ("Courts evaluating substantial justification must instead analyze *why* the government's position failed in court: if, for example, the government lost because it vainly pressed a position flatly at odds with the controlling case law, that is one thing; quite another if the government lost because an unsettled question was resolved unfavorably.") (internal citations and quotations omitted). There was no controlling case law or other binding authority that the Government ignored in making its arguments. The Court ultimately had to decide a close question of statutory interpretation. In so doing, the Court was required to choose between adopting an arguably unreasonable result and rendering a portion of the statute meaningless. The Government's argument was ultimately unconvincing, but nonetheless was substantially justified given the novelty and difficulty of the issue presented.

## CONCLUSION

Plaintiff's application for attorneys' fees and expenses pursuant to the EAJA, 28 U.S.C. § 2412(d)(1)(A), is **DENIED**. No costs. Accordingly, the Clerk is directed to dismiss the application for fees and expenses.

**IT IS SO ORDERED.**

   s/ George W. Miller
GEORGE W. MILLER
Judge

6